Michael A. Barcott
**HOLMES WEDDLE & BARCOTT**
999 Third Avenue, Suite 2600
Seattle, Washington 98104
(206) 292-8008 Telephone
(206) 340-0289 Facsimile

Anita P. Arriola
**ARRIOLA, COWAN & ARRIOLA**
259 Martyr Street, Suite 201
Hagatna, GU 96932
(671) 477-9730 Telephone
(671) 477-9734 Facsimile

Attorneys for the M/V CHLOE Z



FILED
DISTRICT COURT OF GUAM
NOV - 1 2006
MARY L.M. MORAN
CLERK OF COURT

# DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

| | |
|---|---|
| TCW SPECIAL CREDITS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FISHING VESSEL M/V CHLOE Z, et al.,<br><br>Defendants. | Case No. 96-00055<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CLAIMANTS' MOTION TO ESTABLISH PREJUDGMENT AND POST-JUDGMENT INTEREST ON *IN REM* JUDGMENTS** |

## I. FACTUAL AND PROCEDURAL BACKGROUND

Claimants, Robert Matos and Slobodan Pranjic, were injured while working on the F/V CHLOE Z in 1992 and 1991 respectively. Both claimants timely filed *in personam* claims against their employer in the District Court for the Territory of Guam in May 1994. Aff. of Barcott, Ex. 1 & 2. *In personam* judgments were entered by this Court in the summer of 1996 following jury trials. Matos was awarded $1,497,955.00 and Pranjic was awarded $765,000.00. Aff. of Barcott, Ex. 3 & 4.[1]

---

[1] These judgments are not at issue in this *in rem* proceeding. The *in personam* judgment were obtained in another action which was brought *in personam* only. In addition to the fact that they are not part of the *in rem* judgments that plaintiffs seek to enforce in this action, the judgments have expired under Guam law. *See Sec. B1 supra.*

The insurance policy for the F/V CHLOE Z is an indemnity, or pay-to-be-paid, policy. Such policies are common in the maritime personal injury area. Aff. of Barcott, Ex. 5, p. 337 and 345. They provide that the insurance company will reimburse the vessel owner once that owner pays a claim. Aff. of Barcott, Ex. 5, p. 116. Here, the vessel owner did not pay the *in personam* judgments because it was effectively, though not formally, bankrupt.

At almost the same time the *in personam* trials were taking place, TCW Special Credits, the mortgage holder on the F/V CHLOE Z, arrested the vessel and brought this *in rem* action to foreclose its mortgage. Because Matos and Pranjic were unable to collect their *in personam* judgments, they intervened as third-party plaintiffs in TCW's *in rem* action in December 1996. Aff. of Barcott, Ex. 6. CHLOE Z contended that Matos and Pranjic's *in rem* claims were filed after the three year statute of limitations had run. However, in 1997, Judge Unpingco struck the F/V CHLOE Z's statute of limitations defense and found that the principle of equitable estoppel limited CHLOE Z's defense. Aff. of Barcott, Ex. 7.

The *in rem* trial took place in July 1998 and Judge Unpingco issued his Order of Findings of Facts and Conclusions of Law in January (Pranjic) and February (Matos) of 1999.[2] The Court awarded Matos $621,514.50.[3] Aff. of Barcott, Ex. 8, at 9-10.

Pranjic was awarded an *in rem* judgment of $577,420.92.[4] Aff. of Barcott, Ex. 9, p.8 In both Matos and Pranjic's orders, Judge Unpingco expressly denied prejudgment interest. Aff of Barcott, Ex. 8, p.10, & 9, p.8.

---

[2] Claimants' Memorandum and supporting affidavit have many factual errors. For example, claimants' counsel "declares" at Paragraph 9 of his affidavit that *in rem* "verdicts" were received in July 1997. This is patently incorrect as the *in rem* trial took place in 1998. Rather than listing each such misstatement, CHLOE Z will provide an accurate history with supporting exhibits.

[3] Matos's 1999 *in rem* award consisted of: Past Lost Wages award of $210,058.73 (less 33%), plus Future Earnings award of $617,574.85 (less 33%), plus past pain and suffering award of $50,000 (less 33%), plus future pain and suffering award of $50,000 (less 33%) for a total award of $621,514.50.

[4] Pranjic's 1999 *in rem* award consisted of: lost present & future earnings award of $433,469.00, plus medical and incidental expenses award of $43,951.92, plus past pain and suffering award of $50,000, plus future pain and suffering award of $50,000 for a total award of $577, 420.92. Pranjic was not found to be contributorily negligent. As noted, the $43,951.92 was conceded to be in error.

F/V CHLOE Z appealed the Court's order striking the statute of limitations defense. In 2000, the Ninth Circuit concluded that Judge Unpingco was in error when he resolved disputed issues of material fact and struck CHLOE Z's statute of limitations defense, and remanded the matter to conduct an evidentiary hearing on the equitable estoppel bar to the statute of limitations defense. Aff. of Barcott, Ex. 10 & 11.

With regard to Pranjic's case, the Ninth Circuit determined, and Pranjic conceded, that the Court erred in awarding Pranjic $43,951.92 in past medical expenses. Aff. of Barcott, Ex. 11, p.2. In 2000, on remand, the District Court amended its 1999 partial judgment for Pranjic's *in rem* claim striking the $43,951.92 award in past medical expenses. Aff. of Barcott, Ex. 12. Pranjic's amended partial award was $533,469.00 ($577,420.92 - $43, 951.92).

In that same 1999 appeal, Matos timely cross-appealed, contending that the Court erred in denying him prejudgment interest. The Ninth Circuit agreed that the District Court erred in denying Matos prejudgment interest without stating a specific reason and remanded to the District Court for a determination of whether special circumstances justify such a denial. Aff. of Barcott, Ex. 10. Pranjic, on the other-hand, did not timely file a cross-appeal of the District Court's denial of his prejudgment interest. Instead he filed his notice of cross-appeal on March 26, 1999, and at the same time he filed a motion in the District Court for an extension of time to cross-appeal in the district court. Aff. of Barcott, Ex. 13. That cross-appeal specifically dealt with the prejudgment interest issue. Aff. of Barcott, Ex. 13, p.2. This Court denied Pranjic's motion for an extension of time to appeal as untimely. Aff. of Barcott, Ex. 14. F/V CHLOE Z requested the Ninth Circuit to dismiss Pranjic's cross-appeal for lack of jurisdiction. Aff. of Barcott, Ex. 15. On November 18, 1999, the Ninth Circuit dismissed Pranjic's cross-appeal for lack of appellate jurisdiction. Aff. of Barcott, Ex. 16.

In May 2004, on remand, the statute of limitations issue was tried before Judge Unpingco. The Court found that the defendant did not make any material or fraudulent misrepresentations to Matos or Pranjic to justify a finding of equitable estoppel. Aff. of Barcott, Ex. 17, p.8:4-5. The

District Court held that the statute of limitations applied and "VACATED" its 1999 *in rem* judgments. *Id.* at 8:10-17.

Matos and Pranjic appealed to the Ninth Circuit. In 2006, the Ninth Circuit reversed the District Court's decision and its previous decision in 2000 and held that the statute of limitation bar did not apply and remanded the matter for further proceedings.[5] Aff. of Barcott, Ex. 18.

Matos and Pranjic have now filed motions to establish prejudgment and post-judgment interest awards.

## II. LEGAL ARGUMENT AND ANALYSIS

### A. The Procedure Proposed By CHLOE Z In Dealing With These Motions.

In its status report of October 20th to the Court the CHLOE Z noted that there are many variables that will impact the amount of any prejudgment interest award. Those variables are dealt with in the following sections of this memorandum. Plaintiffs' counsels' economist has taken only one set of assumptions and calculated prejudgment and post-judgment interest based upon that set of assumptions. If any of the assumptions utilized by plaintiffs' economist is incorrect his economic analysis is incorrect. There is one known error in his analysis regarding Mr. Pranjic as he included the $43,951.92 that was originally awarded by Judge Unpingco but which was reversed on stipulation by the Ninth Circuit.

CHLOE Z proposes that the Court rule upon the various factual and legal issues presented in this motion and provide to the parties an order detailing such items as (1) the rate of prejudgment interest; (2) whether prejudgment interest can be awarded on post-judgment damages; (3) the proper date for the termination of prejudgment interest and the commencement of post-judgment interest; and (4) whether Mr. Matos loses an entitlement to a period of prejudgment interest due to his own delay. CHLOE Z suggests that the Court rule upon these issues and then request supplemental briefing with economic reports adopting the assumptions as determined by the Court. There are simply too many variables at the present time for anyone

---

[5] Defendant has retained Supreme Court counsel and will soon be filing a *Petition for Writ of Certiorari* on this issue. *See* Aff. of Barcott, Ex. 21.

meaningfully to attempt to calculate prejudgment interest in advance of these rulings by the Court.

B. **Pranjic Is Not Entitled To Prejudgment Interest Because The Ninth Circuit Dismissed His Appeal on this Issue As Untimely.**

Claimants' Motion seeks an award for prejudgment interest for both Matos and Pranjic. *See* Claimants' Motion, ¶4. However, in 1999 Judge Unpingco specifically denied Pranjic entitlement to prejudgment interest. Pranjic attempted to appeal this Court's determination that he was not entitled to prejudgment interest. His appeal was dismissed by the Ninth Circuit Court as untimely.

The "law of the case" doctrine precludes a court from reexamining an issue previously decided by the same court, or a higher court, in the same case. *Hydrick v. Hunter*, No. 03-56712, 2006 WL 2773196, at *16 (9th Cir. Sep. 28, 2006) (citations omitted). For the law of the case doctrine to apply, "the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition.'" *Id.* (Citations omitted).

Here, Judge Unpingco expressly denied Pranjic prejudgment interest and there was no timely appeal from that order. The law of the case applies; Pranjic cannot now claim an entitlement to prejudgment interest. In the sections which follow, CHLOE Z will continue to reference both claimants. Such reference is made only in case the Court should deem Pranjic entitled to prejudgment interest. It is not an acknowledgment of that entitlement.

C. **The Date Of Judgment Used To Calculate Prejudgment And Post-Judgment Interest.**

Claimants Matos and Pranjic have requested the Court to award prejudgment interest from the date of their respective injuries, August 8, 1992, (Matos) and November 25, 1991, (Pranjic), up to and including October 1, 2006. Claimants' Motion, ¶ 4. They have also requested that this Court award post-judgment interest from the date of judgments, February 19, 1999, (Matos) and January 11, 1999, (Pranjic) up to and including October 1, 2006. Claimants' Motion, ¶ 6. On its face this is an apparent attempt to collect double interest for the time period

of 1999 through 2006 (both prejudgment interest and post-judgment interest). A review of plaintiffs' economist's report, however, shows, in fact, that the economist calculated prejudgment interest only until 1999. Thus, apparently, counsel does understand his own economist's report, and the numbers in the report are not what counsel represents.

CHLOE Z acknowledges that the Court has great discretion in selecting a judgment "date" for these purposes. CHLOE Z suggests that the proper date for the entry of the judgments is the date the most recent mandate was received from the Ninth Circuit, September 11, 2006. To the extent prejudgment interest is awarded, it will run until that date, with postjudgment interest thereafter.

While case law indicates this Court has authority to award interest using the date of the original 1999 *in rem* judgments,[6] to do so presents a serious problem for plaintiffs: Guam's statutory time limit for execution of judgment is effectively six years. Therefore, if this Court concludes that the judgment date is 1999, those judgments are no longer enforceable under Guam's statutory time limits.

1. **Guam's Time Limit To Execute A Judgment Makes The Claimants' 1999 Judgments Unenforceable.**

Federal Civil Rule 69 states,

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. **The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought**...

Fed. R. Civ. P. 69(a) (emphasis added).

The time limit for enforcing a federal court's judgment is set by state law. *Matanuska Valley Lines, Inc. v. Molitor*, 365 F.2d 358 (9th Cir. 1966), *cert. denied*, 386 U.S. 914 (1967)

---

[6] *See Guam Society of Obstetricians and Gynecologists v. ADA*, 100 F.3d 691 (9th Cir. (Guam) 1996) (holding plaintiffs were entitled to interest on attorneys' fees from the date of entry of the original award); *see also Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*, 676 F.2d 1291 (9th Cir. 1982) (post-judgment interest should be calculated from the date of the entry of the first judgment because the reversal of the first judgment was of no ultimate significance due to the subsequent entry of an identical post-remand judgment).

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

(holding that where the federal court judgment entered in Alaska was registered by the judgment creditor in Washington, the Washington time limit for enforcing foreign judgments applied); *U.S. v. Little*, 52 F.3d 495, 497 (4th Cir. 1995) (holding, "Under Rule 69(a) of the Federal Rules of Civil Procedure, the district court, in executing judgments, must follow the law of the state in which it is located").

Guam has a five year time limit to enforce a judgment. Guam statute, 7 Guam Code Ann. § 23106, states,

> The party in whose favor judgment is given may, at any time within five years after the entry thereof, have a writ of execution issued for its enforcement. If, after the entry of the judgment, the issuing of execution thereon is stayed or enjoined by any judgment or order of Court, or by operation of law, the time during which it is so stayed or enjoined must be excluded from the computation of the five years within which execution may issue.

*Id.* However, another Guam statute allows for enforcement of a judgment after six years have lapsed since the date of entry,[7] if leave of Court is given, or upon motion, or judgment for that purpose, founded upon supplemental pleadings. 7 Guam Code Ann. § 23106.

Under either of these sections, if this Court concludes that the 1999 judgments are reinstated as of that date, these judgments are now seven years old and are unenforceable.[8]

### D. Matos and Pranjic Are Not Entitled to Prejudgment Interest Because Of Undue Delay.

As noted by the Ninth Circuit in the Matos 2000 decision, prejudgment interest should be awarded in admiralty cases absent exceptional circumstances. However, it is not automatic. *Jones v. Spentonbush-Red Star Co.*, 155 F.3d 587, 593, 1999 AMC 324 (2d. Cir. 1998). The

---

[7] This statute was amended by P.L. 16-120"21 (12/18/82) and effectively raised the period from five to six years. *See* 7 Guam Code Ann. § 23106, Source Note.

[8] Federal Rule of Appellate Procedure 37(b) also restricts the ability of this Court to award prejudgment interest when the Ninth Circuit's mandate did not contain instructions about the allowance of interest. The most recent mandate in both Pranjic and Matos was silent as to the award of interest. This may provide a second basis for the denial of prejudgment interest to Mr. Pranjic. As to Mr. Matos, given that the 2000 Mandate specifically included interest, FRAP 37(b) presents a more equivocal solution to the resolution of the issue.

Ninth Circuit remanded the Matos case for a determination whether such circumstances exist. That issue has never been addressed by the Court. *See* Aff. of Barcott, Ex. 17, p. 8, ¶ 11.

In *Jones*, the Second Circuit affirmed the district court's finding that exceptional circumstances warranted a departure from the general rule where the seaman filed his action three years after the date of the accident. *Id.*, 155 F.3d at 593. The seaman attributed his delay to his change of counsel, but the district court found his excuse did not account for his tardiness. *Id.*

These *in rem* sections were filed in December 1996 for injuries occurring in 1991 and 1992. In ruling on the equitable estoppel issue in 2004 Judge Unpingco found that the claimants, Matos and Pranjic, delayed in filing these *in rem* claims.

> 22. The Court finds that months prior to the *in personam* trial, the plaintiffs were on notice regarding the defendant's financial difficulties and potential insolvency. Yet, despite such knowledge the plaintiffs failed to take any steps to ensure there would be a source of recovery.

Aff. of Barcott, Ex. 17, p.5. Further,

> 26. Even though the plaintiffs should have been or were in fact well aware of the defendant's financial difficulties and the potential problems with recovery given the insurer's articulated position, they chose to only pursue their *in personam* cases.

*Id.*, p. 6. And finally,

> 29. On July 11, 1996, the plaintiffs could have sought to arrest the vessel. Without coupling the *in rem* cause of action with their *in personam* actions, there was *no reasonable basis* for the plaintiffs to believe there would be recovery.

*Id.* (Emphasis added).

The Ninth Circuit, in 2006, agreed with this Court's findings on these points. "The district court subsequently and correctly found no misrepresentation and no equitable estoppel." Aff. of Barcott, Ex. 18, Memorandum p. 2.

In addition to these delays, Matos and Pranjic wasted years of time by first filing their claims in courts which had no *in rem* jurisdiction as the vessel was not in those districts. *See* Aff. of Barcott, Ex. 17, p.2 ¶2; Ex. 10, p.1 ¶2; and Ex. 11, p.1 ¶2.

8
Case 1:96-cv-00055    Document 1584    Filed 11/01/2006    Page 8 of 13

Neither Matos nor Pranjic have presented evidence to justify their undue delay in filing their *in rem* claims. Therefore, like the court in *Jones*, this Court should deny in whole or part prejudgment interest based on the claimants' undue delay. Prejudgment interest, although usually given, is not automatic and, in this case, should be denied.

E.  **The Rate of Prejudgment Interest Is Appropriately Calculated At the Rate in Effect on the Seaman's Date of Injury.**

In claimants' Motion, Matos and Pranjic rely on Expert Robert Wallace's prejudgment and post-judgment interest calculations. It appears that Mr. Wallace calculated the prejudgment interest using a rate determined by <u>averaging</u> the rates from Matos and Pranjic's respective dates of injuries up through the judgment dates.[9] He utilizes a rate of 5.03% and 4.96% for Pranjic. Matos's date of injury was August 8, 1992; Pranjic's date of injury was November 25, 1991.

If the Court chooses to use the rates contained in 28 U.S.C. § 1961 it should award prejudgment interest at the rate in effect on the date of the seaman's injury. *Hernandez v. M/V Rajaan*, 841 F.2d 582, 590, 1989 A.M.C. 523 (5th Cir. 1988) (affirming the district court's award of prejudgment interest on an annum rate accruing from the date of injury); *see Western Pac. Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280, 1288-1289 (9th Cir. 1984) (holding that the prejudgment interest rate should be calculated from the date the underwriters paid the employer, which was two months after the loss of the vessel, using the rate prescribed by the post-judgment interest found in 28 U.S.C. § 1961); *see also Columbia Brick Works, Inc. v. Royal Ins. Co. of America*, 768 F.2d 1066, 1070, 1986 A.M.C. 1676 (9th Cir. 1985) (upholding the district court's award for prejudgment interest from the date payment was made by the cargo owner to replace pieces of cargo lost overboard).

---

[9] Mr. Wallace's calculations are "summary" in form and it is not possible to tell with any certainty precisely what he has done in these calculations. Defense counsel has done his best to glean from the report what Mr. Wallace has done but objects to the use of that report, in its summary fashion, without showing the underling data. It is precisely that type of data which counsel suggests should be shown in the reports of the economist following this Court's ruling on these various legal issues.

Therefore under the statute, the prejudgment interest rate would accrue at the rate of 3.41% for Mr. Matos. *See* Aff. of Barcott, Ex. 19.

Likewise, should this Court order that Pranjic is entitled to prejudgment interest, the prejudgment interest rate would accrue at the rate of 4.41%. *See* Aff. of Barcott, Ex. 19.

Another appropriate measure of interest is the actual interest earned by TCW on the investments held in the registry of the Court. Those investments continued to grow at a very marginal rate during the pendency of this action and it would be appropriate to calculate Mr. Matos and Mr. Pranjic's rates at the same rate so that their judgments did not grow proportionately larger than the *res*. This precise method of calculating prejudgment interest was adopted by the Honorable Michael Kruse of the High Court of American Samoa in considering related claims against the vessel KASSANDRA Z. (The undersigned counsel was also counsel of record in the KASSANDRA Z litigation. He represents to the Court that this was done in that case. He is still attempting to locate these orders and will supplement when they are located.) Should the Court conclude that this is the appropriate interest rate, CHLOE Z will obtain from TCW the blended interest rate during the time period that prejudgment interest is awarded.

F.   **Prejudgment interest may not be awarded on future damages.**

Matos and Pranjic have asked the Court for an award of prejudgment interest on their entire judgments – both past and future damages.

The law is clear – a seaman is not entitled to prejudgment interest on future damages regardless of whether the award is based upon a Jones Act or general maritime claim. *Pickle v. Int'l Oilfield Divers, Inc.*, 791 F.2d 1237, 1241, 1987 A.M.C. 2038 (5th Cir. 1986), *reh'g denied*, 795 F.2d 1009, *cert. denied*, 479 U.S. 1059 (1987); *Borges v. Our Lady of the Sea Corp.*, 935 F.2d 436, 444-445, 1991 A.M.C. 2937 (2d Cir. 1991); *Hernandez v. M/V Rajaan*, 841 F.2d 582, 590-91 (5th Cir. 1988) (citations omitted). Therefore, any prejudgment interest awarded must be limited to amounts the claimants recovered for past damages.

10

Case 1:96-cv-00055   Document 1584   Filed 11/01/2006   Page 10 of 13

For Matos, the Court in 1999 awarded $174,239.35[10] in past damages, and $447,275.15[11] in future damages; prejudgment interest would only be applied to the $174,239.35 portion of the judgment.

In contrast, for Pranjic, this Court did not split the economic damages into past lost wages and future lost earnings. *See* Aff. of Barcott, Ex. 9, p. 8:14-16. However, the damages awarded for economic loss were taken from the trial exhibit. This exhibit separated out $235,548.00[12] in past damages, and $297,921.00[13] in future damages. Aff. of Barcott, Ex. 20. If Pranjic were entitled to prejudgment interest, it would only apply to the $235,548.00 portion of the judgment.

The calculation of Mr. Wallace, therefore, is entirely inaccurate as he has calculated prejudgment interest on the entire amount of the awards. If this Court determines that the appropriate "judgment" date is 2006 the parties will need to attempt to reallocate the damages to "past" and "future" components for the purpose of preparing economic calculations.

**G.     Pranjic Is Not Entitled To A Judgment In The Sum Of $577,420.92 Plus Interest.**

In his economic calculation for Mr. Pranjic plaintiffs' economist has used the sum $577,421 as the principal award and has built his prejudgment and post-judgment calculations on that number. As set forth in the factual background section of this memorandum Pranjic's counsel conceded before the Ninth Circuit that the judgment was overstated by the sum of $43,951.92. *See* Discussion at p. 3. Thus, the judgment amount utilized by Mr. Wallace is incorrect and his interest figures are correspondingly incorrect. To the extent Mr. Pranjic is

---

[10] Matos's past or pre-judgment damages taken from this Court's 1999 Order include: $210,058.73 in past wages, and $50,000 in past pain and suffering, reduced by 33% for contributory negligence for a total of $174,239.35 in past damages.

[11] Matos's future or post-judgment damages taken from this Court's 1999 Order include: $617, 574.85 in future lost earnings, and $50,000 in future pain and suffering, reduced by 33% for contributory negligence for a total of $447,275.15 in future damages.

[12] Pranjic's past lost wages were determined at trial to be $185,548, plus $50,000 in past pain and suffering for a total of $235,548 in past damages.

[13] Pranjic's future loss of earnings were determined at trial to be $247,921, plus $50,000 in future pain and suffering for a total of $297,921 in future damages.

11

entitled to prejudgment interest these revisions must be made in addition to the revision allocating past and future damages.

### H. Matos and Pranjic are entitled to Post-Judgment Interest.

Matos and Pranjic have also requested the Court award post-judgment interest from their respective judgment dates through October 1, 2006.

It is well-settled in maritime law that post-judgment interest is fixed by 28 U.S.C. § 1961(a). *Columbia Brick Works, Inc*, 768 F.2d 1066 (9th Cir. 1985); *Western Pac. Fisheries, Inc.*, 730 F.2d at 1289.

Title 28, U.S.C. § 1961(a) states,

> Interest shall be allowed on any money judgment in a civil case recovered in a district court…Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [sic] the date of judgment.

Id. The F/V CHLOE Z does not dispute that both Matos and Pranjic are entitled to post-judgment interest from the date of the judgments. CHLOE Z suggests that date to be the date the mandate was received, September 11, 2006.

/ /

/ /

/ /

12

## III. CONCLUSION

Based on the aforementioned, CHLOE Z respectfully requests that the claimants' requests for prejudgment interest be denied. Should the Court award prejudgment interest, the interest should be awarded on past damages only, using the rate determined under the post-judgment interest statute on the date of each claimant's injury, or in the alternative, using a rate limited by the rate of return on the vessel sale proceeds.

RESPECTFULLY SUBMITTED this 1st day of November, 2006.

**ARRIOLA, COWAN & ARRIOLA**

By: /s/ Anita P. Arriola
**ANITA P. ARRIOLA**
Attorneys for F/V CHLOE Z