Michael A. Barcott
HOLMES WEDDLE & BARCOTT
999 Third Avenue, Suite 2600
Seattle, Washington 98104
(206) 292-8008 Telephone
(206) 340-0289 Facsimile

Anita P. Arriola
ARRIOLA, COWAN & ARRIOLA
259 Martyr Street, Suite 201
Hagatna, GU 96932
(671) 477-9730 Telephone
(671) 477-9734 Facsimile

Attorneys for the M/V CHLOE Z

FILED
DISTRICT COURT OF GUAM
NOV - 1 2006
MARY L.M. MORAN
CLERK OF COURT

## DISTRICT COURT OF GUAM

### TERRITORY OF GUAM

| | |
|---|---|
| TCW SPECIAL CREDITS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FISHING VESSEL M/V CHLOE Z, et al., <br><br> Defendants. | Case No. 96-00055 <br><br> AFFIDAVIT OF MICHAEL A. BARCOTT IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION |

STATE OF WASHINGTON )
          ) ss.
COUNTY OF KING )

  MICHAEL A. BARCOTT, being first sworn on oath, deposes and says:

  1.  I am over the age of 18, am competent to be a witness and make the following declaration based on my personal knowledge.

  2.  Attached as Exhibit 1 is a true and correct copy of Matos's Complaint for Damages For Personal Injuries filed with the U.S. District Court for the Territory of Guam on May 11, 1994.

AFFIDAVIT OF MICHAEL A. BARCOTT IN SUPPORT OF
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION - 1

HOLMES WEDDLE & BARCOTT
999 THIRD AVENUE, SUITE 2600
SEATTLE, WASHINGTON 98104-4011
TELEPHONE (206) 292-8008

3.      Attached as Exhibit 2 is a true and correct copy of Pranjic's Complaint for Damages For Personal Injuries filed with the U.S. District Court for the Territory of Guam on May 11, 1994.

4.      Attached as Exhibit 3 is a true and correct copy of the Court's Judgment for Matos, filed August 19, 1996.

5.      Attached as Exhibit 4 is a true and correct copy of the Court's Judgment for Pranjic, filed July 26, 1996.

6.      Attached as Exhibit 5 is a true and correct copy of excerpts from the Transcript of Proceedings, dated May 20-21, 2003.

7.      Attached as Exhibit 6 is a true and correct copy the Court's Order authorizing intervention in the *in rem* proceeding, filed December 3, 1996.

8.      Attached as Exhibit 7 is a true and correct copy of the Court's Order, dated December 18, 1996.

9.      Attached as Exhibit 8 is a true and correct copy of the Court's Order awarding judgment for Matos, filed February 19, 1999.

10.     Attached as Exhibit 9 is a true and correct copy of the Court's Order awarding judgment for Pranjic, filed January 11, 1999.

11.     Attached as Exhibit 10 is a true and correct copy of the Ninth Circuit's 2000 Unpublished Opinion in *Matos*, 238 F.3d 431 (Table), 2000 WL 1277935 (9th Cir. (Guam)).

12.     Attached as Exhibit 11 is a true and correct copy of the Ninth Circuit's 2000 Unpublished Opinion in *Pranjic*, 238 F.3d 431 (Table), 2000 WL 1277922 (9th Cir. (Guam)).

AFFIDAVIT OF MICHAEL A. BARCOTT IN SUPPORT OF
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION - 2

HOLMES WEDDLE & BARCOTT
999 THIRD AVENUE, SUITE 2600
SEATTLE, WASHINGTON 98104-4011
TELEPHONE (206) 292-8008

13. Attached as Exhibit 12 is a true and correct copy of the Court's Order amending Pranjic's award, filed October 25, 2000.

14. Attached as Exhibit 13 is a true and correct copy of Pranjic's Notice of Cross-Appeal, filed March 26, 1999.

15. Attached as Exhibit 14 is a true and correct copy of the Court's Order, filed September 21, 1999, denying Pranjic's Motion for an Extension of Time to File and Appeal.

16. Attached as Exhibit 15 is a true and correct copy of F/V CHLOE Z's Motion to Dismiss Pranjic's cross-appeal for lack of jurisdiction, dated October 7, 1999.

17. Attached as Exhibit 16 is a true and correct copy of the Ninth Circuit's Order in *Pranjic*, dismissing his cross-appeal, filed November 18, 1999.

18. Attached as Exhibit 17 is a true and correct copy of the Court's Findings of Fact and Conclusions of Law, filed April 8, 2004.

19. Attached as Exhibit 18 is a true and correct copy of the Ninth Circuit's Mandate and Memorandum in *Matos* and *Pranjic*, filed September 11, 2006.

20. Attached as Exhibit 19 is a true and correct copy of the applicable portions of the post-judgment interest rate tables.

21. Attached as Exhibit 20 is a true and correct copy of Joint Trial Exhibit #19 referred to by the Court in awarding its 1999 judgment in favor of Pranjic.

22. Attached as Exhibit 21 is a true and correct copy of the letter from the Supreme Court of the United States granting an extension of time to file a petition for a writ certiorari in *F/V CHLOE Z v. Robert Matos, et al.* dated October 26, 2006.

AFFIDAVIT OF MICHAEL A. BARCOTT IN SUPPORT OF
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION - 3

**HOLMES WEDDLE & BARCOTT**
999 THIRD AVENUE, SUITE 2600
SEATTLE, WASHINGTON 98104-4011
TELEPHONE (206) 292-8008

1.    Further the affiant sayeth naught.

2.

3.                                      MICHAEL A. BARCOTT

4.     SUBSCRIBED AND SWORN TO before this _31st_ day of

5. _October_, 2006.



6.

7.                    Print Name: _KARYN E. LUCKETT_

                   Notary Public in and for the State of: _WA_

8.                    Residing at: _King County_

                   My Commission Expires: _11-17-06_

9.

10.   G:\2446\13835\PLDG\AMB\AMB.10.31.06.doc

11.

12.

13.

14.

15.

16.

17.

18.

19.

20.

21.

22.

23.

24.

25.

26.

AFFIDAVIT OF MICHAEL A. BARCOTT IN SUPPORT OF
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION - 4

HOLMES WEDDLE & BARCOTT
999 THIRD AVENUE, SUITE 2600
SEATTLE, WASHINGTON 98104-4011
TELEPHONE (206) 292-8008

1  DWIGHT F. RITTER, ESQ. #127030
   LAW OFFICES OF DWIGHT F. RITTER
2  170 Laurel Street
   San Diego, California 92101
3  Telephone: (619) 238-1811

4  JEAN MELANCON, ESQ.
   MCCULLY, LANNEN, BEGGS & MELANCON
5  Suite 1004, Pacific News Building
   238 Archbishop Flores Street
6  Agana, Guam 96910
   Telephone: (671) 477-7418
7
   Attorneys for Plaintiff
8

F I L
DISTRICT COU
AGANA.

MAY 11 19:4

MARY L. M. N
Clerk Of Co.

9            UNITED STATES DISTRICT COURT

10           FOR THE TERRITORY OF GUAM

11

12  ROBERT MATOS,                     )  CASE NO. CV-94-000 13
                                      )
13                      Plaintiff,    )  COMPLAINT FOR DAMAGES
    v.                                )  FOR PERSONAL INJURIES
14                                    )
    M/V CHLOE Z, her engines,         )
15  tackle, apparel and furniture,    )
    CHLOE Z FISHING COMPANY, INC.,    )
16  a corporation, TUNA CLIPPER       )
    SERVICES, ZEE ENTERPRISES, INC.,  )
17  a corporation, and DOES I         )
    through X, inclusive,             )
18                                    )
                                      )
19                      Defendants.   )

20      COMES NOW plaintiff ROBERT MATOS and for a cause of action

21  against the defendants, and each of them, alleges:

22                     FIRST CAUSE OF ACTION

23      1.   Plaintiff elects to maintain this action under the

24  provision of the Merchant Seaman's Act enacted June 5, 1920, c.

25  250, Section 33, 41 Stat. 1007, otherwise known as the Jones Act,

26  46 U.S.C. Section 688, and also under the General Maritime Law.

27      2.   The true names or capacities, whether individual,

28  corporate, associate, or otherwise of defendants, DOES I through X,

    inclusive, are unknown to plaintiff who therefore sues said

                           Exhibit 1

PLAINTIFF'S
EXHIBIT

1  defendants by such fictitious names.  Plaintiff is informed and
2  believes and thereon alleges that each of the defendants herein
3  designated as a DOE is negligently responsible in some manner for
4  the events and happenings herein referred to, and negligently
5  caused injuries and damages proximately thereby as hereinafter
6  alleged.

7       3.   Plaintiff is informed and believes and thereon alleges
8  that at all times herein mentioned, defendants, and each of them,
9  were individuals, corporations, partnerships and/or unincorporated
10 associations residing and/or doing business in the within Territory
11 of Guam.

12      4.   Plaintiff is informed and believes and thereon alleges
13 that at all times herein mentioned, defendants, and each of them,
14 were the agent, employee and/or joint venturer of its co-defendant,
15 and as such was acting within the course and scope of said agency,
16 employment and/or joint venture.

17      5.   That at all times herein mentioned, defendant CHLOE Z
18 FISHING COMPANY, INC., TUNA CLIPPER SERVICES, ZEE ENTERPRISES, INC.
19 and DOES I through III, and each of them, were the owners of and
20 operated, managed, maintained, supervised, controlled and inspected
21 the defendant fishing vessel M/V CHLOE Z and used and employed said
22 vessel for the purpose of fishing on navigable waters.

23      6.   That on or about July, 1992, and for some time prior
24 thereto, plaintiff was employed by the defendants, and each of
25 them, aboard the M/V CHLOE Z, was in the employ of the defendants,
26 and each of them, and was acting within the scope, purpose and
27 duties of such service and employment.

28      7.   That on or about mid July, 1992, while said vessel was on

- 2 -

1 or about the high seas, plaintiff was engaged in the performance of

2 his duties, was in the process of lifting a new and heavy bilge

3 strainer which was stuck causing plaintiff to injure his back and

4 right leg, as more specifically hereinafter set forth. Thereafter,

5 on August 8, 1992, while similarly engaged during the unloading of

6 the fish, plaintiff reinjured his back and leg when he slipped on

7 brine solution while attempting to loosen frozen bolts on a broken

8 brine line.

9      8. Disregarding their duties in the premises, defendants,

10 CHLOE 2 FISHING COMPANY, INC., TUNA CLIPPER SERVICES, ZEE

11 ENTERPRISES, INC. and DOES 1 through X, by their agents, servants

12 and employees were careless and negligent and the vessel was

13 unseaworthy in:

14      (a) Failing to provide a safe place for plaintiff to

15 perform his duties;

16      (b) Failing to instruct and/or properly supervise crew

17 members as to safe means of performing duties;

18      (c) Failing to provide plaintiff with a safe and

19 seaworthy vessel;

20      (d) Failing to provide plaintiff with sufficient and

21 proper appliances and equipment to perform his work as chief

22 engineer.

23      9. As a direct and proximate result of the negligence and/or

24 unseaworthiness of the defendants, plaintiff was injured in his

25 health, state and activity as stated hereinabove.

26      10. As a direct and proximate result of the incident alleged

27 herein, plaintiff was injured in his health, strength and activity,

28 sustaining severe injury to his body and mind, and shock and injury

- 3 -

0113

1  to his nervous system and person, all of which injuries have caused
2  and continue to cause great physical and emotional pain and
3  suffering. Plaintiff is informed and believes and thereon alleges
4  that some or all of said injuries will result in permanent damage,
5  disability and pain and suffering, causing general damages in an
6  amount to be determined at the time of trial.

7      11. As a direct and proximate result of the incident alleged
8  herein, plaintiff incurred indebtedness for physicians,
9  hospitalization, x-rays, drugs and sundries in the treatment of
10 said injuries and will be so indebted in the future. Plaintiff
11 will respectfully submit said amounts, upon proof, at the time of
12 trial.

13     12. As a direct and proximate result of the incident alleged
14 herein, plaintiff was prevented from attending to his usual
15 occupation and is informed and believes and thereon alleges that he
16 will continue to be so prevented from attending to his usual
17 occupation, resulting in a loss of earnings to the plaintiff in an
18 amount which is not known at the present time, but which will be
19 respectfully submitted, upon proof, at the time of trial.

20     13. At all times herein mentioned, defendants, and each of
21 them, have negligently, willfully and wrongfully failed to provide
22 maintenance and cure to plaintiff herein in an amount necessary to
23 provide for the plaintiff. By reason of the wrongful conduct of
24 the defendants, and each of them, plaintiff is entitled to interest
25 at the rate prescribed by law on all sums owing as maintenance and
26 cure from the dates the same became due and owing and in addition
27 for reasonable attorney's fees caused by reason of the defendant's
28 conduct as hereinabove alleged for failure to pay maintenance and

- 4 -

1  cure.

2       14.    That defendants are guilty of malice, fraud and
3  oppression in that they have intentionally refused to pay and have
4  failed without justification to timely provide for cure in a
5  willful and conscious disregard of plaintiff's rights to receive
6  said cure and plaintiff should recover, in addition to actual
7  damages, damages to make an example of and to punish defendants.

8       15.    That by reason of the defendants' willful and
9  intentional failure to pay cure as aforesaid, plaintiff has
10  suffered emotional distress, embarrassment, humiliation and
11  otherwise has been damaged.   Plaintiff is further entitled to
12  damages in an amount which he does not know at this time and he
13  prays leave to insert the same when fully ascertained, including
14  punitive damages.

15       WHEREFORE, plaintiff prays judgment against the defendants,
16  and each of them, as follows:

17       1.   For general damages in an amount to be determined at the
18  time of trial;

19       2.   For medical and incidental expenses, both present and
20  future, according to proof;

21       3.   For lost earnings, both present and future, according to
22  proof;

23       4.   For maintenance and cure according to proof;

24       5.   For prejudgment interest at 10% per annum;

25       6.   For punitive damages in the sum of $500,000.00;

26       7.   For costs of suit incurred;

27  ///

28  ///

- 5 -

8. For such other and further relief as the Court may deem just and proper.

Dated: ___4/7/94___

LAW OFFICES OF DWIGHT F. RITTER

By: _____
DWIGHT F. RITTER
Attorney for Plaintiff

///
DFR/pch
Notes.II
Complaint.DFR

- 6 -

F I L E D
DISTRICT COURT OF GUAM
AGANA, GUAM

MAY 11 1994

MARY L. M. MORAN
Clerk Of Court

1  DWIGHT F. RITTER, ESQ. #127030
   LAW OFFICES OF DWIGHT F. RITTER
2  170 Laurel Street
   San Diego, California 92101
3  Telephone: (619) 238-1811

4  JEAN MELANCON, ESQ.
   MCCULLY, LANNEN, BEGGS & MELANCON
5  Suite 1004, Pacific News Building
   238 Archbishop Flores Street
6  Agana, Guam 96910
   Telephone: (671) 477-7418

7

8  Attorneys for Plaintiff

9           IN THE UNITED STATES DISTRICT COURT

10              FOR THE TERRITORY OF GUAM

11

12  SLOBODAN PRANJIC,                )  CASE NO. CV 94-00014
                                     )
13                      Plaintiff,   )  COMPLAINT FOR DAMAGES
     v.                              )  FOR PERSONAL INJURIES
14                                   )
    M/V CHLOE Z, her engines,        )
15  tackle, apparel and furniture;   )
    CHLOE Z FISHING COMPANY, INC.,   )
16  a corporation; TUNA CLIPPER      )
    SERVICES; ZEE ENTERPRISES, INC., )
17  a corporation, and DOES 1        )
    through X, inclusive,            )
18                                   )
                        Defendants.  )
19  _____)

20      COMES NOW plaintiff SLOBODAN PRANJIC and for a cause of

21  action against the defendants, and each of them, alleges:

22      1.    Plaintiff elects to maintain this action under the

23  provision of the Merchant Seaman's Act enacted June 5, 1920, c.

24  250, Section 33, 41 Stat. 1007, otherwise known as the Jones Act,

25  46 U.S.C. Section 688, the "savings to suitors" clause of 28 U.S.C.

26  Section 1333, and also under the General Maritime Law.

27      2.    The true names or capacities, whether individual,

28  corporate, associate, or otherwise of defendants, DOES I through X,

    inclusive, are unknown to plaintiff who therefore sues said

PLAINTIFF'S
EXHIBIT

1 defendants by such fictitious names. Plaintiff is informed and
2 believes and thereon alleges that each of the defendants herein
3 designated as a DOE is negligently responsible in some manner for
4 the events and happenings herein referred to, and negligently
5 caused injuries and damages proximately thereby as hereinafter
6 alleged.

7     3. Plaintiff is informed and believes and thereon alleges
8 that at all times herein mentioned, defendants, and each of them,
9 were individuals, corporations, partnerships and/or unincorporated
10 associations residing and/or doing business in the within Territory
11 of Guam.

12     4. Plaintiff is informed and believes and thereon alleges
13 that at all times herein mentioned, defendants, and each of them,
14 were the agent, employee and/or joint venturer of its co-defendant,
15 and as such was acting within the course and scope of said agency,
16 employment and/or joint venture.

17     5. That at all times herein mentioned, defendants and DOES
18 I through III, and each of them, were the owners of and operated,
19 managed, maintained, supervised, controlled and inspected the
20 defendant fishing vessel M/V CHLOE Z and used and employed said
21 vessel for the purpose of fishing on navigable waters.

22     6. That on or about November 25, 1991, and for some time
23 prior thereto, plaintiff was employed by the defendants, and each
24 of them, aboard the M/V CHLOE Z, was in the employ of the
25 defendants, and each of them, and was acting within the scope,
26 purpose and duties of such service and employment.

27     7. That on or about November 25, 1991, while said vessel was
28 on or about the high seas, plaintiff was engaged in the performance

- 2 -

of his duties, was in the process of going from the M/V CHLOE Z to another boat tied up next to it when plaintiff was caused to fall between the boats striking his left ankle in the process, as a result of which he sustained injuries to his left ankle which are more specifically hereinafter set forth.

8. Disregarding their duties in the premises, defendants, and DOES 1 through X, by their agents, servants and employees were careless and negligent and the vessel was unseaworthy in:

(a) Failing to provide a safe place for plaintiff to perform his duties;

(b) Failing to provide plaintiff with safe egress and ingress;

(c) Failing to instruct and/or properly supervise crew members as to safe means of egress and ingress:

(d) Failing to provide plaintiff with a safe and seaworthy vessel.

9. As a direct and proximate result of the negligence and/or unseaworthiness of the defendants, plaintiff fell as stated hereinabove and was injured in his health, state and activity.

10. As a direct and proximate result of the incident alleged herein, plaintiff was injured in his health, strength and activity, sustaining severe injury to his body and mind, and shock and injury to his nervous system and person, all of which injuries have caused and continue to cause great physical and emotional pain and suffering. Plaintiff is informed and believes and thereon alleges that some or all of said injuries will result in permanent damage, disability and pain and suffering, causing general damages in an amount to be determined at the time of trial.

- 3 -

0120

11. As a direct and proximate result of the incident alleged herein, plaintiff. incurred indebtedness for physicians, hospitalization, x-rays, drugs and sundries in the treatment of said injuries and will be so indebted in the future. Plaintiff will respectfully submit said amounts, upon proof, at the time of trial.

12. As a direct and proximate result of the incident alleged herein, plaintiff was prevented from attending to his usual occupation and is informed and believes and thereon alleges that he will continue to be so prevented from attending to his usual occupation, resulting in a loss of earnings to the plaintiff in an amount which is not known at the present time, but which will be respectfully submitted, upon proof, at the time of trial.

WHEREFORE, plaintiff prays judgment against the defendants, and each of them, as follows:

1. For general damages in an amount to be determined at the time of trial;

2. For medical and incidental expenses, both present and future, according to proof;

3. For lost earnings, both present and future, according to proof;

4. For prejudgment interest at 10% per annum;

5. For costs of suit incurred;

6. For such other and further relief as the Court may deem just and proper.

Plaintiff asserts that the amount of damages they seek

/////

/////

- 4 -

0121

1    exceeds the minimum jurisdictional requirements of this Court.

2

3    Dated: **9/7/94**

LAW OFFICES OF DWIGHT F. RITTER

4                   By:

5                      DWIGHT F. RITTER
                     Attorneys for Plaintiff

6

7   DFR/pzh
   Pronjlct
8   Complaint

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 5 -

0122

RECEIVED.
CARLSMITH BALL WICHMAN
CASE & ICHIKI
Date: 9/20/96
Time: 11:56 By: TH

FILED
DISTRICT COURT OF GUAM

AUG 19 1996

MARY L. M. MORAN
CLERK OF COURT

# DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

ROBERT MATOS,

      Plaintiff,

      vs.

CHLOE Z FISHING COMPANY,
INC., ET AL.,

      Defendants.

CIVIL ACTION 94-00013

J U D G M E N T

    This action came before the Court July 23 through July 26, 1996, for trial before a Jury. The Jury rendered its verdict on July 26, 1996. The Court now incorporates that verdict into the following final judgment.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

    1.  Judgment is entered in favor of plaintiff Robert Matos ("Matos") and against Chloe Z Fishing Company, Inc., for the sum of One Million Four Hundred Ninety Seven Thousand Nine Hundred Fifty Five and No/100 ($1,497,955.00) Dollars.

CALENDARED
ATTN: Carlsmith
BY
DATE: 9/2/96 JF 9/18/9

132

000037

Civil Action No. 94-00013
Final Judgment
July 1996

2. Interest shall accrue on the amount set forth in paragraph 1 from the date this judgment is entered, at the rate of __5.81__ per cent, in accordance with 28 U.S.C. 1961.

3. Matos is also awarded his costs which shall be determined in accordance with 28 U.S.C. 1920. This judgment shall be deemed to include those costs allowed by this Court or the Clerk of Court.

Executed on ~~July~~ August 13, 1996

JOHN C. COUGHENOUR
District Judge

Presented By:

Dwight F. Ritter
Law Offices of Dwight F. Ritter
170 Laurel Street
San Diego, California 92101

By: Dwight F. Ritter
for

I hereby certify, that the annexed instrument is a true copy of the original on file in my office.
ATTEST: CLERK OF COURT
District Court of Guam
Territory of Guam

By:                    Clerk

2

EDD
F-19-96
PB

RECEIVED
JUL 2 9 1996
DISTRICT COURT OF GUAM

133

`FILED`
DISTRICT COURT OF GUAM

JUL 26 1996

MARY L. M. MORAN
CLERK OF COURT

## DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

| | | |
|---|---|---|
| SLOBODAN PRANJIC, | ) | CIVIL ACTION 94-00014 |
| Plaintiff, | ) | |
| vs. | ) | J U D G M E N T |
| CHLOE Z FISHING COMPANY, INC., ET AL., | ) | |
| Defendants. | ) | |

This action came before the Court July 15 through July 19, 1996, for trial before a Jury. The Jury rendered its verdict on July 19, 1996. The Court now incorporates that verdict into the following final judgment.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. Judgment is entered in favor of plaintiff Slobodan Pranjic ("Pranjic") and against Chloe Z Fishing Company, Inc., for the sum of Seven Hundred Sixty Five Thousand and No/100 ($765,000.00) Dollars.

`RECEIVED`
CAPT... ... ...HMAN

Date: 7/29/96
Tim. 4 40 ...y: ...

123

Civil Action No. 94-00014
Final Judgment
July 1996

2. Interest shall accrue on the amount set forth in paragraph 1 from the date this judgment is entered, at the rate of $\underline{5.59}$ ___ per cent, in accordance with 28 U.S.C. 1961.

3. Pranjic is also awarded his costs which shall be determined in accordance with 28 U.S.C. 1920. This judgment shall be deemed to include those costs allowed by this Court or the Clerk of Court.

Executed on July _26_, 1996

_____
JOHN C. COUGHENOUR
District Judge

EOD 7/26/96

Presented By:

Dwight F. Ritter
Law Offices of Dwight F. Ritter
170 Laurel Street
San Diego, California 92101

_____
By: Dwight F. Ritter

2

124

1    indemnity-type policy in the marine or maritime

2    shipping industry, call it what you want, is routine,

3    it's the rule.  Once in a while there's a policy that

4    comes along that provides for a different relationship

5    between the insured and the insurer, but protection and

6    indemnity is by and large the routine, it's normal.

7        Q.    Are you familiar with the concept of a

8    pay-to-be-paid clause?

9        A.    Yes, I am.

10       Q.    Will you explain what that means, please.

11       A.    The pay-to-be-paid clause is sort of an

12   informal way of describing what the indemnity portion

13   of the policy requires, and that is, that if the

14   insured has a liability as a result of a judgment, the

15   insured has to pay that liability and then the insurer

16   or the mutual association will reimburse or indemnify

17   the insured.

18       Q.    How common are pay-to-be-paid policies in the

19   protection and indemnity arena?

20       A.    They're one and the same; protection and

21   indemnity implies pay-to-be-paid.  As I said, you

22   usually don't see the pay-to-be-paid words in the

23   policy, some of them may have it, but that's --

24   they're one and the same.

25       Q.    In your opinion, does this disclosure

1   you still have to prove your claim; you're not the

2   insured, it's the vessel owner that's the insured.

3   I'm speaking now as the plaintiff's lawyer.

4       Q.   You talked about the concept of pay-to-be-

5   paid?

6       A.   Yes, that's very important to maritime

7   practice.

8       Q.   In maritime practice, how common are --

9   strike that.

10           What is your understanding of a pay-to-be-paid

11   policy?

12      A.   Just as the name suggests, it's really, and

13   I think of it as an indemnity policy, protection and

14   indemnity.   The indemnity portion is that they will

15   indemnify the owner, who is the insured, if the owner

16   pays the claim.

17      Q.   How common is that kind of insurance in the

18   maritime personal injury arena, pay-to-be-paid,

19   protection and indemnity insurance?

20      A.   I think it's prevalent.   I might say, though,

21   in clarity, that sometimes you never get to that issue

22   because you get into settlement negotiations.

23      Q.   Is this one of those issues you usually find

24   out about when things are going south?

25      A.   I like to think I find out about it earlier

1    policies with pay-to-be-paid clauses?

2         A.    Well, yes, that's the predominant policy.  But

3    might I add that frequently you don't get to that point

4    where  it becomes relevant because, in the course of

5    handling the case and getting it ready for trial, at

6    least in my practice has been 90 percent of cases want

7    to be settled.

8         Q.    Would you expect any competent maritime

9    attorney, upon reading the terms "protection and

10   indemnity", at least to be alerted this might be a

11   pay-to-be-paid policy?

12        A.    I can really only give you my experience.

13   I'm not in a position to evaluate what's competent or

14   not competent.

15        Q.    What's your experience?

16        A.    Well, protection and indemnity means, it's a

17   shorthand term of art for pay-to-be-paid, or at least

18   that's potentially in there.

19             And there are other clauses that are in that

20   policy that are just as important, and that has to do

21   with whether the assured goes bankrupt, or the assured

22   becomes insolvent.  Those -- I mean that's -- those are

23   policies, if I may, that are designed I think to

24   protect the insurance industry.  I'm speaking as a

25   plaintiff's lawyer.

FILED
DISTRICT COURT OF GUAM

DEC - 3 1996

MARY L. M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | | |
|---|---|---|
| TCW SPECIAL CREDITS, ETC., ET. AL., | ) ) | CIVIL ACTION 96-00055 |
| Plaintiffs and Intervening Plaintiffs, | ) ) ) ) ) | |
| vs. | ) ) | O R D E R |
| FISHING VESSEL CHLOE Z, ETC., ET. AL., | ) ) ) | (AUTHORIZING IN REM PROCESS) |
| Defendants. | ) ) ) ) | |

This action came before the Court December 2, 1996, on proposed intervening plaintiffs Robert Matos and Slobodan Pranjic's ("Intervening Plaintiffs") motions ("Motions") for leave to file intervening in rem complaints against defendant vessel CHLOE Z. The Court granted the Motions by way of order ("Order") filed December 2, 1996. The Court now authorizes issuance of in rem process pursuant to the Order and Intervening Plaintiffs' Motions and verified Complaints ("Complaints"); and accordingly,

District Court
Civil Action 96-00055
Order for In Rem Process
December 1996


**IT IS HEREBY ORDERED THAT:**


1.  The conditions for an action in rem by Intervening
Plaintiffs and against defendant vessel CHLOE Z ("Vessel") appear
to exist.

2.  A warrant for arrest of the Vessel is authorized on the
form accompanying this Order.

3.  The Clerk of Court is also authorized to issue summons
to defendant Vessel in respect of both Complaints.


Executed on December __3__, 1996


/s/ John S. Unpingco
_____
JOHN S. UNPINGCO
District Judge


Presented By:

McCully, Lannen, Beggs
& Melancon, P.C.

Attorneys for Robert Matos
and Slobodan Pranjic

_____
By:  Jean Melancon

2

McCULLY, LANNEN, BEGGS
& MELANCON, P.C.
SUITE 403, FIRST
HAWAIIAN BANK BUILDING
400 CHALAN MACHAUTE
MAITE, GUAM 96927

TELEPHONE: 671 477 - 7418

ATTORNEYS FOR
INTERVENING PLAINTIFFS
ROBERT MATOS AND
SLOBODAN PRANJIC

## DISTRICT COURT OF GUAM

### TERRITORY OF GUAM

| | |
|---|---|
| TCW SPECIAL CREDITS, ETC., ET. AL., ) <br> ) <br> Plaintiffs and ) <br> Intervening ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> FISHING VESSEL CHLOE Z, ) <br> ETC., ET. AL., ) <br> ) <br> Defendants. ) <br> ) | CIVIL ACTION 96-00055 <br><br> WARRANT <br><br> (FOR VESSEL ARREST) |

To:  The United States Marshals Service

District of Guam

YOU ARE COMMANDED TO:

1.    Arrest defendant Fishing Vessel CHLOE Z ("Vessel"), carrying U.S. Coast Guard Official Number 653391.

2. Arrest the Vessel prior to the December 3, 1996, scheduled sale ("Sale") of the Vessel, or within two days of the conclusion of the Sale, but in all events prior to confirmation of the Sale and issuance of your Bill of Sale.

3. Detain the Vessel pending further order of the Court, but subject to all relevant prior orders.

4. Deliver a copy of the Robert Matos and Slobodan Pranjic intervening complaints and related summons to the Master or other person in charge of the Vessel.

5. Affix a copy of this warrant and accompanying order in a conspicuous place on the Vessel.

6. File with the Court USMS Form 285 or other appropriate document which verifies that you have arrested the Vessel in accordance with the mandate of this warrant.

Executed and Issued on

December __3__, 1996

/s/ Mary L.M. Moran
MARY L.M. MORAN
CLERK OF COURT
DISTRICT COURT OF GUAM

2

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

TCW SPECIAL CREDITS, et al.

    Plaintiff,
    Plaintiffs-in-Intervention,

        vs.

FISHING VESSEL CHLOE Z,
et al.,

    Defendant.

Civil Case No. 96-00055

ORDER

    This case is before the Court on the Motion of defendant Chloe Z, specially appearing pursuant to F.R.C.P. Supplemental Rule E(8), to Vacate In Rem Process of Pranjic and Matos as plaintiffs-in-intervention. The Chloe Z argues that Pranjic and Matos have no basis for an in rem attachment of the Chloe Z.

    The Court has reviewed the pleadings on file in this matter. The Court rules that the motion to Vacate the In Rem Process is DENIED for the reasons that the claims asserted by both Pranjic and Matos form the basis of a maritime lien pursuant to statute. A maritime tort, such as that which forms the basis of Pranjic's

and Matos' Claims in Intervention, forms the basis of a preferred maritime lien under 46 U.S.C. §31302(5)(B):

> §31301.  Definitions
> In this chapter --
>               * * *
> (5) "preferred maritime lien" means a maritime lien on a vessel --
>               * * *
>     (B) for damage arising out of a maritime tort; ...

The Court further rules that the intervention was timely considering the ambiguous circumstances surrounding the collectability of the personal injury award in Civil Case Nos. 94-00013 and 94-00014, set forth _infra_.

The Court further rules that the statute of limitations does not form a bar to _in rem_ process by Pranjic and Matos.  While it is true that generally _in rem_ actions based on a maritime tort are subject to a three-year statute of limitations, 46 U.S.C. §763a, the principle of equitable estoppel limits the Chloe Z's use of this argument.  The record in this case and in Civil Case Nos. 94-00013 and 94-00014, claimants Pranjic and Matos were led to believe that a jury verdict would be covered by insurance. Since the jury verdicts were returned, they have learned that there is no insurance.  As in the case of <u>Glus v. Brooklyn Eastern District Terminal</u>, 359 U.S. 231 (1959), where the defendant induces the delay, the defendant may be estopped from pleading the statute of limitations as a defense.  The Chloe Z replies that "nowhere...were they told that they would be paid by

the insurance company." However, equitable estoppel is not reserved to situations where there are express promises; subtle conduct, often merely silence, is just as effective to induce complacency.

The elements of equitable estoppel are: (1) the party to be estopped must know the facts; (2) he must intend that his conduct be acted upon or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) the latter must rely on the former's conduct to his detriment. <u>Rambo v. Director,</u> <u>Officer of Workers' Compensation programs</u>, 81 F.3d 840 (9th Cir. 1996).

Here, the Chloe Z must have known that insurance was not available to cover any jury verdicts. However, reference is made to the insurance coverage throughout the civil cases. <u>See</u> Declaration of Dwight Ritter in Opposition to Motion to Vacate. Even the Declaration of Chloe Z's counsel, James McMullen, concedes that there was a representative of the "underwriters" at the settlement discussions, increasing the credibility of the argument that plaintiffs believed that any judgment would be covered by insurance, obviating the necessity for <u>in</u> <u>rem</u> proceedings of any kind.

Further, the Court takes judicial notice of the fact that the Chloe Z was under arrest by a number of claimants in Civil Case No. 94-00027 during the period of time within which the

Page 3

1 | <u>Pranjic</u> and <u>Matos</u> cases were proceeding. However, the Chloe Z
2 | was able to have the arrest warrant lifted by stipulation, i.e.,
3 | Stipulation and Order of July 28, 1995, docket no. 82. At the
4 | time of these proceedings, additional arrests would have impeded
5 | the Chloe Z's ability to continue fishing during this period.
6 | Finally, the injured seamen during this period had no reason to
7 | know that the references to insurance were inaccurate or
8 | misleading, and had no reason to believe that they would have to
9 | resort to <u>in</u> <u>rem</u> process to recover for their injuries. They
10 | were lulled into acquiescence of their <u>in</u> <u>rem</u> claims. The Court
11 | finds that Pranjic and Matos have sustained their burden of
12 | proving the elements of equitable estoppel.

13 |    For the foregoing reasons, the Motion to Vacate is DENIED.

14 |    SO ORDERED this __18th__ day of December, 1996.

JOHN S. UNPINGCO
District Judge

Page 4

FILED
DISTRICT COURT OF GUAM

FEB 1 9 1999

MARY L.M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

TCW SPECIAL CREDITS, et al.,

    Plaintiffs,

        vs.

F/V CHLOE Z, et al.,

    Defendants,

ROBERT MATOS,

    Plaintiff in Intervention,

        vs.

F/V CHLOE Z, et al.,

    Defendants.

Civil Case No. 96-00055

RECEIVED
ARRIOLA, COWAN & ARRIOLA

FEB 2 2 1999

BY: _____ TIME: 12:05

ORDER

This case came on for trial on July 20, 1998. At the conclusion of the trial, the Court took the matter under advisement, and thereafter reviewed the trial testimony which was submitted by way of videotape deposition or transcript deposition. The Findings of Fact and Conclusions of Law follow.

**Findings of Fact:**

Robert Matos, a 39 year old Portuguese American who settled in San Diego, began fishing after high school and aspired to be an ship's engineer. He eventually earned a U.S. Coast Guard Chief Engineer's license but worked as an assistant engineer on board the Chloe Z tuna

1

1    purse seiner, a ship belonging to the Zuanich fleet and fishing in the Western Pacific.

2         On Trip #11 with the Chloe Z, a situation arose on August 8, 1992, in which Matos, as

3    assistant Engineer of the vessel, had to lift a strainer as a part of his regular duties. The strainer

4    was a two foot by six inch strainer which weighed 44 pounds.  Matos was asked to give a

5    helping hand to crewmembers Kolega and Vidov who were trying to lift it for routine cleaning.

6         As he entered the strainer room, he observed two individuals (non-engineers) trying to

7    lift the strainer. Matos testified that since he understood straining equipment, he thought he

8    could lift it himself better than the untrained crew who were trying to lift it at that time.  In his

9    career he had lifted many strainers. Matos positioned himself to lift the strainer and lifted. He

10   testified that he was in a squat position as he started to lift. He could not lift it; in fact, he

11   severely strained his back in the process and had to immediately retire to his berth to rest.

12   Others then lifted the strainer using a crow-bar type instrument for leverage — it lifted easily.

13   Following his injury, Matos reported his injury to Chief Engineer Moraro and was taking

14   painkillers. His duties had to be lightened because of his injury.

15        Though expert career engineer Copitas testified that the strainer was made of materials

16   fit for its intended duties, evidence is strong to the contrary.  The strainer collects debris sucked

17   up from the pipe alley and the engine room.  However, Expert Patterson testified that the

18   strainer was composed of mild steel.  Mild steel is a ferrous metal which was inappropriate for

19   use on a vessel at work in the high seas for months at time because ferrous metals corrode faster

20   than non-ferrous metals.  A strainer is a piece of equipment which must be cleaned frequently at

21   sea.  Because of this the strainer must be made of materials which are easy to clean.  The

22   previous strainer in this vessel was made of non-corrosive metals.  The constant exposure to

23   seawater contributed to the rusting of these materials and the corrosion caused the flange to

24   freeze inside the cannister. Career Engineer Copitas testified that lighter strainers were available.

25        The strainer which Matos lifted was custom made and installed at Casamar Shipyards on

26   Guam.  This larger strainer was installed, replacing the prior, smaller, one, which had

27

28                                            2

1  deteriorated. However, an identical strainer could have been installed but was not. There was
2  testimony that this was because the prior strainer could not quickly clean the bilge as fast as the
3  new one, and in an effort to increase the efficiency of the ship, the larger strainer was ordered.
4  This is consistent with Moraro's testimony that the lighter strainer clogged more easily. The
5  strainer is a very important piece of safety equipment on board, because the strainer must be able
6  to be lifted very quickly if the ship is ever in a position that it is taking on water. As was stated
7  at trial, if it takes a lot of time to lift the strainer, the ship may have already taken on enough
8  water to sink, thus the importance of a liftable strainer. Matos testified that he had once lifted
9  the prior strainer with one finger. In the 17 years that Matos had fished he had never seen a
10 strainer like this, and had no reason to expect it to be any heavier than the lighter strainers he
11 had worked with on other boats. There was also evidence that all other strainers on board were
12 of the lighter variety that Matos was familiar with, in fact the predecessor to the strainer in
13 question was reportedly the size of a coffee can.

14      A second incident took place on Trip #12 which exacerbated Matos' injury. The ship
15 was docked in Tinian and the fish in the hold were frozen together. There was testimony that
16 the fish were stuck because of improper freezing and packing of the fish, which is the
17 responsibility of the Chief Engineer. The decision was made by the Chief Engineer to use seal
18 bombs to dislodge the fish. When the seal bomb explosion went off it resulted in a pipe in the
19 pipe alley bursting. Matos was asleep at this time, as it was 6 a.m. and he had been on watch all
20 the previous night. When the pipe burst he was awakened by then Chief Engineer Leinert and
21 asked to come attend to the emergency. In order to stop the pipe leak, he needed to loosen a
22 bolt on the pipe flange. Chief Engineer Moraro instructed Matos to do so to stop the flooding.

23      Removal of bolts is a standard part of an engineer's duties on board his assigned vessel.
24 The bolt that Matos had to loosen was made of mild steel galvanized rather than stainless steel.
25 Matos could not tell from looking at the bolt that it was frozen. Once he tested it he realized it
26 was frozen so he decided to loosen it with a "cheater bar" and a wrench on the bolt. He had to

27

28

3

1  again position himself to put sufficient pressure on that bolt. The flooring was wet because of

2  the flooding. He was wearing his engineer boots. He tested his footing and thought his footing

3  was adequate to prevent injury. He then had to step off the cat walk. He pulled on the bolt hard

4  only once, but hard enough that he fell against the wrench which made him slip and fall

5  backwards. His foot immediately went numb and he felt intense pain. He had again injured his

6  back.

7        To eventually remove the bolts, they were cut off by torch by Leinert, though there was

8  testimony that the ship's captain ordered the torching to stop because it was creating toxic

9  fumes.

10        Often, an oxygen acetylene torch is used to remove a stuck bolt. However, the risk of

11  toxic fumes from the burning of PVC plastic prevented this from being a safe alternative. There

12  was also testimony that "penetrating oil" is also sometimes used but that it takes several hours to

13  work on a stuck bolt. Because of the rushing water, Matos did not have time to use penetrating

14  oil to loosen the bolt.

15        Immediately after the injury, he was assisted to Chief Engineer's quarters and given

16  codeine painkillers and was outfitted with a back brace. As the ship was on its way to Guam,

17  Matos did not ask for any special transportation to Guam.

18        The Chloe Z docked on Guam two days later, and Matos was taken immediately to

19  Guam Memorial Hospital. He was x-rayed and given medication for muscle spasms. He was

20  not admitted to the hospital but returned to the boat to convalesce. Moraro recommended back

21  massages and a chiropractor, which did not improve Matos' pain. The vessel left again for a

22  fishing trip, but Matos' leg remained numb, and this restricted his capacity to perform his duties

23  on the trip. He was unable to ascend or descend stairs. His numbness increased and his bowels

24  quit working, so he asked the captain to drop him in the next port, which was Kosrae in the

25  Federated States of Micronesia. He immediately went to the doctor in Kosrae, who told him

26  that he needed treatment in the mainland. He proceeded immediately to Los Angeles. Upon

27

28                           4

1   arrival in California he was examined by a doctor and told that he had two herniated discs and
2   needed surgery. He underwent the recommended surgery and the ensuing physical therapy.

3       He is still undergoing physical therapy. He still experiences numbness and pain in his
4   arms and legs. He cannot sit or stand for too long. He also suffered depression from the loss of
5   his ability to work on a fishing trip and from the loss of a more physical lifestyle (surfing and
6   skiing). He is also still being medicated. Because he could not work in the fishing industry any
7   longer, he attended card dealer school in his home town of Las Vegas. He works now as a
8   dealer in a casino, presently earning $32,000.00 per year. His lifestyle has suffered because he
9   has not been able to make the average of $75,000 to $80,000 per year he was making in the tuna
10   industry. The only restriction from his back injury on Matos' new career as a casino worker is
11   that he cannot work the craps table because of the bending required.
12   ///
13   ///
14   ///
15   ///
16   ///
17   ///
18   ///
19   ///
20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

5

Case 1:96-cv-00055   Document 1586-2   Filed 11/01/2006   Page 5 of 24

**Conclusions of Law:**

1    The Court finds that the plaintiff has established a lien against the vessel Chloe Z pursuant to the general maritime laws of the United States and pursuant to Supplemental Rules for Certain Admiralty and Maritime Claims C & E, and Rule 9(h) of the Federal Rules of Civil Procedure and for a preferred maritime lien under 46 U.S.C. §31302(j)(6).

As to the unseaworthiness cause of action, the plaintiff has the burden of proving the following by a preponderance of the evidence: (1) the Chloe Z was unseaworthy, and (2) the unseaworthy condition was a proximate cause of an injury to the plaintiff. As to the definition of unseaworthiness: A vessel owner has a duty to provide and maintain a seaworthy vessel. A vessel is seaworthy if the vessel and all of its parts and equipment are reasonable for their intended purpose, and it is operated by a crew reasonably adequate and competent for the work assigned. A vessel is unseaworthy if the vessel, or any of its parts or equipment, is not reasonably fit for its intended purpose or if its crew is not reasonably adequate or competent to perform the work assigned. Unseaworthiness is a proximate cause of injury or damage if it played a substantial part in bringing about injury or damage.

If supported by the facts, the principles of contributory negligence would apply to this case. Title 45 U.S.C. §53 provides that if the plaintiff was contributorily negligent, any award may be reduced by the percentage of plaintiff's negligence. If the defendant raises the affirmative defense of plaintiff's negligence, the defendant has the burden of proving each of the following by a preponderance of the evidence: (1) the plaintiff was negligent, and (1) the plaintiff's negligence was a proximate cause of the plaintiff's own injury.

The issue is whether the ship was in an unseaworthy condition as configured with the strainer outfitted by Casamar, and further whether the use of the mild steel bolts presented a further unseaworthy condition.

Though lifting a strainer may have been a routine task for an assistant engineer, this does not relieve the vessel owner of providing a seaworthy vessel, which includes making sure that

6

1   the equipment on the ship was fit for its intended purpose. The Chief Engineer (Moraro) had

2   the legal duty to ensure that safe equipment is used for the purposes of the tuna vessel. The

3   Court finds that the strainer was too heavy for its intended purpose and that the use of mild steel

4   bolts in the pipe alley, where sticky bolts can create emergencies, was also unsuitable.

5          The doctrine of unseaworthiness requires that the vessel, including the hull, the decks, or

6   the machinery, be reasonably fit for the purpose for which they are used. Gutierrez v.

7   Waterman S.S. Corp., 373 U.S. 206 (1963). The vessel components were not reasonably fit for

8   their intended purpose. There was indication that there were stainless steel bolts on board that

9   could have been traded out for the mild steel bolts but were not. After Matos' injury however,

10  Chief Engineer Leinert removed all mild steel bolts and replaced them by stainless steel bolts.

11         Defendant's expert engineer Copitas testified that there was no unseaworthy condition

12  on board the Chloe Z, but he has never even been on board the Chloe Z and has never seen the

13  strainer or the pipe alley in which Matos injured himself. He did testify that the Chief Engineer

14  of a vessel makes the decision to approve what type of strainer to install on the vessel. He

15  decides where it goes and what size it is. However, even Chief Engineer Moraro testified that

16  the configuration of the strainer was defective and inappropriate.

17         Though Matos held a Coast Guard Chief Engineer's license, there was a practice on the

18  Zuanich tuna boats to place Croatians in the higher positions and to put the Coast Guard

19  licensees on board as paper officers such as "paper captains" etc. Though Copitas testified that

20  Matos was the nominal "chief engineer" the Court finds this completely incredible because

21  Moraro was receiving $27.50 per ton of tuna and Matos was receiving $14.50 per ton of tuna.

22  Even Copitas stated that Matos took his orders from the Chief Engineer. For this reason,

23  though Matos held a Chief Engineer's license, the Court will not hold him to the standard of a

24  chief engineer because he did not get paid as a chief engineer. All experts and percipient

25  witnesses have confirmed that Matos was subject to the authority of Chief Engineer Moraro and

26  had to follow his orders.

27

28                                          7

1    Copitas also testified that seal bombs should never be used on any tuna boat. No Chief
2   Engineer should allow seal bombs to be present on the vessel. There are much safer alternatives
3   to unsticking fish than the use of seal bombs. It is the Chief Engineer's responsibility to make
4   sure the fish are not packed too tightly, and that the salinity is correct. When fish are too tightly
5   packed and freeze together it is the direct responsibility of the engineer, and the safest way to
6   relieve it is to drain the hold and re-pump the water in the hold, and drain and re-freeze, etc.,
7   until the fish loosen. However, there was testimony that this was not done because they were
8   not allowed to pump brine into Tinian harbor by law. Seal bombs were chosen as the fastest
9   alternative, but there was testimony that the Chief Engineer should have prevented the frozen
10  tuna in the first place.
11    As to contributory negligence, the Court does not accept Expert Copitas' opinion that
12  Matos' injuries were 100% his fault. The strainer was too large and heavy and made of the
13  wrong materials, and the bolts were made of the wrong materials. However, as a holder of a
14  Chief Engineer's license, the Court holds him to a higher standard, as he is in a position to make
15  discretionary decisions in his position that a mere crewmember would not have the discretion to
16  make. Matos was told to lift the strainer, and he was told to loosen the bolt. He was not told
17  how to do so (as opposed to a non-specialized crewmember being told how to cross between
18  boats — albeit tacitly, or being told specifically how to cross over blowers). Because he
19  exercised his own decision-making powers in deciding how to do something, the Court is
20  compelled to assign some of the duty of care to him. The Court finds that Matos was 33%
21  negligent in his injuries. Pursuant to the principles of contributory negligence, his award will be
22  reduced by this amount.
23    The Court declines to find more negligence on Matos' part because there is no question
24  that he was injured in performing his duties. He would not have been injured but for the
25  unseaworthy equipment on the boat. When a young man's injuries result from service to his
26  employer and that young man's career aspirations are ruined by that injury, the ship that
27
28                                          8

Case 1:96-cv-00055     Document 1586-2     Filed 11/01/2006     Page 8 of 24

1 benefitted from the hard work cannot avoid responsibility for the resulting loss. The service
2 rendered by Matos were meant to benefit the Chloe Z to the severe detriment of Matos, despite
3 the fact that he approached the task at hand with perhaps an injudicious manner.

4     The Court finds that Matos is entitled to:

5 1. Medical and incidental expenses as prayed for in the complaint;

6 2. Lost present and future earnings in an amount to be calculated thus: In one of Matos' most
7 successful years, he fished 7 months per year. Expert Wallace figured, as shown on Exhibit 68
8 of the joint trial exhibits, that Matos would take off only one month per year, therefore Wallace
9 presumes that Matos will fish for 11 months per year. It is not credible that he would have
10 fished for 11 months per year for 22.85 years. The Court splits the difference and will grant
11 damages in the amount to be calculated at fishing nine months of the year, up to age 61. The
12 Court also accepts the scenario that Matos would have been a Chief Engineer later in his career.
13 The Court accepts the figure presented by Expert Wallace of $1,126,025, representing the
14 summary of economic loss, offset by wages and benefits received, working as an Assistant
15 Engineer until approximately age 40, and thereafter as a Chief Engineer, using the average
16 tonnage of the tuna fleet of the Western Pacific. Plaintiffs presented insufficient evidence to
17 compel the Court to the conclusion that Matos would have stayed within the top 50% of the
18 tuna fleets of the Western Pacific.

19     Expert Wallace's opinions did not present an alternative for lost wages for working only
20 nine months per year rather than eleven months per year. The lost wages as presented in
21 Wallace's deposition is not broken down by month. The Court has no choice, therefore, but to
22 simply reduce the loss of wages and benefits by 16.66%, which represents the difference
23 between 11/12 (eleven of twelve months) and 9/12 (nine of twelve months), resulting in the
24 following calculations:

25 Past period (net of taxes):                    $333,369 less 16.66% = $277,829.73
   Loss of wages and taxes
26 Less: Offset Wages and Benefits:               $67,771
   SUBTOTAL: Past period:                        $210,058.73
27

28                              9

0181

| | |
|---|---|
| Future period (in present value dollars and net of taxes): | $1,457,696 – 16.66% = $1,214,842.85 |
| Less: Offset Wages and Benefits: | $597,269 |
| SUBTOTAL: | $617,574.85 |
| TOTAL ECONOMIC LOSS: | $827,633.58 |

The Court accepts the 4% discount as provided for by economist Wallace. Because Matos is a U.S. Citizen, the Court also accepts that the U.S. tax rates should apply. The contributory negligence factor of 33% is applied to this figure, resulting in a final lost present and future earnings award of $554,514.50.

3. Past pain and suffering of $50,000 (less 33%);

4. Future pain and suffering of $50,000.00 (not discounted to present day value pursuant to United States v. Hiyashi, 282 F.2d 599, 606 (9th Cir. 1960)), (less 33%).

Plaintiff has not shown any support in law for his prayer for pre-judgment interest.

Each party is to bear his own costs. The Clerk of Court is to prepare a judgment in accordance with this.

SO ORDERED this 19 day of February, 1999.

JOHN S. UNPINGCO
District Judge

10

FILED
DISTRICT COURT OF GUAM

FEB 22 1999

MARY L.M. MORAN
CLERK OF COURT

1
2
3
4
5
6                **DISTRICT COURT OF GUAM**
7                **TERRITORY OF GUAM**
8

| | |
|---|---|
| 9  TCW SPECIAL CREDITS, et al., | CIVIL CASE NO. 96-00055 |
| 10        Plaintiff, | |
| 11      vs. | **PARTIAL JUDGMENT** |
|   F/V CHLOE Z, et al., | |
| 12        Defendants | |
| 13 | |
|   ROBERT MATOS, | |
| 14 | RECEIVED |
|       Plaintiff-in-Intervention | ARRIOLA, COWAN & ARRIOLA |
| 15      vs. | |
| 16 | FEB 22 1999 |
|   M/V CHLOE Z, et al., | |
| 17        Defendants | BY: _____ TIME: 12:05 |
| 18 | |

19  D. Paul Vernier               Craig Miller
   McKEOWN VERNIE PRICE MAHER    Davis Wright Tremaine LLP
20  Suite 808, GCIC Bldg.          2600 Century Square
   414 West Soledad Avenue       1501 Fourth Avenue
21  Agana, Guam 96910           Seattle, WA 98101

22  Dwight F. Ritter            George Butler, Esq.
   LAW OFFICE OF DWIGHT F. RITTER   BUTLER & TELFORD BUTLER
23  170 Laurel Street            137 Murray Blvd., Suite 203
   San Diego, CA 92101         Hagåtña, Guam 96910
24

25  LAW OFFICES OF CESAR CABOT, P.C.
   Cesar A. Cabot              William L. Banning
26  First Savings & Loan Bldg.        Kurt Micklow
   655 S. Marine Drive           BOOTH BANNING LLP
27  Tamuning, Guam 96911         402 West Broadway, Suite 50
                          San Diego, CA 92101

28

0183

1  G. Patrick Civille
   CHING BOERTZEL CIVILLE CALVO & TANG
2  Suite 400, GCIC Bldg.
   414 West Soledad Avenue
3  Agana, Guam 96910

4  Anita P. Arriola
   ARRIOLA COWAN & ARRIOLA
5  P.O. Box X
   Agana, Guam 96910

6

Steven Zamsky
ZAMSKY LAW FIRM
Suite 501, Bank of Guam Bldg.
111 Chalan Santo Papa
Agana, Guam 96910

Michael A. Barcott
HOLMES WEDDLE & BARCOTT
999 Third Avenue, Suite 2600
Seattle, WA 98104

7      This action came before the Court for a court trial. The issues have been tried and a

8  decision has been rendered.

9      IT IS ORDERED AND ADJUDGED that judgment is entered accordance with the Order

10  filed February 19, 1999.

11      Dated at Agana, Guam, this 22nd day of February, 1999.

12                                    MARY L. M. MORAN
                                      Clerk of Court
13
                                      _Rosita P. San Nicolas_
14                                By:  Rosita P. San Nicolas
                                      Chief Deputy Clerk
15

16

17

18

19

20

21      Notice is hereby given that this document was
        entered on the docket on 2/22/99
22      No separate notice of entry on the docket will
        be issued by this Court.
23                      Mary L. M. Moran
                        Clerk, District Court of Guam,
24              By _San Nicolas_  2/22/99
                   Deputy Clerk        Date
25

26

27

28

0184

F I L E D
DISTRICT COURT OF GUAM

JAN 1 1 1999

MARY L.M. MORAN
CLERK OF COURT

BY: _VS_____ Time: 2:28 ...

**DISTRICT COURT OF GUAM**

**TERRITORY OF GUAM**

1 TCW SPECIAL CREDITS, et al.,

2      Plaintiffs,                      Civil Case No. 96-00055

         vs.

F/V CHLOE Z, et al.,

     Defendants,

SLOBODAN PRANJIC,

     Plaintiff-in-Intervention,

         vs.

M/V CHLOE Z, et al.,                   ORDER

     Defendants.

     This case came on for trial on July 27, 1998. At the conclusion of the trial, the Court took the matter under advisement, and thereafter reviewed the trial testimony which was submitted by way of videotape deposition or transcript deposition. The Findings of Fact and Conclusions of Law follow.

**Findings of Fact:**

     Slobodan Pranjic was born in Zadar in the Croatian/Bosnian area in 1955, and raised on the Adriatic Sea in Kali, Croatia by his grandfather. He grew up fishing, and after mandatory military service he returned to fishing. He was eventually recruited to fish in the Zuanich fleet by

1

1    fellow Croatian Gobin as a crew member on board the M/V Chloe Z in 1991, earning $5.50 per

2    ton of tuna.

3           The Zuanich family owned several tuna purse seiners which fished in the western Pacific

4    Ocean, and transshipped the tuna through Guam.  While out fishing in the western Pacific, tuna

5    vessels from the Zuanich fleet tied up normally two to three times per fishing trip.

6           On November 25, 1991, while working in the South Pacific in that capacity, the Chloe Z

7    made arrangements to tie up with the Milagros Z, another of the Zuanich fleet tuna purse

8    seiners.  The Chloe Z was in need of certain supplies that the Milagros Z had, such as fuel and

9    fresh food.  The two boats tied up sometime between six and seven p.m.  Typically, when the

10   boats tie up, all of the crew from both boats come up on deck to socialize.  However, plaintiff

11   Pranjic was on duty, working with the net rings that attach to the nets.  Pranjic was asked to go

12   to the engine room to get more rings that attach to the bottom of tuna nets.  Pranjic then went to

13   the "wet-deck" area with crewmember Blaslov and Chief Engineer Matos; the net rings needed

14   to be welded in the wet-deck area.  However, after welding so many rings, many more rings

15   needed repair, and further welding would create unwanted fumes.  Chief Engineer Matos told

16   Pranjic to just go over to the Milagros to get more rings.  Pranjic then ascended to the deck to

17   cross over to the Milagros Z.  Once on deck, he stopped to talk to crewmember Vidov, who

18   was working on the re-fueling process.

19          It was testified that on the ocean that day, there was a "slight" roll, which witnesses

20   testified was no more than two feet, and the light was very good.  It was not dark yet.

21          While on deck talking to Vidov, Pranjic witnessed Captain Gobin and crewmember

22   Kurtin cross over between the two boats by jumping from one boat to the other.  After talking

23   to Vidov for approximately five minutes, Pranjic then proceeded to carry out the order he had

24   received from Chief Engineer Matos and he jumped from the Chloe Z to the Milagros Z.  Before

25   he jumped he had estimated the distance at one meter to four feet apart.

26          His jump failed and he fell into the ocean between the vessels with "big heat" in his left

27

28                                                2

0193

1  ankle. On the way down he tried to grab a davit on the Milagros Z, but he could not hold on.

2  He knew something was dangerously wrong as he flailed in the ocean  He was able to glance at

3  his leg and saw that his foot and the ankle bone above it were bent to a 90 degree angle to his

4  shin. No one saw him fall and no one knows how the ankle broke so severely and ended up at

5  such an angle.

6      Several crewmembers saw him fall and started to call out to him. Moments later, the

7  captain and crewmembers jumped into the water to help him. Pranjic thought that his leg might

8  fall off, so he told them to hold his leg on. It apparently took 12 men to get him out of the

9  water. He was carried out of the water and placed on deck, where the Captain told them to put

10  him in a berth. While being placed in his berth, Pranjic heard his captain tell someone to pull up

11  the bumpers and that he should never have tied up to another vessel without putting out the

12  gangplank.

13      Pranjic was in excruciating pain in his berth when Lipanovich came in with an inflatable

14  cast. He straightened out . Pranjic's leg and put it in the cast. A fleet helicopter was hailed to

15  pick up Pranjic, and he was taken by helicopter to Manas Island, a tiny island off New Guinea,

16  at which point the Zuanich fleet jet arrived on Manas and picked up Pranjic to fly him directly to

17  Guam.

18      On Guam, he was transported directly to Guam Memorial Hospital where he was

19  admitted. He was diagnosed with a comminuted fracture of the left leg. Many pieces were

20  shattered from the end of the tibia and the fibula was shattered and broken off. The next

21  morning he was seen by an orthopedist, Dr. Bollinger, who immediately performed surgery

22  including irrigation and debridement. Dr. Bollinger testified that the injury presented a 5% risk

23  that he would lose the limb. He was subsequently hospitalized for 45 days, with two more

24  surgeries following the first. He was released a couple of days before Christmas, but his wound

25  remained open and he ended up in critical condition again because of an allergic reaction to

26  some medication. He had his third surgery at this time, when the doctor found granulation at

27

28                                 3

1   the original injury site. As of Dr. Bollinger's last visit with Pranjic, he had a 25% chance of

2   developing osteomylitus. He would never regain the full range of motion in the limb.

3         Pranjic ended up rehabilitating for the next three months. By March, a representative of

4   the Big Z Fishing Company contacted Pranjic and told him that he either had to go home or fish,

5   and that he could go out on the next fishing trip on the Big Z on their next trip to Samoa.

6   Pranjic testified he did not wish to return to Croatia because of the war there; he testified that

7   "war means no hospital and no medication." So Pranjic traveled to Samoa to board the Big Z,

8   but upon arrival his leg was still so weak that he could not even board the boat under his own

9   power. He needed help to walk on board the vessel, so Lipanovich told him that he simply

10   could not go fishing. Blaslov told him to return to the doctor. Not permitted to board, he

11   returned to San Diego, where he saw two more doctors.

12         One of these doctors was Dr. Ridgley, who told him that eventually, he would have to

13   have the ankle bone fused with the foot bone, but that that was not necessary right away. Dr.

14   Ridgley also testified that the severity of the break was consistent not with a mere bend, or a

15   smashing of the leg against the side of the vessel, but was consistent with a scenario where the

16   ankle was actually trapped against something, or caught inside something, such as a railing as

17   Pranjic fell to the ocean below. The break was not a twist, or the snap of a twig. The limb was

18   crushed, consistent with a scenario where the limb is caught under something as the full weight

19   of the rest of his body pulled against it as he fell. However, it was established at trial that no one

20   knows how the comminuted fracture occurred.

21         Dr. Ridgley performed more surgery, including surgical treatment of severe traumatic

22   arthritis, and cleaning out calcification and bone chips in the ankle. Pranjic was then medically

23   followed by Ridgley and a physical therapist for the next 18 months, when he was said to have

24   reached a "permanent stationary condition" of his left foot. He has endured a total of five

25   operations on the leg.

26         He still limped at the time of trial and is unable to play sports. He has worked in San

27

28                                       4

1  Diego under a work permit as a Bosnian refugee, but that status is likely to expire soon with

2  changes in the relationship between the U.S. government and the Bosnian government. His job

3  is as a helper at a sandwich restaurant in San Diego, where he performs general duties. The

4  bottom part of his left foot below his knee is disfigured and his left leg is shorter than his right,

5  necessitating a riser in his left shoe. He maintains an active lifestyle, and engages in swimming

6  and cycling, but he can no longer play soccer or other sports he used to play which require a

7  strong left leg and balance.

8          A video tape presented at trial, which was procured surreptitiously by private detectives

9  of defendant, shows Pranjic at work and walking to and from his car, and indicates that his

10  ambulation does not suffer except for the slightest limp, though he complains of significant pain

11  and increased exhaustion in the left leg.

12

13  **Conclusions of Law:**

14          The Court finds that the plaintiff has established a lien against the vessel Chloe Z

15  pursuant to the general maritime laws of the United States and pursuant to Supplemental Rules

16  for Certain Admiralty and Maritime Claims C & E, and Rule 9(h) of the Federal Rules of Civil

17  Procedure and for a preferred maritime lien under 46 U.S.C. §31301(5)(B).

18          As to the unseaworthiness cause of action, the plaintiff has the burden of proving the

19  following by a preponderance of the evidence: (1) the Chloe Z was unseaworthy, and (2) the

20  unseaworthy condition was a proximate cause of an injury to the plaintiff. As to the definition of

21  unseaworthiness: A vessel owner has a duty to provide and maintain a seaworthy vessel. A

22  vessel is seaworthy if the vessel and all of its parts and equipment are reasonable for their

23  intended purpose, and it is operated by a crew reasonably adequate and competent for the work

24  assigned. A vessel is unseaworthy if the vessel, or any of its parts or equipment, is not

25  reasonably fit for its intended purpose or if its crew is not reasonably adequate or competent to

26  perform the work assigned.  Unseaworthiness is a proximate cause of injury or damage if it

27

28                                                5

1  played a substantial part in bringing about injury or damage.

2      If supported by the facts, the principles of contributory negligence would apply to this

3  case. Title 45 U.S.C. §53 provides that if the plaintiff was contributorily negligent, any award

4  may be reduced by the percentage of plaintiff's negligence. If the defendant raises the

5  affirmative defense of plaintiff's negligence, the defendant has the burden of proving each of the

6  following by a preponderance of the evidence: (1) the plaintiff was negligent, and (1) the

7  plaintiff's negligence was a proximate cause of the plaintiff's own injury.

8      A vessel's unseaworthy condition may arise from any number of circumstances, including

9  insufficient number of men assigned to perform shipboard tasks, or the existence of a defective

10  condition, however temporary, on a physical part of the ship. Ribitzki v. Canmar Reading &

11  Bates, Ltd. Partnership, 111 F.3d 658 (9th Cir. 1997). The issue is whether the ship was in an

12  unseaworthy condition as it was tied up to the Milagros Z without the gangplank for crew to

13  pass between, or without instructions to use the skiff to pass between the vessels. As to the

14  proper way to cross between two vessels that are tied up to each other, there was testimony that

15  there were two alternatives, one being putting a gangplank between the vessels and the other

16  being taking a skiff between the vessels.

17      Conditions existing on a vessel can render that vessel unseaworthy. Safety Expert

18  Unterberg testified that though stepping between tied-up tuna vessels is often done in the fishing

19  industry, it is not safe. At the calmest of seas, there is a two to three foot swell. Also, if the

20  ships are in different loading conditions the ships will be at different heights in the water.

21  Further, there is always sea spray in the ocean, even in calm seas, which makes every surface

22  slippery. There was a gangplank on board which was not used. In Expert Unterberg's opinion

23  the use of a gangplank can also be quite dangerous because one can be thrown off the gangplank

24  in rough seas. Expert Unterberg testified that the safest way to cross between vessels was to

25  use a skiff between the vessels. However, Expert Unterberg concluded that a gangplank was

26  safer than nothing, a fact that Chloe Z's Captain Gobin apparently agreed with, judging from his

27

28        6

0197

1  comment that he would never attempt or allow a crossing without a gangplank again.

2      Defense counsel argued that the unsound decision not to put up the gangplank was a

3  wrong judgment call but it is not unseaworthiness. Human mistake is not unseaworthiness. The

4  Court disagrees. A configuration on a ship that results in an unsafe condition is unseaworthy.

5  Further, the fact that the vessel captain had just jumped from one ship to the other indicated that

6  it was the accepted way of crossing between the vessels. Plaintiff Pranjic was subject to the

7  authority of the captain. As the lowest paid crewmember, Pranjic is unlikely to have asked the

8  captain to bring out the gangplank for him to cross over, just minutes after the captain himself

9  had just jumped between the vessels. The Court will not penalize Pranjic for making an unwise

10  decision when his direct superior had just crossed in the same manner and then admitted after

11  the accident that it shouldn't have been done that way. Further, Pranjic was carrying out an

12  order given him by his superior, the Chief Engineer Matos. Matos confirmed that he ordered

13  Pranjic to go to the Milagros Z, but that he was not on deck and he assumed the gangplank was

14  out and that Pranjic would cross using the gangplank. Common sense dictates that Pranjic was

15  obeying Matos' orders by going to the Milagros Z, and when he saw Captain Gobin cross by

16  jumping, it was tacit approval to cross in this manner. For these reasons, the Court finds no

17  contributory negligence on Pranjic's part.

18      In fact, Fish Captain Lipanovich testified that only the fish captain can issue the order to

19  bring out the gangplank. Both Captain Gobin and crewmember Slobodan Vidov testified that

20  after Pranjic's accident, every time the Chloe Z tied up to another vessel, the gangplank was

21  immediately put out. Captain Gobin testified that if the weather is bad, the skiff is used, and if

22  the weather is good, the gangplank is used. It is no longer permitted to jump between vessels.

23  For these reasons, the court finds unseaworthiness.

24      As to damages, defendant presented testimony that since the Zuanich fleet has reduced

25  its tuna fishing operations out of San Diego, there are vastly fewer Croatians employed in the

26  fishing industry. Defense Expert Thrush testified that 11 Zuanich vessels employed 224

27

28                        7

0198

1  Croatians in past years, now he only has evidence of 18 Croatians presently employed in the

2  tuna fishing industry in 1997 and 1998. The Court rejects this as a basis for discrediting Expert

3  Wallace's testimony, as the Thrush testimony did not take into account the tuna fishing industry

4  from all over the world. The basis of Thrush's testimony was that in San Diego, fewer ships

5  employ Croatians. However, does the worldwide tuna industry also have no jobs for trained

6  crewmembers of tuna purse seiners, Croatian or not? The Court cannot presume that the

7  displaced Croatian tuna crewmembers are unemployable on a worldwide scale.

8        The Court declines to reduce any award by the amount of potential taxes for the reasons

9  stated in companion case, Vjeko Mazic v. M/V Chloe Z.

10        As of the date of trial, Pranjic had sustained medical expenses of $43,951.92.

11        The Court finds that Pranjic is entitled to:

12  1. Medical and incidental expenses in the amount of $43,951.92, as testified to by plaintiff's

13  economist Wallace and unrefuted by defendants;

14  2. Lost present and future earnings of $433,469.00 (using the average tonnage rather than the

15  top 50% tonnage) as testified to by Expert Wallace and as shown on Exhibit 19 of the joint trial

16  exhibits.

17  3. Past pain and suffering of $50,000;

18  4. Future pain and suffering of $50,000.00 (as a non-pecuniary loss, this is not discounted to

19  present day value pursuant to United States v. Hiyashi, 282 F.2d 599, 506 (9th Cir. 1960)).

20        Plaintiff has not shown any support in law for his prayer for pre-judgment interest.

21        Each party is to bear his own costs. The Clerk of Court is to prepare a judgment in

22  accordance with this.

23        SO ORDERED this 11th day of January, 1999.

24  Notice is hereby given that this document was
25  entered on the docket on 1/11/99
    No separate notice of entry on the docket will
26  be issued by this Court.
        Mary L. M. Moran
27    Clerk, District Court of Guam

28    By: P. Dan Dunlap  1/11/99
        Deputy Clerk        Date

    JOHN S. UNPINGCO
    District Judge

FILED
DISTRICT COURT OF GUAM

JAN 11 1999

MARY L.M. MORAN
CLERK OF COURT

1
2
3
4
5

6
### DISTRICT COURT OF GUAM

7
### TERRITORY OF GUAM

8

9 | TCW SPECIAL CREDITS, et al      )
           Plaintiffs,     )

10       vs.                )

11 F/V CHLOE Z, et al,         )
          Defendants     )

CIVIL CASE NO. 96-00055

12 SLOBODAN PRANJIC,       )
      Plaintiff-in-Intervention )

**PARTIAL JUDGMENT**

13       vs.                )

14 M/V CHLOE Z, et al        )
         Defendants     )

15
D. Paul Vernier
McKEOWN VERNIER PRICE MAHER
16 Suite 808, GCIC Bldg.
414 West Soledad Avenue
17 Agana, Guam 96910

G. Patrick Civille
CHING BOERTZEL CIVILLE CALVO & TANG
Suite 400, GCIC Bldg.
414 West Soledad Avenue
Agana, Guam 96910

18 George Butler
BUTLER & TELFORD BUTLER
19 Suite 203, American Life Bldg.
137 Murray Blvd.
20 Agana, Guam 96910

Anita P. Arriola
ARRIOLA, COWAN & ARRIOLA
P.O. Box X
Agana, Guam 96932

21 Bill R. Mann
BERMAN O'CONNOR & MANN
22 Suite 503, Bank of Guam Bldg.
111 Chalan Santo Papa
23 Agana, Guam 96910

Cesar Cabot
Law Offices of Cesar C. Cabot
Suite 102, First Savings & Loan Bldg
655 S. Marine Drive
Tamuning, Guam 96911

24 Steven Zamsky
Zamsky Law Firm
25 Suite 501, Bank of Guam Bldg.
111 Chalan Santo Papa
26 Agana, Guam 96910

Lawrence J. Teker
GAYLE & TEKER
Suite 200, Gayle & Teker Bldg.
330 Hernan Cortez Avenue
Agana, Guam 96910

27 . . . . . . . .

28 . . . . . . . .

0200

1    Judgment is hereby entered in accordance with the Order filed on January 11, 1999.

2    Dated at Agana, Guam, this 11th day of January, 1999.

3                                     MARY L.M. MORAN
                                      Clerk of Court

4

5                                     By:   Rosita P. San Nicolas
                                            Chief Deputy Clerk

6

7    Notice is hereby given that this document was
     entered on the docket on __1/11/99__
8    No separate ~~~ ~~~ ~~~ ~~~ docket will
     be issued by ~~ ~~~.
9
                    Clerk
10
     By:                           1/11/99
11       Deputy Clerk        Date

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

0201

**Unpublished Disposition**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA9 Rule 36-3 for rules regarding the citation of unpublished opinions.)

Appeal from the United States District Court for the District of Guam John S. Unpingco, District Judge, Presiding.

MEMORANDUM [FN1]

> **FN1.** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36-3.

**1** The fishing vessel CHLOE Z appeals (1) the district court's denial of its motion to dismiss seaman Robert Matos's claims as res judicata by application of Federal Rule of Civil Procedure 41(a)(1)'s "two dismissal" rule to two prior dismissals and (2) the court's decision to apply the doctrine of **equitable estoppel** to preclude the CHLOE Z from raising a statute of limitations defense. Matos cross-appeals (1) the district court's refusal to apply the doctrine of collateral estoppel to issues decided in the earlier *in personam* action against the vessel's owner, (2) the court's finding that Matos was 33% contributorily negligent for his injuries, (3) the court's calculation of future earnings, and (4) the court's denial of prejudgment interest. We have jurisdiction under 28 U.S.C. § 1292(a)(3), and we affirm in part, reverse in part, and remand for further proceedings. [FN2]

> **FN2.** This appeal and related appeals arise from many years of litigation involving the CHLOE Z. Judge Unpingco is to be complimented not only for the substantial time he committed to resolution of the numerous claims in this and the related actions, but also for his careful legal analysis and well-documented record. Likewise, we appreciate the quality briefing provided by all counsel on appeal.

We affirm the district court's res judicata ruling. Matos's second dismissal was in a California state court, a court in which Rule 41(a)(1)(i) did not apply. *See Rader v. Baltimore & O.R. Co.*, 108 F.2d 980, 986 (7th Cir.), *cert. denied*, 309 U.S. 682 (1940); *see also* 9 Wright & Miller, Federal Practice & Procedure § 2368, at 330 (1995). And, California courts do not have a civil rule equivalent to Rule 41(a)(1)(i). *See Manning v. South Carolina Dep't of Hwy. and Pub. Transp.*, 914 F.2d 44, 47 n. 5 (4th Cir.1990). Consequently, neither of Matos's two prior dismissals were dismissals "with prejudice," thus the district court was correct in declining to apply the doctrine of res judicata to bar this action.

We reverse the district court's **equitable estoppel** ruling and remand for further proceedings as to that issue. On the CHLOE Z's motion to dismiss and vacate the *in rem* process under Supplemental Admiralty Rule E(4)(f), the court ruled conclusively that the vessel was equitably estopped from arguing that Matos's *in rem* claims were barred by the applicable 3-year statute of limitations for **maritime** torts. In so doing, the court improperly resolved disputed issues of material fact, including whether the CHLOE Z in fact made any representations that the *in personam* judgment would be satisfied under the insurance policy, to what extent the seamen relied to their detriment upon the alleged representations, and whether such reliance caused the statute of limitations to lapse on Matos's *in rem* claims against the vessel. We remand on this issue for a fact-finding hearing to permit the court an opportunity to make the factual determinations necessary to decide whether the CHLOE Z should be equitably estopped from raising a

Case 1:96-cv-00055    Document 1586-2    Filed 11/01/2006    Page 23 of 24

431

ute of limitations defense. We leave to the district court's discretion any decisions regarding additional discovery this issue.

ning to the issues raised in Matos's cross-appeal, we affirm the district court's refusal to apply the doctrine of lateral estoppel to issues decided in the earlier *in personam* action against the vessel's owner. Assuming without iding that collateral estoppel was available as a matter of law, we hold that the district court did not, given the cedural differences between the two proceedings and the concerns raised by other lien claimants in this forfeiture ion, abuse its discretion in declining to apply it. See *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 331 79); *see also Town of N. Bonneville v. Callaway,* 10 F.3d 1505, 1508 (9th Cir.1993).

We affirm the district court's conclusion that Matos was 33% contributorily negligent for his injuries. Indeed, CHLOE Z's expert opined that Matos was 100% at fault because he attempted to lift the strainer too aggressively hout trying to loosen it first. The court's decision to assign some responsibility for the accident to Matos was not, ed on the evidence presented at the *in rem* trial, clear error. See *Havens v. F/T Polar Mist,* 996 F.2d 215, 217 h Cir.1993).

e also affirm the district court's conclusion to calculate lost future earnings based on nine months of work per year opposed to eleven months of work per year. Based on this record, it was not clear error for the court to conclude at Matos would not have averaged more than nine months of work per year. [FN3]

> FN3. We also reject the CHLOE Z's argument that the district court miscalculated Matos's past and future lost wages. Based on the record supplied by the CHLOE Z, the district court did not err by deducting an
>
> additional 2/12, or 16.67%, to reflect lost wages based on a nine month work year.

nally, we reverse the denial of prejudgment interest. "In admiralty, prejudgment interest must be granted unless eculiar circumstances justify its denial." *Vance v. American Hawaii Cruises, Inc.,* 789 F.2d 790, 794 th Cir.1986) (quoting *Dillingham Shipyard v. Associated Insulation Co.,* 649 F.2d 1322, 1328 (9th Cir.1981)). Because the court did not articulate any reason for denying prejudgment interest, we remand under *Vance* for a etermination whether special circumstances justify the denial.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS. FN4] Each party to pay its own costs on appeal.

> FN4. Matos's motion for judicial notice is denied.

C.A.9 (Guam),2000.
TCW Special Credits v. FISHING VESSEL CHLOE Z
238 F.3d 431 (Table), 2000 WL 1277935 (9th Cir.(Guam)), Unpublished Disposition
END OF DOCUMENT

Copr. (C) West 2003 No Claim to Orig. U.S. Govt. Works

web2.westlaw.com/result/text.wl?RP=/search/default.wl&RS=WLW2.86&VR=2.0&SV=Split&FN=_top&MT=Westlaw&CFID=0&DB=CTA9&DocSample=Fal ...

000064

Page 2 of 2

Case 1:96-cv-00055     Document 1586-2     Filed 11/01/2006     Page 24 of 24

**Unpublished Disposition**
NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA9 Rule 36-3 for rules regarding the citation of unpublished opinions.)

Appeal from the United States District Court for the District of Guam John S. Unpingco, District Judge, Presiding.

### MEMORANDUM [FN1]

FN1. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36-3.

**\*1** The fishing vessel CHLOE Z appeals (1) the district court's denial of its motion to dismiss seaman Slobodan Pranjic's claims as res judicata pursuant to Federal Rule of Civil Procedure 41(a)(1)(i)'s "two dismissal" rule, (2) the court's decision to apply the doctrine of **equitable estoppel** to preclude the CHLOE Z from raising a statute of limitations defense, (3) the court's decision not to reduce Pranjic's future lost wages to account for applicable Croatian income taxes, and (4) the court's award of $43,951.92 in past medical expenses. We have jurisdiction under 28 U .S.C. § 1292(a)(3), and we affirm in part, reverse in part, and remand for further proceedings. [FN2]

FN2. This appeal and related appeals arise from many years of litigation involving the CHLOE Z. Judge Unpingco is to be complimented not only for the substantial time he committed to resolution of the numerous claims in this and the related actions, but also for his careful legal analysis and well-documented record. Likewise, we appreciate the quality briefing provided by all counsel on appeal.

Pranjic filed and voluntarily dismissed three prior actions, the first in the district court for the Southern District of California, the second in a California state court, and the third in a Hawaii state court. To begin, we reject the CHLOE Z's contention that the latter two dismissals were adjudications upon the merits under Rule 41(a)(1)(i) for the reason that *Federal* Rule of Civil Procedure 41(a)(1)(i) does not govern voluntary dismissals in *state* courts. We recognize, however, that unlike California, Hawaii has adopted a rule nearly identical to Federal Rule 41(a)(1)(i). See Haw. R. Civ. P. 41(a)(1)(A). [FN3] Therefore the question is whether Pranjic's third dismissal was an adjudication upon the merits under Hawaii Rule of Civil Procedure 41(a)(1)(A). See *Manning v. South Carolina Dep't of Hwy. and Pub. Transp.*, 914 F.2d 44, 47 n. 5 (4th Cir.1990).

FN3. Hawaii Rule 41(a)'s "two dismissal" rule was not modified by the recent amendments to Hawaii's civil rules, which were effective January 1, 2000.

interpreting Hawaii's "two dismissal" rule, we look to our own construction of the parallel Federal Rule for guidance, *Kawamata Farms, Inc. v. United Agri Prods.*, 86 Hawai'i 214, 948 P.2d 1055, 1096 (Haw.1997),

Exhibit 11

000024

Case 1:96-cv-00055    Document 1586-3    Filed 11/01/2006    Page 1 of 21

eping in mind that we have no definitive interpretation from Hawaii and that "[t]he basic purpose of the Federal ules is to administer justice through fair trials, not through summary dismissals as necessary as they may be on casion." *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966).

luntary dismissals under Fed.R.Civ.P. 41(a)(1) are normally without prejudice except that a dismissal by notice der 41(a)(1)(i) "operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in y court of the United States or of any state an action based on or including the same claim." Fed.R.Civ.P. (a)(1)(i). In *Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp.*, 933 F.2d 724 (9th Cir.1991), wever, we noted that some courts have declined to strictly apply the rule when the parties consented to one of the or dismissals or where the dismissal was not unilateral. *Id.* at 727 (discussing *Poloron Prod., Inc. v. Lybrand ss Bros. & Montgomery*, 534 F.2d 1012, 1017-18 (2d Cir.1976)). The Second Circuit in *Poloron*, for example, asoned that in such situations where the purpose of the rule--to avoid harassing the defendant--would not be rved, courts should be "most careful not to construe or apply the [rule] too broadly." *Poloron*, 534 F.2d at 1017.

*2 Based on the circumstances here, strict application of the two dismissal rule is not warranted. For example, the ecord indicates that the Hawaii dismissal was preceded by discussions between the parties about litigating the ction in Guam. Counsel for the CHLOE Z stated in correspondence: "If you will agree to dismiss the currently ending actions [in California and Hawaii] and refile them in a court in Guam, we will consider arranging for epositions to be taken in Guam[.]" Counsel for Pranjic confirmed that the Hawaii case would be "withdraw[n]" nd refiled in Guam. Although the Hawaii dismissal was not formally "stipulated," it was not unilateral as all parties acitly agreed to the dismissal in favor of litigating the action in Guam. Also, there is no evidence that the filings and dismissals were part of a strategy to harass the CHLOE Z. Accordingly, we affirm the district court's decision not to dismiss Pranjic's action on res judicata grounds.

We reverse the district court's **equitable estoppel** ruling and remand for further proceedings as to that issue. On the CHLOE Z's motion to dismiss and vacate *in rem* process under Supplemental Admiralty Rule E(4)(f), the court ruled conclusively that the vessel was equitably estopped from arguing that Pranjic's *in rem* claims were barred by the applicable 3-year statute of limitations for **maritime** torts. In so doing, the court improperly resolved disputed issues of material fact, including whether the CHLOE Z in fact made any representations that the *in personam* judgment would be satisfied under the insurance policy, to what extent Pranjic relied to his detriment upon the leged representations, and whether such reliance caused the statute of limitations to lapse on Pranjic's *in rem* claims against the vessel. We remand on this issue for a fact-finding hearing to permit the court an opportunity to make the factual determinations necessary to decide whether the CHLOE Z should be equitably estopped from raising a statute of limitations defense. We leave to the district court's discretion any decisions regarding additional discovery on this issue.

As for the CHLOE Z's argument that the court erred in not reducing Pranjic's lost wages to account for applicable Croatian income taxes, we affirm for the reasons set forth in the Memorandum Disposition filed in *Vjeko Mazic v. F/V CHLOE Z*, No. 99-15169 (filed concurrently with this disposition).

Finally, Pranjic concedes that the court erred in awarding $43,951.92 for past medical expenses. Accordingly, we reverse on this issue and direct the district court to amend the judgment accordingly on remand.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS. Each party to pay its own costs on appeal.

C.A.9 (Guam),2000.

TCW Special Credits v. FISHING VESSEL CHLOE Z

238 F.3d 431 (Table), 2000 WL 1277922 (9th Cir.(Guam)), Unpublished Disposition

END OF DOCUMENT

Copr. (C) West 2003 No Claim to Orig. U.S. Govt. Works

000025

RECEIVED
ARRIOLA, COWAN & ARRIOLA

OCT 3 0 2000

BY: _____ TIME: 11:43

FILED
DISTRICT COURT OF GUAM

OCT 25 2000

MARY L.M. MORAN
CLERK OF COURT

1272

**DISTRICT COURT OF GUAM**

**TERRITORY OF GUAM**

| | |
|---|---|
| TCW SPECIAL CREDITS, et al., | Civil Case No. 96-00055 |
| Plaintiffs, | |
| vs. | |
| F/V CHLOE Z, et al., | |
| Defendants. | |
| SLOBODAN PRANJIC, | |
| Plaintiff-in-Intervention, | |
| vs. | ORDER |
| M/V CHLOE Z, et al., | |
| Defendants. | |

This case is before the Court on the Mandate of the Ninth Circuit affirming in part and reversing in part the partial judgment of this Court. Furthermore, the Ninth Circuit Court of Appeals remanded for a fact-finding hearing the issue of whether the Chloe Z should be equitably estopped from raising a statute of limitations defense. Consistent with the terms of the Mandate,

IT IS HEREBY ORDERED that the January 11, 1999 partial judgment be AMENDED to strike the $43,951.92 award of past medical expenses to Plaintiff Pranjic.

IT IS FURTHER ORDERED that the parties shall appear before the Court on Friday,

Exhibit 12

1  November 3, 2000 at 11:00 a.m. for a Status Hearing to discuss the issue on remand and the

2  need, if any, for further discovery on this issue.

3       IT IS SO ORDERED.

4       Dated: October _25_, 2000.

5

6                      JOHN S. UNPINGCO
                     District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

FILED
DISTRICT COURT OF GUAM

MAR 2 6 1999

MARY L. M. MORAN
CLERK OF COURT

DWIGHT F. RITTER
**LAW OFFICES OF DWIGHT F. RITTER**
170 Laurel Street
San Diego, California 92103
Telephone: (619) 238-1811

WILLIAM O. DOUGHERTY
FREDERICK M. DUDEK
**DOUGHERTY & HILDRE, DUDEK & HAKLAR**
2550 Fifth Avenue, Suite #600
San Diego, CA 92103
Telephone: (619) 232-9131

GEORGE M. BUTLER
**BUTLER & TELFORD BUTLER**
American Life Building, Suite 203
130 Murray Boulevard
Agana, GU 96910
Telephone: (671) 475-0200

Attorneys for Intervening Plaintiff,
Appellee, Cross-Appellant SLOBODAN PRANJIC

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF GUAM

| | |
|---|---|
| TCW SPECIAL CREDITS, et al. | CIVIL ACTION 96-00055 |
| Plaintiffs and Intervening Plaintiffs, | |
| v. | NOTICE OF CROSS-APPEAL |
| FISHING VESSEL CHLOE Z, et al. | |
| Defendants, Appellants, Cross-Appellees | |
| v. | |
| SLOBODAN PRANJIC, | |
| Intervening Plaintiff, Appellee, Cross Appellant | |

1

Exhibit 13

EXHIBIT 1, p. 1 of 8

NOTICE IS HEREBY GIVEN that Slobodan Pranjic, Intervening Plaintiff, Appellee, Cross-Appellant in this action, hereby cross appeals to The United States Court of Appeals for the Ninth Circuit from the portion of the order and partial judgment that (1) granted damages but not pre-judgment interest on those damages; to grant Intervening Plaintiff, Appellee, Cross-Appellant pre-judgment interest and (2) failed to follow the precedent of the *in personum* judgment with regard to damages calculations; to grant damages in accordance with the *in presonum* ruling. The defendant's notice of appeal was filed and docketed on , 1999, and this cross appeal is timely pursuant to Federal Rules of Appellate Procedure Rules 4(a)(3) and 4(a)(5) .

////

DATED this __26__ day of March, 1999.

Respectfully submitted,

GEORGE M. BUTLER
Attorney for the Intervening Plaintiff, Appellee
Cross-Appellant SLOBODAN PRANJIC

2

EXHIBIT 1, P. 2 of 8

**FILED**
DISTRICT COURT OF GUAM

SEP 2 1 1999

MARY L.M. MORAN
CLERK OF COURT

1
2
3
4
5
6                          DISTRICT COURT OF GUAM
7                            TERRITORY OF GUAM
8
9
10   TCW SPECIAL CREDITS, a California General          Civil Case No. 96-00055
11   Partnership, As Agent and Nominee,
           Plaintiff,
12          vs.
     JUAN BARANDIARAN, et al.,
13        Plaintiff-In-Intervention,
            vs.                                         **ORDER**
14   FISHING VESSEL CHLOE Z, OFFICIAL NO.
     653391, HER ENGINES, NETS, FURNITURE, etc.,
15   In Rem CHLOE Z FISHING COMPANY, INC.; a
     Commonwealth of the Northern Mariana Islands
16   corporation, In Personam.
17
18        This case comes before the Court on an Ex Parte Motion for Application for an Order
19   Denying Slobodan Pranjic's Motion for an Extension of Time to File an Appeal.  After careful
20   review of the facts and the law, the Court DENIES Mr. Pranjic's Motion.
21   FACTS :
22        After a trial on Pranjic's claims, judgment was entered in his favor on ~~July~~ January 11, 1999.
23   Defendants filed a timely notice of appeal.  Pranjic did not.  Instead, Pranjic filed a Motion for an
24   Extension of Time to File Appeal on March 26, 1999.  Defendants filed an opposition on April 9,
25   1999.  Pranjic then filed his reply on April 20, 1999.
26        Plaintiff's claim that because the Court's Order of January 11, was entitled "Partial
27   Judgment" they were not aware the appellate clock had started ticking.  On March 26, 1999,
28   Pranjic filed both a notice of cross-appeal and, obviously recognizing his initial deadline had
     already passed, a motion for extension of time for that cross-appeal.

                                    Exhibit 14

**DISCUSSION :**

Fed. R. App. P. 4(a)(5) allows the district court to grant an extension of time, but only if the party seeking to appeal "so moves no later than 30 days after the time prescribed by this Rule 4(a) expires." Fed R. App. P. 4(a)(5)(A). Since Pranjic's original deadline for Appeal was February 10, the last day for him to file the motion for extension was 30 days later on March 12. The motion he filed on March 26 was therefore filed 14 days to late.

Fed R. App. P. 4(a)(6) authorizes reopening of the time to file a notice of appeal under strict and limited conditions that Pranjic has not satisfied. The court can reopen a time for appeal 14 days only if :

(1) the motion is filed within 180 days after the judgment or order is entered or within 7 days after the moving party receives notice of the entry, whichever is earlier;
(2) the court finds that the moving party was entitled to notice of the entry of the judgment or order sought to be appealed but did not receive the notice from the district court or any party within 21 days after entry; and
(3) the court finds that no party would be prejudiced.

Pranjic has not even attempted to show that he can satisfy these mandatory conditions. Since he failed to timely file the motion it must be DENIED. Vahan, 30 F.3d 102 (9th Cir. 1994).

**IT IS SO ORDERED.**

Dated : September 2/ ,1999

JOHN S. UNPINGCO
District Judge

Notice is hereby given that this document was
entered on the docket on 9/21/99
No separate notice of entry on the docket will
be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam
By: _____ 9/21/99
Deputy Clerk      Date

- 2 -

EXHIBIT 1 , P. 4 of 8

Case 1:96-cv-00055 Document 1586-3 Filed 11/01/2006 Page 8 of 21

Michael A. Barcott
HOLMES WEDDLE & BARCOTT
999 Third Avenue, Suite 2600
Seattle, Washington 98104
(206) 292-8008
(206) 340-0289 FAX

Attorneys for the F/V CHLOE Z

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| TCW SPECIAL CREDITS, et al., | 9th Circuit<br>Case No. 99-15136 |
| Plaintiff, | |
| vs. | D. Guam Case No. Civ. 96-00055 |
| F/V CHLOE Z, Official Number 653391, et al., | |
| Defendant-Appellant, | MOTION TO DISMISS CROSS-APPEAL FOR LACK OF JURISDICTION |
| vs. | |
| SLOBODAN PRANJIC, | |
| Plaintiff-Intervenor-Appellee, | |

COMES NOW Appellant F/V CHLOE Z ("Vessel") and moves this Court for an

order dismissing the cross-appeal filed by Appellee Slobodan Pranjic for lack of

jurisdiction.

MOTION TO DISMISS CROSS-APPEAL FOR
LACK OF JURISDICTION - 1

Exhibit 15

EXHIBIT 1 P 5 of 8

HOLMES WEDDLE & BARCOTT
999 THIRD AVENUE, SUITE 2600
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 292-8008

After failing to timely file a notice of cross-appeal, Pranjic moved the District Court, pursuant to Fed. R. App. P. 4(a), for an extension of time to file an appeal. See Order filed September 21, 1999, and attached hereto as Exhibit 1. The District Court denied Pranjic's motion. Id.

Because the time limits imposed by Rule 4(a) are jurisdictional, and have not been extended, Pranjic's cross-appeal should be dismissed. Vahan v. Shalala, 30 F.3d 102 (9th Cir. 1994) (dismissing appeal because Rule 4(a) is jurisdictional and the district court lacked authority to extend time for filing notice of appeal).

In the interest of judicial economy and in order to avoid unnecessary costs and fees incurred in the defense of a cross appeal over which this Court has no jurisdiction, the Vessel respectfully requests that this Court dismiss Pranjic's cross appeal.

RESPECTFULLY SUBMITTED this 7th day of October, 1999.

HOLMES, WEDDLE & BARCOTT

Michael A. Barcott, WSBA # 13317
Attorneys for Appellant

WP:O:\2446\13835\PLDG\MTN DISMISS CROSS-APPEAL

MOTION TO DISMISS CROSS-APPEAL FOR
LACK OF JURISDICTION - 2

HOLMES WEDDLE & BARCOTT
999 THIRD AVENUE, SUITE 2600
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 292-8008

EXHIBIT 1, p. 6 of 8

UNITED STATES COURT OF APPEALS

# FILED

FOR THE NINTH CIRCUIT

NOV 1 8 1999

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TCW SPECIAL CREDITS,<br><br>Plaintiff,<br><br>v.<br><br>FISHING VESSEL CHLOE Z<br><br>Defendant/Appellant/Cross-Appellee,<br><br>v.<br><br>SLOBODAN PRANJIC,<br><br>Plaintiff-Intervenor/Appellee/<br>Cross-Appellant. | Nos. 99-15136, 99-15663<br><br>DC# CV-96-55-JSU<br>Guam (Agana)<br><br>ORDER |

Before: WALLACE, FARRIS, and T.G. NELSON, Circuit Judges

Appellant/cross-appellee Fishing Vessel Chloe Z ("Appellant") moves to dismiss the cross-appeal of Slobodan Pranjic, no. 99-15663, taken from the partial judgment entered on January 11, 1999. Appellee/cross-appellant Pranjic ("Appellee") has not filed an opposition to the motion.

Appellant filed its appeal on January 22, 1999, making any cross-appeal due by February 10, 1999. *See* Fed. R. App. P. 4(a)(3). However, Appellee did not file

Nos. 99-15136, 99-15663

a cross-appeal until March 26, 1999, and on September 19, 1999 the district court

denied Appellee's motion to extend the time in which to cross-appeal. Because the

notice of cross-appeal is untimely, this court lacks appellate jurisdiction over the

cross-appeal. *See, e.g., Browder v. Director, Dep't of Corrections,* 434 U.S. 257,

264 (1978) (deadline to file notice of appeal is "mandatory and jurisdictional").

Accordingly, appeal no. 99-15663 is DISMISSED.

The briefing schedule in no. 99-15136 is modified as follows: the optional

reply brief of Appellant is due within 14 days of the date of entry of this order.

Thereafter, briefing will be complete and the case will be ready for calendaring once

briefing is complete in the related cross-appeals, nos. 99-15350 and 99-15612.

EXHIBIT 1  P. 8 of 8

RECEIVED

APR 1 2 2004

BUTLER & TELFORD BUTLER

FILED
DISTRICT COURT OF GUAM

APR 0 8 2004

MARY L. M. MORAN
CLERK OF COURT

# DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

| | |
|---|---|
| TCW SPECIAL CREDITS, et al., | Civil Case No. 96-00055 |
| Plaintiffs, | |
| vs. | |
| F/V CHLOE Z, et al., | |
| Defendants. | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| ROBERT MATOS AND SLOBODAN PRANJIC, | |
| Plaintiffs-in-Intervention, | |
| vs. | |
| M/V CHLOE Z, et al., | |
| Defendants. | |

This matter came before the Court for an evidentiary hearing on the 20th and 21st day of May 2003.[1] The Plaintiffs-In-Intervention, Robert Matos and Slobodan Pranjic, ("Matos and Pranjic") were represented by Dwight F. Ritter, Esq and George Butler, Esq. The defendant, M/V Chloe Z ("Chloe Z") was represented by Michael A. Barcott, Esq. and Anita Arriola, Esq. The issues tried before the Court were: 1) whether the Chloe Z should be equitably estopped from raising a statute

---

[1] These cases were tried in July 1998 on Plaintiffs-in-Intervention, Robert Matos and Slobidan Pranjic's complaints *in rem* for personal injuries brought against the F/V Chloe Z. This Court rendered decisions in favor of Matos and Pranjic. Chole Z appealed the decisions. Thereafter, the Ninth Circuit reversed the decisions and remanded the matters to this Court to rule on two specific issues as discussed herein.

COPY

1    of limitations defense, and 2) whether special circumstances exist that would justify denial of

2    prejudgment interest to plaintiff, Mr. Matos.

3          THE COURT, having considered the evidence, oral and documentary, and the stipulations

4    of the parties, hereby issues the following findings of fact and conclusions of law pursuant to Rule

5    52(a) of the Federal Rules of Civil Procedure.[2]

6                      **FINDINGS OF FACT**

7        1.      The plaintiffs-in-intervention[3], Pranjic and Matos were seamen who suffered

8    personal injuries on the fishing vessel Chloe Z. Pranjic was injured in 1991 and Matos was injured

9    in 1992. Thereafter, they sought representation by the Law Offices of Dougherty & Hildre located

10    in San Diego, California.

11        2.      Trying to get jurisdiction over the defendant, the plaintiffs filed maritime claims for

12    personal injuries in both state and federal courts in California and in the State Court of Hawaii.

13    See Plaintiffs' Exhibits 1.1; 3, 4, 5, 7, 8, 10 and 11.

14        3.      The plaintiffs dismissed all previously filed lawsuits in other jurisdictions, and filed

15    their respective claims in Guam in 1994, Civil Case No. 94-00013 and Civil Case No. 94-000134.

16    See Plaintiffs-in-intervention Exhibits 11 and 12. The plaintiffs filed actions both *in rem* and *in*

17    *personam*. However, the plaintiffs never perfected their *in rem* cases by arresting the Chloe Z. In

18    fact the *in rem* claims were never pursued prior to trial.[4] In July 1996, the plaintiffs took their *in*

19    *personam* cases to trial. The cases were tried and each of the plaintiffs were awarded substantial

20    jury awards.

21        4.      However, before the plaintiffs could recover on their *in personam* judgments, the

22    Chloe Z effectively went out of business and there was no source of payment.

23

24        [2]To the extent that a finding of fact should be deemed a conclusion of law, or a conclusion of law deemed

25    a finding of fact, it shall so be considered.

26        [3]The plaintiffs-in-intervention, Pranjic and Matos, shall be referred to as plaintiffs herein.

27        [4]See Defendant's Exhibit Y, letter from Attorney Melançon to Attorney Dougherty, instructing Attorney
Dougherty that because the defendant vessel Chloe Z was not served in the case, the *in rem* claims would have to

28    be dismissed. In addition the Court takes judicial notice of the Joint Pretrial Statement of All Parties filed in the
Slobodan Pranjic Civil Case No. 94-00014, July 7, 1995, Docket No. 103, page 10, subsection (k) wherein it states
"Claims against the vessel Chloe Z and .... are hereby dismissed." See also Defendant's Exhibit L, Joint Pretrial
Statement of All Parties filed in the Robert Matos Civil Case No. 94-00013, July 3, 1995, page 12 , subsection (k)
wherein it states "Claims against the vessel Chloe Z and .... are hereby dismissed." 1

5.  Realizing that there would be no recovery in the *in personam* cases, the plaintiffs sought to intervene in the present *in rem* case in December 1996.

6.  Because the complaints in intervention were filed more than three years from the date of the injuries, Chloe Z raised the statute of limitations as a defense. In response the plaintiffs claimed that Chloe Z should be estopped from asserting that defense because of the defendant's actions in the original claim. Specifically, they claim that defense counsel made representations about insurance in the earlier actions which caused the plaintiffs to file their claims in the present case in an untimely manner.

7.  The representation of which the plaintiffs complain concern one made early in the litigations.

8.  When the cases were still in California, there was a mediation conference held before Judge Greer attended by attorneys James McMullen ("Mr. McMullen") and Donald F. Hildre ("Mr. Hildre"). When plaintiffs' counsel, Mr. Hildre became unhappy with the conference discussions he threatened to arrest the vessel. There is conflicting testimony as to whether counsel for Chloe Z, Mr. McMullen, asked Mr. Hildre to forego arresting the Chloe Z because there was "plenty of insurance." *See* Donald F. Hildre, Esq. testimony; *see* also Deposition Testimony of James McMullen, Esq., p.80:19 - p. 81:25, March 28, 2001.

9.  Although the plaintiffs claim that attorney McMullen made a representation regarding insurance in the early stages of the litigation, no testimony or evidence was presented concerning representations made by any other individuals which could have confused or mislead the plaintiffs.

10. The plaintiffs claim that the defendant misled the plaintiffs in their initial disclosures. In the defendant's initial disclosure statement made January 30, 1995, the defendant stated:

> 4.  Substance of any insurance agreement that may cover any
>
> resulting judgment:
>
> > The owner has a protection and indemnity insurance policy which covers Chloe Z Vessel and Z Fishing Company, Inc. up to $25,000,000.00, subject to a

1             $7,500.00 deductible. The policy insures against
2             seaman injuries and covers the *typical protection*
             *and indemnity risk.* Consistent with standard P&I
3             insurance policies, the subject policy would
             indemnify the owners should they be found liable for
4             seamen injuries. (emphasis added).

5   <u>See</u> Joint Exhibit J1.

6          11.      The term "protection and indemnity" insurance in the initial disclosure was adequate

7 to place plaintiffs' counsel on notice that this policy may be a "pay to be paid" policy. The

8 prevalent maritime personal injury insurance policy is the protection and indemnity policy which

9 is basically a "pay to be paid" policy. <u>See</u> testimony of expert witnesses Carlton Russell, Esq. and

10 David Ledger, Esq.

11          12.      The policy is drafted to indemnify Chloe Z, not pay third parties. Under the terms

12 of the policy Chloe Z would be reimbursed only after it paid the loss or expense. Absent payment

13 by Chole Z to the plaintiffs there would be no recovery. <u>See</u> Declaration of Mark Jones,

14 Defendant's Exhibit U.

15          13.      A policy containing such a condition precedent to recovery is typically referred to

16 as "pay to be paid" policy. <u>Id.</u>, <u>See</u> Testimony of expert witnesses Carlton Russell, Esq. and David

17 Ledger, Esq.

18          14.      Based upon their experience in past cases, the plaintiffs' counsel understood that

19 the insurance policy in force was a liability policy. In other words, plaintiffs believed the insurer

20 would tender payment in satisfaction of any settlement reached or judgments rendered.

21          15.      On or about July 11, 1996, a few days before the *in personam* cases were scheduled

22 to be tried the Court held a conference with counsel. <u>See</u> Joint Exhibit J3, Letter from Jean

23 Melançon, to William Dougherty and testimony of David Ledger, Esq.

24          16.      At the conference, Attorney Ledger, counsel for the defendant, disclosed that Chloe

25 Z Fishing Co., was in "dire financial straits." Counsel disclosed Chloe Z's financial situation to

26 avoid being subsequently charged with misrepresentation. <u>See</u> Join Exhibit J2.

27          17.      Moreover, Mr. Ledger informed the parties and the Court that if the matter

28 proceeded to trial, the insurer would enforce the "pay to be paid" provisions of the policy and there

1  could be problems with recovery. <u>See</u> Testimony of David Ledger.

2        18.    Prior to the conference, the plaintiffs were aware of Chloe Z's financial problems.

3  For example, in March 1996, plaintiffs counsel, Mr. William O. Dougherty wrote to Mr. Bernard

4  from Arnold & Arnold, the adjuster for Sphere Drake, expressing his concern about the lack of

5  payment for his client, Mr. Mazic's "maintenance and cure." He stated that in order to protect his

6  client's interests he may have to undertake action to seize the Chole Z. <u>See</u> Defendant's Exhibit

7  FF.

8        19.    One month later, in April 1996, Mr. Dougherty wrote to Mr. Melançon regarding

9  arrest of the vessel because Chloe Z had refused to pay the maintenance and cure of an injured

10  seaman. <u>See</u> Defendant's Exhibit BB.

11        20.    In fact, Mr. Dougherty's concerns were seemingly confirmed by co-counsel, Mr.

12  Jean Melançon. Mr. Jean Melançon states in his April 26, 1996 letter to Mr. Dougherty that "[t]he

13  various Z Fishing Companies appear to be in [a] tentative financial condition . . . This

14  circumstance leads me to conclude that the owner of the CHLOE Z could also file for

15  bankruptcy." <u>See</u> Defendant's Exhibit CC.

16        21.    In June 1996, Mr. Melançon was told by attorney Ledger, that the Chole Z was

17  suffering financial difficulties and may file for bankruptcy protection. <u>See</u> Defendant's Exhibit Y.

18        22.    The Court finds that months prior to the *in personam* trial, the plaintiffs were on

19  notice regarding the defendant's financial difficulties and potential insolvency. Yet, despite such

20  knowledge the plaintiffs failed to take any steps to ensure there would be a source of recovery.

21        23.    At no time prior to the trial did the plaintiffs request to see the insurance policy to

22  confirm what they were being told and to ensure recovery from the defendant's insurer. The

23  defendant's initial disclosures simply did not tell enough about the insurance coverage such that

24  the plaintiffs should have relied upon it. Additionally, once there were questions regarding the

25  defendant's financial stability and insurance coverage it would have been prudent to seek the actual

26  policy to review.

27        24.    Nor, did the plaintiffs seek a Letter of Undertaking or a bond to further secure the

28  plaintiff's interests.

25.     It is the practice in the maritime industry to request Letters of Undertaking from underwriters to avoid the detention of vessels and the expense of posting security in other forms. See Testimony of Carlton Russell, Esq. In such a letter, the underwriter will agree on the behalf of its shipowner-assured to satisfy any judgment, usually up to a stipulated amount.

26.     Even though the plaintiffs should have been or were in fact well aware of the defendant's financial difficulties and the potential problems with recovery given the insurer's articulated position, they chose to only pursue their *in personam* cases.

27.     An *in rem* cause of action creates a lien against the vessel or against the proceeds of any sale of the vessel to ensure that any judgment rendered would be satisfied.

28.     The only source of recovery to the plaintiffs would have been the arrest of the vessel.

29.     On July 11, 1996, the plaintiffs could have sought to arrest the vessel. Without coupling the *in rem* cause of action with their *in personam* actions, there was no reasonable basis for the plaintiffs to believe there would be recovery.

## CONCLUSIONS OF LAW

1.     The Court has jurisdiction over the subject matter herein and the parties hereto pursuant to 28 U.S.C. §1332.

2.     The plaintiffs sought *in rem* judgments for personal injuries suffered on the fishing vessel Chloe Z.

3.     Pursuant to 46 U.S.C. § 763a, an *in rem* action based on maritime tort is subject to a three-year statute of limitations.

4.     As noted, the injuries sustained by the plaintiffs occurred in 1991 and 1996, yet they did not seek to intervene in the *in rem* case until December 1996. Admittedly, the three-year statute of limitations had run, however, the plaintiffs claim that the defendant should be equitably estopped from raising a statute of limitations defense.

5.     The burden to prove equitable estoppel is on the party claiming estoppel. See Santa Maria v. Pacific Bell, 202 F.3d 1170, 1177 (9th Cir. 1999). Such proof must be by clear, convincing, and satisfactory evidence. Cedar Creek Oil and Gas Company v. Fidelity Gas

1    Company, 249 F.2d 277, 281 (9th Cir. 1957). Under Santa Maria, equitable estoppel requires the
2    plaintiffs to show: 1) a material misrepresentation, also known as a fraudulent concealment, 2)
3    reasonable reliance on the alleged representation, and 3) a causal link between the alleged
4    misrepresentation and the lapse of the statute of limitations. Id. In this instance, the plaintiffs will
5    have to show that the defendant represented that the *in personam* judgment would be satisfied
6    under the insurance policy, that the plaintiffs reasonably relied on those alleged representations,
7    and that such reliance caused the statute of limitations to lapse on plaintiffs' *in rem* claims against
8    the vessel.

9        6.      In general there are two principal types of insurance for liability for personal injury
10    to others. One type is liability insurance, which obligates an insurer to pay damages which the
11    insured is legally liable to pay. The other type is indemnity insurance, which obligates the insurer
12    to indemnify or reimburse the insured to up to the extent that the insured himself has actually paid
13    damages. Appleman, *Insurance Law & Practice* (Buckley ed.), § 4261 (1979).

14        7.      "The chief difference between a liability policy and an indemnity policy is that under
15    the former a cause of action accrues when the liability attaches, while under the latter there is no
16    cause of action until the liability has been discharged, as by payment of the judgment by the
17    insured. That is, under an indemnity policy the insured must have suffered an actual money loss
18    before the insurer is liable." Id..

19        8.      It is clear to this Court that the Chloe Z purchased a marine policy of indemnity
20    rather than a liability policy.

21        9.      Based upon Attorney McMullen's alleged representation during a mediation
22    conference in 1994 regarding insurance, the plaintiffs' counsel agreed to forego arresting the vessel.
23    However reasonable the Court finds the decision to forego arresting the vehicle at that time, the
24    Court does not find the decision reasonable after counsel learned that the Chloe Z was suffering
25    financially. Moreover, counsel was told very clearly during the pretrial conference with Judge
26    Coughenour that there would be no recovery by the underwriter until the owner of the vessel first
27    paid on the judgment. Yet, instead of asking for the trial to be postponed in order to intervene in
28    the present *in rem* case or at least request a copy of the insurance policy to verify opposing

1    counsel's representations, counsel decided to go forward with the *in personam* trials.

2        10.   Unfortunately, the plaintiffs' counsels' failure to appreciate the nature of the

3    "indemnity" policy caused the plaintiffs to forego pursuing their *in rem* claims in the earlier

4    litigation. The Court does not find that there was any misrepresentation by the defendant which

5    rises to the level of a material or fraudulent misrepresentation. In fact, given the testimony of Mr.

6    Ledger, the Court finds that the plaintiffs were told exactly what they could expect from the

7    underwriters should they prevail at trial and the defendant become insolvent. The Court finds Mr.

8    Ledger's testimony credible. Moreover, Mr. Ledger's testimony is supported by opposing counsel,

9    Jean Melançon's letter of July 11, 1996 to co-counsel, Mr. Dougherty.

10       11.   The next issue concerns whether Matos should have been entitled to prejudgment

11   interest. However, the Court need not reach the resolution of this issue because it finds that the

12   plaintiffs' *in rem* causes of action are in fact time barred by the statute of limitations.

13       In accordance with the foregoing Findings of Fact and Conclusions of Law,

14       IT IS HEREBY ORDERED, ADJUDGED AND DECREED that upon consideration of the

15   evidence produced at trial that Judgment shall be entered in FAVOR of the Defendants.

16   Accordingly, the prior Judgments entered in favor of the plaintiffs are hereby VACATED. Each

17   party to bear its own costs and attorney's fees.

18       SO ORDERED this _8th_ day of April, 2004.

19

20

21       _____

22           JOHN S. UNPINGCO
             District Judge

23

24

25

26

27   Notice is hereby given that this document was
     entered on the docket on ____ and a duplicate
28   No separate notice of entry on the docket will
     be furnished ____

     By ____

FILED
DISTRICT COURT OF GUAM

APR 09 2004

MARY L. M. MORAN
CLERK OF COURT

## DISTRICT COURT OF GUAM

### TERRITORY OF GUAM

| | |
|---|---|
| TCW SPECIAL CREDITS, et al., | CIVIL CASE NO. 96-00055 |
| Plaintiffs, | |
| vs. | **J U D G M E N T** |
| F/V CHLOE Z, et al., | |
| Defendants. | |
| ROBERT MATOS and SLOBODAN PRANJIC, | |
| Plaintiffs-in-Intervention, | |
| vs. | |
| M/V CHLOE Z, et al., | |
| Defendants. | |

Judgment is hereby entered in accordance with the Findings of Fact and Conclusions of Law filed April 8, 2004.

Dated this 9th day of April, 2004, Hagatna, Guam.

MARY L. M. MORAN
Clerk of Court

By: _____
Deputy Clerk

Notice is hereby given that this ......
entered on the .........
......
......

RECEIVED

APR 12 2004

BUTLER & TELFORD BUTLER

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

TCW SPECIAL CREDITS,

      Plaintiff,

V.

FISHING VESSEL CHLOE Z,

      Defendant - Appellee,

V.

ROBERT MATOS,

      Plaintiff-intervenor,

    And

SLOBODIAN PRANJIC,

      Plaintiff-intervenor - Appellant.

No. 04-15948
D.C. No. CV-96-00055-JSU

**JUDGMENT**

**FILED**

DISTRICT COURT OF GUAM

SEP 11 2006

MARY L.M. MORAN
CLERK OF COURT

    Appeal from the United States District Court for the District Of Guam (Hagatna).

    This cause came on to be heard on the Transcript of the Record from the United States District Court for the District Of Guam (Hagatna) and was duly submitted.

On consideration whereof, it is now here ordered and adjudged by this Court, that the judgment of the said District Court in this cause be, and hereby is **REVERSED and REMANDED.**

**COSTS TAXED**

Filed and entered 06/05/06



A TRUE COPY
CATHY A. CATTERSON
Clerk of Court
ATTEST

AUG 3 1 2006

by: Ruben Talavera
Deputy Clerk

**F I L E D**

**Form 10.  Bill of Costs**

JUN 1 9 2006

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

## United States Court of Appeals for the Ninth Circuit

### BILL OF COSTS

04 - 15948

**Note:** If you wish to file a bill of costs, it MUST be submitted on this form and filed, with the clerk, with proof of service, within 14 days of the date of entry of judgment, and in accordance with Circuit Rule 39-1.  A late bill of costs must be accompanied by a motion showing good cause.  Please refer to FRAP 39, 28 U.S.C. § 1920, and Circuit Rule 39-1 when preparing your bill of costs.

Slobodan Pranjic v. M/V/ Chloe Z et al          CA No. 93-2661-07

The Clerk is requested to tax the following costs against: _____

| Cost Taxable under FRAP 39, 28 U.S.C. § 1920, Circuit Rule 39-1 | REQUESTED Each Column Must Be Completed | | | | ALLOWED To Be Completed by the Clerk | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Docs.* | Pages per Doc. | Cost per Page ** | TOTAL COST | No. of Docs. | Pages per Doc. | Cost per Page | TOTAL COST |
| Excerpt of Record | 1 | 601 | .1224 | 73.56 | 12 | 300 | .10 | 360.00 |
| Appellant's Brief | 1 | 343 | .175 | 60.03 | 20 | 52 | .10 | 104.00 |
| Appellee's Brief | 1 | 434 | .1538 | 66.75 | | | | |
| Appellant's Reply Brief | 1 | 3255 | .1063 | 346.01 | 20 | 34 | .10 | 68.00 |
| | | | TOTAL | $ 546.35 | | | TOTAL | $ 532.00 |

Form 10.  **Bill of Costs -** *Continued*

<u>Other:</u>     Any other requests must be accompanied by a statement explaining why the item(s) should
be taxed pursuant to Circuit Rule 39-1.  Additional items without such supporting
statements will not be considered.

Attorneys fees **cannot** be requested on this form.

\* If more than 7 excerpts or 20 briefs are requested, a statement explaining the excess
number must be submitted.

\*\* Costs per page may not exceed .10 or actual cost, whichever is less.  Circuit **Rule 39-1.**

---

I, _DWIGHT RITTER_ , swear under penalty of perjury that the services for which costs are taxed were
actually and necessarily performed, and that the requested costs were actually expended as listed.

Signature: _Dwight Ritter_
Date: _6/15/06_

Name of Counsel (printed or typed): _DWIGHT RITTER_
Attorney for: _ROBERT MATOS + SLOBODAN FRANJIC_

---

Date: _8-31-06_     Costs are taxed in the amount of $ _532.00_

Clerk of Court
By: _Ruben Talavera_ , Deputy Clerk

---



A TRUE COPY
CATHY A. CATTERSON
Clerk of Court
ATTEST:

AUG 3 1 2006

By: _Ruben Talavera_
Deputy Clerk

Form 10.  Bill of Costs

**FILED**

**JUN 19 2006**

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

## United States Court of Appeals for the Ninth Circuit

### BILL OF COSTS

04-15948

**Note:** If you wish to file a bill of costs, it MUST be submitted on this form and filed, with the clerk, with proof of service, within 14 days of the date of entry of judgment, and in accordance with Circuit Rule 39-1.  A late bill of costs must be accompanied by a motion showing good cause.  Please refer to FRAP 39, 28 U.S.C. § 1920, and Circuit Rule 39-1 when preparing your bill of costs.

Robert Matos ___ v. M/V Chloe Z, et al          CA No.  93-2661-07 ___

The Clerk is requested to tax the following costs against: _____

| Cost Taxable under FRAP 39, 28 U.S.C. § 1920, Circuit Rule 39-1 | REQUESTED Each Column Must Be Completed | | | | ALLOWED To Be Completed by the Clerk | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Docs.* | Pages per Doc. | Cost per Page ** | TOTAL COST | No. of Docs. | Pages per Doc. | Cost per Page | TOTAL COST |
| Excerpt of Record | 1 | 602 | .1224 | 73.69 | | | | |
| Appellant's Brief | 1 | 342 | .175 | 59.85 | | | | |
| Appellee's Brief | 1 | 434 | .1538 | 66.75 | | | | |
| Appellant's Reply Brief | 1 | 3254 | .1063 | 345.90 | | | | |
| | | | TOTAL | $ 546.19 | | | TOTAL | $ |

**Form 10. Bill of Costs - *Continued***

**Other:**   Any other requests must be accompanied by a statement explaining why the item(s) should be taxed pursuant to Circuit Rule 39-1.  Additional items without such supporting statements will not be considered.

Attorneys fees cannot be requested on this form.

\* If more than 7 excerpts or 20 briefs are requested, a statement explaining the excess number must be submitted.

\*\* Costs per page may not exceed .10 or actual cost, whichever is less.  Circuit Rule 39-1.

---

I, _DWIGHT RITTER_ , swear under penalty of perjury that the services for which costs are taxed were actually and necessarily performed, and that the requested costs were actually expended as listed.

Signature: _Dwight Ritter_
Date: _6/15/06_

Name of Counsel (printed or typed): _DWIGHT RITTER_
Attorney for: _ROBERT MATOS + SLOBODAN PRALICE_

---

Date: _8-31-06_   Costs are taxed in the amount of $ _DENIED_

Clerk of Court                                         _as duplicative of_
By: _Ruben Talavera_ , Deputy Clerk _previous cost bill,_
                                             _counsel submitted one_
                                      _set of briefs for all parties_
                                                     _represented._

---

A TRUE COPY
CATHY A. CATTERSON
Clerk of Court
ATTEST

AUG 31 2006

by: _Ruben Talavera_
Deputy Clerk

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 05 2006

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TCW SPECIAL CREDITS, | No. 04-15948 |
| Plaintiff, | D.C. No. CV-96-00055-JSU |
| v. | |
| FISHING VESSEL CHLOE Z, | MEMORANDUM[*] |
| Defendant - Appellee, | |
| v. | |
| ROBERT MATOS, | |
| Plaintiff-intervenor, | |
| and | |
| SLOBODIAN PRANJIC, | |
| Plaintiff-intervenor - Appellant. | |

Appeal from the United States District Court
for the District of Guam
John S. Unpingco, District Judge, Presiding

Argued and Submitted March 17, 2006

_____

[*] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3.

San Francisco, California

Before: NOONAN and HAWKINS, Circuit Judges, and REED,*** District Judge.

These actions by two injured seamen have already been twice before this court. On the first occasion, we affirmed the *in personam* judgments against the owner of the M/V Chloe Z. It developed that the owner was unable to pay and that its insurer had issued an indemnity policy that would pay only if the owner paid first. The second time before this court we remanded the case for a fact-finding hearing to see if misrepresentations about the insurance had misled the plaintiffs so that their *in rem* claims should not be barred by the three-year statute of limitations. *See* 46 App. U.S.C. § 763a (West 2005); *Usher v. M/V Ocean Wave*, 27 F.3d 370 (9th Cir. 1994) (per curiam). The district court subsequently and correctly found no misrepresentations and no equitable estoppel. The question, however, remains whether the plaintiffs' *in rem* action was barred by the statute of limitations.

The defendant vessel argues, with some plausibility, that implicit in our remand on the issue of equitable estoppel was a holding that, absent such estoppel, the statute of limitations was a bar. As the district court had in the first instance

---

*** The Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

2

relied on equitable estoppel, it was natural to send the case back on this issue. Now that the equitable estoppel issue has disappeared, we address, for the first time, whether the *in rem* proceeding was barred by the statute of limitations.

The two plaintiffs filed both their *in personam* actions and their actions *in rem* against the vessel on May 11, 1994. The date was well within the three-year period. The vessel at first did not answer, and a default judgment was entered. But the vessel then appeared in the case and was allowed to respond to the plaintiffs' complaint. It does not lie in the vessel's mouth to assert that the suit was barred when the vessel itself willingly entered the litigation and made no mention of any statute of limitations bar.

Twice, stipulations were signed by counsel on both sides dismissing the vessel. On neither occasion were the stipulations signed or approved by the district court. The stipulations were accordingly without validity. *See* D. Guam Ct. R. GR 3.1 (2006) (formerly codified as D. Guam Ct. R. 126.3 (1996)). The defendant has not challenged this rule.

We did not rule on the timelessness of the *in rem* claims at any earlier stage, although explicitly petitioned by the defendant to do so. The defendant, briefing this case, admitted that the *in rem* claims were alive ("pending") in July 1996, when the *in personam* claims came to trial. They did not merge with the *in*

3

*personam* judgments of that year and remained pending until ruled upon, as they

now are.

The plaintiffs' *in rem* judgments against the proceeds of the sale of the

vessel are valid.  Accordingly, the judgment of the district court is REVERSED,

and the case is REMANDED for proceedings in accordance with this disposition.

**COSTS TAXED**



A TRUE COPY
CATHY A. CATTERSON
Clerk of Court
ATTEST

AUG 3 1 2006

by: Ruben Talavera
Deputy Clerk

4

**JUN 05 2006**

**CATHY A. CATTERSON, CLERK**
**U.S. COURT OF APPEALS**

## TCW Special Credits, et v F/V Chloe Z 04-15948

REED, District Judge, dissenting:

I respectfully dissent. Only two issues are validly raised on this appeal: (1)
whether the district court erred in determining that the Chloe Z was not
equitably estopped from asserting the statute of limitations and (2) whether
the district court erred in denying the injured seamen's motions to
consolidate their *in rem* claims with TCW's mortgage foreclosure against
the Chloe Z. Having concluded that neither of these decisions was error, the
court nonetheless decides the case in favor of Appellants Matos and Pranjic
by finding that the statute of limitations on their *in rem* claims was tolled by
their abandoned 1994 *in rem* action against the Chloe Z.

As an initial matter, I agree with Appellees' contention that our 1999
remand on the issue of equitable estoppel implicitly held that, absent such
estoppel, the statue of limitations was a bar. Accordingly, our
reconsideration of that argument here is inappropriate, particularly given the
six years of additional litigation our prior holding spawned.

Looking beyond the prior holding to the merits of the argument, I see
no basis for tolling Appellants' claims against the Chloe Z. A claim may be

1

tolled by statute or in equity. *See Nelson v. Int'l Paint Co.*, 716 F.2d 640, 645 (9th Cir. 1983). No statute tolled the Appellants' claims, so any tolling must be equitable. The doctrine of equitable tolling allows the court to toll the running of a statute of limitations "in situations were the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990). In rejecting Appellants' equitable estoppel appeal, the court here accepts the district court's finding that Appellants' failure to pursue their 1994 *in rem* complaint against the Chloe Z was the product of poor judgment, not a defective pleading or any misconduct by the Chloe Z. This is tantamount to a finding that the decision not to try the 1994 *in rem* claims was "garden variety excusable neglect," which precludes equitable tolling. *Id.*

Because voluntary dismissal of a claim eliminates the possibility of tolling, the question of whether Appellants voluntarily dismissed their claims against the Chloe Z has become almost the dispositive issue in this case. The majority acknowledges that the parties twice stipulated to dismissal of the *in rem* claims against the Chloe Z, but finds that the

2

stipulations had no effect because they did not comply with the District of Guam's Local Rule 3-2, which states that "stipulations shall not be effective unless approved by the judge." I cannot agree with this conclusion.

Although it is true that Judge Coughenour, the district court judge who presided over the 1994 lawsuit, did not *sign* the dismissal stipulations, he did *approve* them, which is all that Local Rule 3-2 requires. The record makes it clear that the parties discussed the dismissal of the *in rem* claims against the Chloe Z with Judge Coughenour at the May 1999 pre-trial conference when they discussed the fact that the *in personam* defendant was going bankrupt and would likely not be able to pay any judgment. There is no doubt that Judge Coughenour knew of the stipulated dismissal and the possibility that Appellants would not be able to collect a judgment for their injuries from the *in personam* defendant. The fact that Judge Coughenour allowed the trial to go forward without the participation of Chloe Z evidences his tacit, if not explicit, approval of the dismissal.

In an attempt to shrug off these concerns, the disposition makes two assertions that directly contradict the record. First, the disposition states that "the defendant has not challenged [the District of Guam's Local Rule 3-2]." Contrary to that statement, the Chloe Z argued in its 1999 appeal that Local

3

Rule 3-2 directly contradicts Federal Rule of Civil Procedure 41, which allows parties to stipulate to dismissal without court order. See, e.g., *American States Ins. Co. v. Dastar Corp*, 318 F.3d 881, 888 & n.9 (9th Cir. 2003). If the district court's local rule contradicts the federal rule, the local rule is void. *See Atchison, Topeka and Santa Fe Ry. Co. v. Hercules Inc*, 146 F.3d 1071, 1074 (9th Cir. 1998). This argument against the finding that the stipulated dismissals were invalid is not trivial, yet has been dismissed without analysis in our dispositions of both the current and the 1999 appeals. It is true that this argument was not raised in the current appeal, but neither was the issue of whether the plaintiffs' *in rem* claims were barred by the statute of limitations. Since we are revisiting the statute of limitations question, fairness dictates that we revisit the Chloe Zs arguments as to why the stipulated dismissals should be considered effective.

Along the same lines, the disposition claims that the Chloe Z admits that the stipulations were ineffective. Looking at the record as a whole, I do not believe it is fair to conclude that the Chloe Z admits that the *in rem* claims were still pending in 1996. The Chloe Z argued twice that the *in rem* action was not pending because of the stipulated dismissal in the 1994 lawsuit—once in its motion for reconsideration of the District Court's denial

4

of the Chloe Z's motion to vacate the Plaintiffs' warrant for arrest of the Chloe Z and once in its opposition brief in the 1999 appeal. Having seen this argument rejected by the District Court and ignored by the 1999 panel in its memorandum disposition, it is not surprising that Appellee argued here from the position that the *in rem* claim was still pending in July 1996 in this appeal. Further, it had nothing to lose by going along with the court's ruling, because the equitable estoppel hearing assumed that the statute of limitations would be a bar to the complaint-in-intervention, regardless of whether the *in rem* claim was pending in July 1996. If we had informed the parties that we were revisiting the issue of whether the statute of limitations had passed, I doubt that the Chloe Z would have accepted that the stipulated dismissals were ineffective without argument.

Moreover, regardless of whether the stipulated dismissals were effective, Appellants' failure to produce evidence and argument regarding their *in rem* claims during the 1996 trial on the first complaint acted as a voluntary dismissal of those claims, so it does not matter whether the *in rem* claims were still pending prior to trial. If the *in rem* claims were still pending when the other claims went to trial, Appellants had a duty to present evidence and argue those claims or face both waiver on appeal and claim

5

preclusion in subsequent lawsuits. These doctrines exist, at least in part, to promote timely presentation of evidence and protect against stale claims—the same policies served by statutes of limitation. Accordingly, failure to produce evidence and argument in support of a claim during trial should be treated the same as a voluntary dismissal for purposes of tolling.

6

Post Judgment Interest Rate Table

| DATE OF AUCTION | EQUIVALENT COUPON ISSUE YIELD | DATE OF AUCTION | EQUIVALENT COUPON ISSUE YIELD | DATE OF AUCTION | EQUIVALENT COUPON ISSUE YIELD | DATE OF AUCTION | EQUIVALENT COUPON ISSUE YIELD | DATE OF AUCTION | EQUIVALENT COUPON ISSUE YIELD |
|---|---|---|---|---|---|---|---|---|---|
|  |  | 12/19/85 | 7.57% | 08/24/89 | 8.27% | 04/30/93 | 3.25% | 01/02/97 | 5.61% |
|  |  | 01/16/86 | 7.85% | 09/21/89 | 8.19% | 05/27/93 | 3.54% | 01/30/97 | 5.64% |
|  |  | 02/13/86 | 7.71% | 10/19/89 | 7.90% | 06/24/93 | 3.54% | 02/27/97 | 5.67% |
|  |  | 03/13/86 | 7.06% | 11/16/89 | 7.69% | 07/22/93 | 3.58% | 03/26/97 | 6.00% |
|  |  | 04/10/86 | 6.31% | 12/14/89 | 7.66% | 08/19/93 | 3.43% | 04/24/97 | 6.06% |
|  |  | 05/13/86 | 6.56% | 01/11/90 | 7.74% | 09/16/93 | 3.40% | 05/22/97 | 5.88% |
| 10/28/82 | 9.29% | 06/05/86 | 7.03% | 02/13/90 | 7.97% | 11/16/93 | 3.57% | 07/17/97 | 5.56% |
| 11/24/82 | 9.07% | 07/08/86 | 6.35% | 03/08/90 | 8.36% | 12/09/93 | 3.61% | 08/14/97 | 5.58% |
| 12/23/82 | 8.75% | 07/31/86 | 6.18% | 04/05/90 | 8.32% | 01/06/94 | 3.67% | 09/11/97 | 5.60% |
| 01/20/83 | 8.65% | 08/28/86 | 5.63% | 05/03/90 | 8.70% | 02/03/94 | 3.74% | 10/09/97 | 5.49% |
| 02/17/83 | 8.99% | 09/25/86 | 5.79% | 05/31/90 | 8.24% | 03/03/94 | 4.22% | 11/06/97 | 5.42% |
| 03/17/83 | 9.16% | 10/23/86 | 5.75% | 06/28/90 | 8.09% | 03/31/94 | 4.51% | 12/04/97 | 5.468% |
| 04/14/83 | 8.98% | 11/20/86 | 5.77% | 07/26/90 | 7.88% | 04/28/94 | 5.02% | 01/06/98 | 5.341% |
| 05/12/83 | 8.72% | 12/23/86 | 5.93% | 08/23/90 | 7.95% | 05/26/94 | 5.28% | 01/29/98 | 5.232% |
| 06/09/83 | 9.59% | 01/15/87 | 5.75% | 09/20/90 | 7.78% | 06/23/94 | 5.31% | 02/26/98 | 5.407% |
| 07/07/83 | 10.25% | 02/12/87 | 6.09% | 10/26/90 | 7.51% | 07/21/94 | 5.49% | 03/26/98 | 5.391% |
| 08/09/83 | 10.74% | 03/12/87 | 6.04% | 11/15/90 | 7.28% | 08/18/94 | 5.67% | 04/23/98 | 5.407% |
| 09/01/83 | 10.58% | 05/12/87 | 7.02% | 12/13/90 | 7.02% | 09/15/94 | 5.69% | 05/21/98 | 5.434% |
| 09/29/83 | 9.98% | 06/04/87 | 7.00% | 01/10/91 | 6.62% | 10/13/94 | 6.06% | 06/18/98 | 5.413% |
| 11/01/83 | 9.86% | 07/02/87 | 6.64% | 02/12/91 | 6.21% | 11/10/94 | 6.48% | 07/16/98 | 5.375% |
| 11/23/83 | 9.93% | 08/04/87 | 6.98% | 03/07/91 | 6.46% | 12/08/94 | 7.22% | 08/18/98 | 5.271% |
| 12/22/83 | 10.10% | 09/01/87 | 7.22% | 04/04/91 | 6.26% | 01/05/95 | 7.34% | 09/15/98 | 4.730% |
| 01/19/84 | 9.87% | 09/30/87 | 7.88% | 05/02/91 | 6.07% | 02/02/95 | 7.03% | 10/13/98 | 4.242% |
| 02/16/84 | 10.11% | 10/22/87 | 6.90% | 05/30/91 | 6.09% | 03/02/95 | 6.57% | 11/09/98 | 4.616% |
| 03/15/84 | 10.60% | 11/19/87 | 6.93% | 06/27/91 | 6.39% | 03/30/95 | 6.41% | 12/08/98 | 4.513% |
| 04/12/84 | 10.81% | 12/17/87 | 7.22% | 07/25/91 | 6.26% | 04/27/95 | 6.28% | 01/05/99 | 4.545% |
| 05/15/84 | 11.74% | 01/14/88 | 7.14% | 09/19/91 | 5.57% | 05/25/95 | 5.88% | 02/02/99 | 4.584% |
| 06/07/84 | 12.08% | 02/11/88 | 6.59% | 10/17/91 | 5.42% | 06/22/95 | 5.53% | 03/02/99 | 4.918% |
| 07/10/84 | 12.17% | 03/10/88 | 6.71% | 11/14/91 | 4.98% | 07/20/95 | 5.70% | 03/30/99 | 4.732% |
| 08/02/84 | 11.93% | 04/07/88 | 7.01% | 12/12/91 | 4.41% | 08/17/95 | 5.89% | 04/27/99 | 4.727% |
| 08/30/84 | 11.98% | 05/05/88 | 7.20% | 01/09/92 | 4.02% | 09/14/95 | 5.52% | 05/25/99 | 4.879% |
| 09/27/84 | 11.36% | 06/02/88 | 7.59% | 02/06/92 | 4.21% | 10/12/95 | 5.62% | 06/22/99 | 5.163% |
| 10/25/84 | 10.33% | 06/30/88 | 7.54% | 03/05/92 | 4.58% | 11/15/95 | 5.45% | 07/20/99 | 4.966% |
| 11/27/84 | 9.50% | 07/28/88 | 7.95% | 04/02/92 | 4.55% | 12/07/95 | 5.35% | 08/17/99 | 5.224% |
| 12/20/84 | 9.08% | 08/25/88 | 8.32% | 04/30/92 | 4.40% | 01/04/96 | 5.16% | 09/14/99 | 5.285% |
| 01/17/85 | 9.09% | 09/22/88 | 8.04% | 05/28/92 | 4.26% | 02/01/96 | 4.89% | 10/13/99 | 5.411% |
| 02/14/85 | 9.17% | 10/20/88 | 8.15% | 06/25/92 | 4.11% | 02/29/96 | 5.25% | 11/09/99 | 5.471% |
| 03/14/85 | 10.08% | 11/17/88 | 8.55% | 07/23/92 | 3.51% | 04/02/96 | 5.46% | 12/07/99 | 5.670% |
| 04/11/85 | 9.15% | 12/15/88 | 9.20% | 08/20/92 | 3.41% | 04/25/96 | 5.60% | 01/04/00 | 5.997% |
| 05/14/85 | 8.57% | 01/12/89 | 9.16% | 09/17/92 | 3.13% | 05/23/96 | 5.62% | 02/01/00 | 6.287% |
| 06/06/85 | 7.70% | 02/15/89 | 9.32% | 10/15/92 | 3.24% | 06/20/96 | 5.89% | 02/29/00 | 6.197% |
| 07/09/85 | 7.60% | 03/09/89 | 9.43% | 11/17/92 | 3.76% | 07/18/96 | 5.81% | 05/31/00 | 6.375% |
| 08/01/85 | 8.18% | 04/06/89 | 9.51% | 12/10/92 | 3.72% | 08/15/96 | 5.67% | 08/29/00 | 6.241% |
| 08/29/85 | 7.91% | 05/04/89 | 9.15% | 01/07/93 | 3.67% | 09/13/96 | 5.90% | 11/28/00 | 6.052% |
| 09/26/85 | 7.87% | 06/01/89 | 8.85% | 02/04/93 | 3.45% | 10/10/96 | 5.64% |  |  |
| 10/24/85 | 8.08% | 06/29/89 | 8.16% | 03/04/93 | 3.21% | 11/07/96 | 5.49% |  |  |
| 11/26/85 | 7.87% | 07/27/89 | 7.75% | 04/06/93 | 3.37% | 12/05/96 | 5.45% |  |  |

Page 2

Exhibit 19

# POST-JUDGMENT INTEREST RATE

## 1999

**The next auction should be on or about January 4, 2000.**

| Date of Auction | Equivalent Coupon Issue Yield |
| --- | --- |
| 01/05/99 | 4.545% |
| 02/02/99 | 4.584% |
| 03/02/99 | 4.918% |
| 03/30/99 | 4.732% |
| 04/27/99 | 4.727% |
| 05/25/99 | 4.879% |
| 06/22/99 | 5.163% |
| 07/20/99 | 4.966% |
| 08/17/99 | 5.224% |
| 09/14/99 | 5.285% |
| 10/13/99 | 5.411% |
| 11/09/99 | 5.471% |
| 12/07/99 | 5.670% |

ADR | Attorney | Cases | Calendars | Forms | Court Info | Jury | Employment | Rules | PACER | Judges | FAQ | Links



*United States District Court, District of Utah. 350 South Main Street, Room 150, Salt Lake City, UT 84101. (801) 524-6100. E-mail: Ut_support@utd.uscourts.gov*

SLOBODAN PRANJIC

| Date of Birth: | 12-Jun-55 | |
|---|---|---|
| Date of Accident: | 25-Nov-91 | |
| Date of Valuation: | 01-Dec-97 | |
| Age at Date of Valuation: | 42.48 | |
| Worklife Expectancy at Date of Valuation: | 15.61 | 58.09 |

# Summary of Economic Loss (Slobodan Pranjic):

| | AVERAGE TONNAGE = WLE *(WORK LIFE EXPECTANCY = WLE)* | TOP 50% TONNAGE WLE |
|---|---|---|
| **Past Period:** | | |
| Loss of Wages and Benefits | $188,284 (A-1) | $201,793 (A-2) |
| Less: Offset Wages and Benefits | (2,736) | (2,736) |
| SUBTOTAL: Past Period | $185,548 | $199,057 |
| **Future Period (In Present Value Dollars):** | | |
| Loss of Wages and Benefits | $262,337 (B-1) | $327,332 (B-2) |
| Less: Offset Wages and Benefits | (14,416) (C-1) | (14,416) (C-1) |
| SUBTOTAL: Future Period | $247,921 | $312,916 |
| **TOTAL ECONOMIC LOSS** | $433,469 | $511,973 |



**RECEIVED**

OCT 3 0 2006

**HW & B - SEATTLE**

# Supreme Court of the United States
## Office of the Clerk
### Washington, DC 20543-0001

William K. Suter
Clerk of the Court
(202) 479-3011

October 26, 2006

Mr. Michael A. Barcott
Holmes Weddle & Barcott
999 Third Avenue
Suite 2600
Seattle, WA 98104

      Re:  Fishing Vessel Chloe Z
           v. Robert Matos, et al.
           Application No. 06A414

Dear Mr. Barcott:

    The application for an extension of time within which to file a petition for a writ of certiorari in the above-entitled case has been presented to Justice Kennedy, who on October 26, 2006 extended the time to and including December 1, 2006.

    This letter has been sent to those designated on the attached notification list.

                        Sincerely,

                        **William K. Suter**, Clerk

                        by

                        Clayton Higgins
                        Case Analyst

Exhibit 21

# Supreme Court of the United States
# Office of the Clerk
# Washington, DC  20543-0001

William K. Suter
Clerk of the Court
(202) 479-3011

## NOTIFICATION LIST

Mr. Michael A. Barcott
Holmes Weddle & Barcott
999 Third Avenue
Suite 2600
Seattle, WA  98104


Clerk
United States Court of Appeals for the Ninth Circuit
P.O. Box 193939
San Francisco, CA  94119-3939