Michael A. Barcott
**HOLMES WEDDLE & BARCOTT**
999 Third Avenue, Suite 2600
Seattle, Washington 98104
(206) 292-8008 Telephone
(206) 340-0289 Facsimile

**Anita P. Arriola**
**ARRIOLA, COWAN & ARRIOLA**
259 Martyr Street, Suite 201
Hagatna, GU 96932
(671) 477-9730 Telephone
(671) 477-9734 Facsimile

Attorneys for the M/V CHLOE Z

**FILED**
DISTRICT COURT OF GUAM

JAN 1 9 2007

**MARY L.M. MORAN**
**CLERK OF COURT**

## DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

| | |
|---|---|
| TCW SPECIAL CREDITS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FISHING VESSEL M/V CHLOE Z, et al., <br><br> Defendants. | Case No. 96-00055 <br><br> **DEFENDANT CHLOE Z'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO DISBURSE FUNDS** |

Defendant CHLOE Z respectfully requests that the Court allow CHLOE Z to file the

attached supplemental brief and exhibits (Exhibit A) in opposition to plaintiffs' motion to

disburse funds. Plaintiffs and CHLOE Z filed a Stipulation to allow CHLOE Z to file its

Opposition on January 15, 2007; due to the federal holiday, CHLOE Z filed its Opposition on

January 16, 2007. However, in the course of reviewing the thousands of docket entries in this

case to file the Opposition, CHLOE Z's counsel inadvertently missed the attached information

and exhibits, which are of critical interest to the Court in rendering a decision on the plaintiffs'

motion. The filing of the supplemental brief will not cause delay or prejudice to any of the

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

1

parties. As of the filing of this motion, no hearing date has been scheduled yet for plaintiffs' motion to disburse funds.

WHEREFORE, Defendant CHLOE Z respectfully requests that the Court allow the filing of its Supplemental Brief and exhibits, attached hereto as Exhibit A.

RESPECTFULLY SUBMITTED this 19th day of January, 2007.

**ARRIOLA, COWAN & ARRIOLA**

By: _____
**ANITA P. ARRIOLA**
Attorneys for F/V CHLOE Z

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

2

**Michael A. Barcott**
**HOLMES WEDDLE & BARCOTT**
999 Third Avenue, Suite 2600
Seattle, Washington 98104
(206) 292-8008 Telephone
(206) 340-0289 Facsimile

**Anita P. Arriola**
**ARRIOLA, COWAN & ARRIOLA**
259 Martyr Street, Suite 201
Hagatna, GU 96932
(671) 477-9730 Telephone
(671) 477-9734 Facsimile

Attorneys for the M/V CHLOE Z

# DISTRICT COURT OF GUAM

# TERRITORY OF GUAM

| | |
|---|---|
| TCW SPECIAL CREDITS, et al., | Case No. 96-00055 |
| Plaintiffs, | |
| v. | **SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO DISBURSE FUNDS** |
| FISHING VESSEL M/V CHLOE Z, et al., | |
| Defendants. | |

The undersigned counsel has just located additional documents which should be of extreme interest to this Court in ruling on this motion. One set of these documents is briefing and an order in this litigation between TCW on the one hand, and Matos and Pranjic on the other. *See* Exhibits 1, 2, and 3. The undersigned counsel did not participate in that briefing and, thus, failed to recall it prior to submitting an opposition brief. The second document is a declaration from counsel for claimant Vjeko Mazic. *See* Exhibit 4. As the Court will see, Mr. Mazic had Bill Dougherty as his attorney and Mr. George Butler as local counsel. Mr. Butler also serves as local counsel for plaintiffs Matos and Pranjic. It is understood that although Mr. Dougherty was not counsel of record for Matos and Pranjic, he did represent them. *See* Exhibit 5, p. 4, ll. 15-18.

EXHIBIT

_A_

1

## TCW v. PRANJIC AND MATOS/THE SHOE IS ON THE OTHER FOOT

In May 2004, much like the current motion, TCW sought an order disbursing funds. Matos and Pranjic, who then held judgments totaling zero, but who were on appeal, vociferously objected. Matos and Pranjic pointed out that this Court had discretion to stay disbursal and that because the vessel sale proceeds were in the Registry of the Court, there was no need for security to be posted. *See* Motion for Stay of Execution of Judgment attached as Exhibit 1 and Opposition to TCW's Motion for Distribution of Remaining Vessel Sale Proceeds attached as Exhibit 2. Matos and Pranjic also argued in these pleadings that disbursing the funds would leave them with no practical remedy if they should win on appeal. *See* Exhibit 2, pp. 2-3. These are precisely the arguments being made by the CHLOE Z in opposing the current Motion to Disburse.

In an order issued August 2, 2004, the Honorable John C. Coughenour, sitting by designation, declined to allow disbursement of funds. Judge Coughenour also noted that "the purpose of a supersedeas bond is to protect the nonappealing party from the risk of a later uncollectible judgment." In that order, the Court noted that because "there are funds from the sale of the vessel already safely under control of the Court," that no additional security would be required and that disbursal of funds need not occur until all of the appeals were finally determined. *See* Exhibit 3, p. 4. Here, the CHLOE Z asks only for the same ruling while the United States Supreme Court considers its appeal.

## THE VALUE OF THE JUDGMENTS/MAZIC CLAIM

In their motion, Pranjic and Matos complain that there are now insufficient funds in the Registry of the Court and that in some fashion the disbursal of the Mazic funds has jeopardized their security. The Court will note that attorney George Butler represented both Pranjic and Matos and Mazic. Attorney William Dougherty was the attorney for Mazic. Attorney Dwight Ritter was trial counsel for Matos and Pranjic, but Mr. Dougherty also represented their interests. *See* Exhibit 5, p. 4.

2

On June 6, 2002, Mr. Dougherty submitted the attached declaration as part of a settlement of Mr. Mazic's claim. *See* Exhibit 4. As set forth in that declaration, Mr. Dougherty pointed out that there were then more than adequate funds in the Registry of the Court and further noted "the Matos and Pranjic claims . . . total $1,593,000 <u>at most</u> . . . ." Exhibit 4, p. 4 (emphasis in original). At that time an order to show cause was issued why the Mazic disbursement should not occur and neither Matos nor Pranjic objected. As shown by Mr. Dougherty's own declaration, there are adequate funds in the Registry of the Court to satisfy the judgments of Matos and Pranjic and no additional security is necessary.

RESPECTFULLY SUBMITTED this 19th day of January, 2007.

**ARRIOLA, COWAN & ARRIOLA**

**By:**_____
**ANITA P. ARRIOLA**
Attorneys for F/V CHLOE Z

3



RECEIVED

JUN - 8 2004

HW & B - SEATTLE

FILED
DISTRICT COURT OF GUAM

MAY 27 2004

MARY L. M. MORAN
CLERK OF COURT

GEORGE M. BUTLER
**BUTLER & TELFORD BUTLER**
Suite 203, America Life Building
137 Murray Boulevard
Hagatna, Guam 96910
Telephone: (671) 475-0200
Facsimile: (671) 475-0203

DWIGHT F. RITTER
**LAW OFFICES OF DWIGHT F. RITTER**
170 Laurel Street
San Diego, CA 92103
Telephone: (619) 238-1811
Facsimile: (619) 544-9232

FREDERICK M. DUDEK
**DUDEK LAW FIRM**
3130 Fourth Avenue, Suite 103
San Diego, California 92103
Telephone: (619) 220-0031
Facsimile: (619) 291-7123

Attorneys for Intervening
Plaintiffs ROBERT MATOS and,
SLOBODAN PRANJIC

## DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

| | |
|---|---|
| TCW SPECIAL CREDITS, ETC., et. al., | ) CIVIL ACTION 96-00055 |
| Plaintiff and<br>Intervening Plaintiffs, | ) **MOTION FOR STAY OF EXECUTION**<br>) **OF JUDGMENT** |
| vs. | ) [FRCP 62(a)]<br>) (Oral Argument Requested) |
| FISHING VESSEL CHLOE Z, ETC., et. al., | ) |
| Defendant | ) |

### I.
### INTRODUCTION

In approximately 1999, Plaintiffs-in-Intervention Robert Matos [MATOS] and Slobodan

Pranjic [PRANJIC] obtained judgments against the fishing vessel M/V Chloe Z for

approximately $1.4 million. On approximately April 9, 2004, the District Court vacated their judgments and entered judgment in favor of Defendant M/V Chloe Z. MATOS and PRANJIC timely appealed this judgment.

MATOS and PRANJIC request this court grant a Stay of Execution of Judgment until their appeal is resolved. Instead of a supersedeas bond, MATOS and PRANJIC request this Court accept the existing Certificates of Deposit currently under the control of this Court as the requisite security. MATOS and PRANJIC bring this motion in response to an attempt by the mortgage holder [TCW] to take possession of these Certificates of Deposit, which they state have a value of approximately $1,695,767.36. (Declaration of Craig Miller in Support of TCW's Motion for Distribution of Remaining Vessel Sale Proceeds, paragraph 4.)

## II.
### THE PURPOSE OF A BOND PENDING APPEAL IS TO PRESERVE THE *STATUS QUO*

Federal Rule of Civil Procedure 62(d) allows an appellant to prevent the execution of a judgment during appeal. It protects both the "winning" and "losing" party by assuring funds will be available at the conclusion of the appellate process. The Ninth Circuit stated: "Rule 62(d) is a purely procedural mechanism to preserve the *status quo* during a stay pending appeal of a district court decision...," Bass v. First Pacific Networks, Inc., 219 F.3d 1052 (9th Cir. 2000).

Here, granting a stay of execution (and denying TCW's request to distribute the vessel proceeds) would preserve the *status quo*. As TCW admits in its declarations requesting distribution, the funds are already safely under the control of this Court.

## II.
### THIS COURT HAS THE DISCRETION AND POWER TO GRANT A STAY OF EXECUTION OF JUDGMENT AND DETERMINE THE NATURE AND AMOUNT OF SECURITY

The District Court has discretion to set the amount of a bond and approve the nature of the security. Rachel v. Banana Republic, Inc. 831 F2d 1503 (9th Cir. 1987). Reduced or alternative security may be requested by motion. International Telemeter Corp v. Hamlin Int'l Corp. 754 F2d 1492 (9th Cir. 1985). The District Court also has the discretion to order partially secured or unsecured stays if they do not unduly endanger the judgment creditor's interest in

MOTION FOR STAY OF EXECUTION OF JUDGMENT [FRCP 62(a)] ORAL ARGUMENT REQUESTED - 2



1 ultimate recovery. <u>Federal Prescription Service Inc. v. American Pharmaceutical Association</u>,

2 636 F2d 755, 760 (DC Cir. 1980).

3      Here, granting a stay (and denying TCW's request to distribute all remaining vessel sale

4 proceeds) will not endanger TCW's potential interest in the ultimate recovery because the funds

5 are already safely under the Court's control. In its moving papers, TCW states the vessel sale

6 proceeds are currently invested in 2 Certificates of Deposit with a value of approximately

7 $1,695,767.36. (Declaration of Craig Miller in Support of TCW's Motion for Distribution of

8 Remaining Vessel Sale Proceeds, paragraph 4.)

9

10 ### III.
### SUMMARY

11

12      Granting this motion would insure the opportunity for justice for these injured seamen,

13 while still protecting the financial interests of TCW. Denying this motion would cause

14 irreparable harm to MATOS and PRANJIC if TCW is permitted to disburse the only proceeds

15 available to them. Based on the above, as well as their Opposition to TCW's Motion for

16 Distribution of Remaining Vessel Sale Proceeds filed with these papers, MATOS and PRANJIC

17 respectfully request this Court grant their Motion for Stay of Execution of Judgment.

     Respectfully submitted,

18

19

20

21

22 GEORGE M. BULTER

23 For Intervening Plaintiffs
ROBERT MATOS and

24 SLOBODAN PRANJIC

25

26

27

28



FILED
DISTRICT COURT OF GUAM

MAY 2 7 2004

MARY L. M. MORAN
CLERK OF COURT

GEORGE M. BUTLER
**BUTLER & TELFORD BUTLER**
Suite 203, America Life Building
137 Murray Boulevard
Hagatna, Guam 96910
Telephone: (671) 475-0200
Facsimile: (671) 475-0203

DWIGHT F. RITTER
**LAW OFFICES OF DWIGHT F. RITTER**
170 Laurel Street
San Diego, CA 92103
Telephone: (619) 238-1811
Facsimile: (619) 544-9232

FREDERICK M. DUDEK
**DUDEK LAW FIRM**
3130 Fourth Avenue, Suite 103
San Diego, California 92103
Telephone: (619) 220-0031
Facsimile: (619) 291-7123

Attorneys for Intervening
Plaintiffs ROBERT MATOS and,
SLOBODAN PRANJIC

## DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

| | |
|---|---|
| TCW SPECIAL CREDITS, ETC., et. al., | CIVIL ACTION 96-00055 |
| Plaintiff and Intervening Plaintiffs, | **OPPOSITION TO TCW'S MOTION FOR DISTRIBUTION OF REMAINING VESSEL SALE PROCEEDS** |
| vs. | |
| FISHING VESSEL CHLOE Z, ETC., et. al., | |
| Defendant | |

## I.
## INTRODUCTION

This litigation has continued for years and involved numerous trials. The many parties include 2 injured seamen, a fishing vessel and a mortgage holder. The motion before this Court

is an attempt by the mortgage holder [TCW] to disburse the only remaining asset available to the injured seamen [MATOS and PRANJIC] before their appeal is heard.

In approximately 1999, Plaintiffs-in-Intervention Robert Matos [MATOS] and Slobodan Pranjic [PRANJIC] obtained judgments against the fishing vessel M/V Chloe Z totaling approximately $1.4 million. On approximately April 9, 2004, the District Court vacated their judgments and entered judgment in favor of Defendant M/V Chole Z. MATOS and PRANJIC appealed.

During this extensive litigation, the vessel was sold and the Court maintained possession of the proceeds from the sale. According to declarations submitted in TCW's latest motion, the remaining vessel proceeds are approximately $1.7 million. TCW asks this Court for the remaining proceeds, in addition to the approximately $11.5 million it indicates it has already received. MATOS and PRANJIC request this Court deny TCW's motion and maintain possession of the vessel proceeds until their appeal is decided.

MATOS and PRANJIC are also filing a MOTION FOR STAY OF EXECUTION OF JUDGMENT concurrently with this OPPOSITION.

## II.

### DISTRIBUTION OF THE VESSEL SALE PROCEEDS PRIOR TO RESOLUTION OF THE INJURED SEAMEN'S APPEAL WOULD CAUSE SEVERE HARDSHIP TO MATOS AND PRANJIC

MATOS and PRANJIC are former commercial fisherman of limited economic means. They are "wards of the court in admiralty" and are entitled to the benefits and protections afforded to claimants who are historically unable to protect their interests against more powerful maritime ship owners and financial institutions. The vessel sale proceeds which are the subject of this motion are the only funds available to compensate these men for their injuries which occurred in 1991 and 1992.

If the mortgage holder [TCW] is permitted to distribute these proceeds while their appeals are pending, MATOS and PRANJIC would be unable to obtain compensation if their appeal is successful. MATOS and PRANJIC already obtained judgments against the owner of

the M/V Chloe Z but were unable to collect those judgments despite the existence of a multi-million dollar insurance policy. Therefore, the remaining vessel proceeds are their last opportunity to obtain justice from our legal system.

## II.
## AN INJURED SEAMEN'S JUDGMENT IS SUPERIOR TO A PREFERRED MORTGAGE LIEN

46 U.S.C. 31326(b) provides that "preferred maritime liens" (which includes personal injury judgments for seamen) are superior to the "preferred mortgage lien" held by TCW. Therefore, if MATOS and PRANJIC are successful in their appeal, they would be entitled to compensation before TCW's judgment is paid.

## III.
## TCW'S INTERESTS ARE STILL PROTECTED IF THE COURT DENIES THEIR MOTION AND CONTINUES TO CONTROL THE REMAINING VESSEL PROCEEDS

Granting TCW's motion would leave the injured seamen completely unprotected if their appeal is successful. However, if the Court denies their motion, TCW's financial interests are still protected. If the injured seamen's appeal is not successful, TCW would be able to assert their rights based on the mortgage and distribute the proceeds at the conclusion of the appellate process. During the appeal, the remaining vessel sale proceeds would continue to accumulate interest, for TCW's benefit.

## IV.
## SUMMARY

Granting TCW's motion to distribute the remaining vessel sale proceeds would cause irreparable harm to MATOS and PRANJIC. Denying TCW's motion would insure the opportunity for justice for these injured seamen, while still protecting the financial interests of TCW. Based on the above, as well as the MOTION FOR STAY OF EXECUTION OF JUDGMENT filed with these papers, MATOS and PRANJIC respectfully request this Court deny TCW's motion.

\\\\
\\\\
\\\\



Respectfully submitted,

GEORGE M. BUTLER
For Intervening Plaintiffs
ROBERT MATOS and
SLOBODAN PRANJIC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OPPOSITION TO TCW'S MOTION FOR DISTRIBUTION OF REMAINING VESSEL SALE PROCEEDS- 4

FILED
DISTRICT COURT OF GUAM
AUG -2 2004
MARY L. M. MORAN
CLERK OF COURT

1
2
3
4
5
6
7
8
9

**DISTRICT COURT OF GUAM**

**TERRITORY OF GUAM**

10  TCW SPECIAL CREDITS, et al.,                      Civil Case No. 96-00055

11          Plaintiffs,

12              vs.

13  F/V CHLOE Z, et al.,

14          Defendants.

15

16  VJEKO MAZIC

17          Plaintiff-in-Intervention,

18              vs.                                          **ORDER**

19  M/V CHLOE Z, et al.,

20          Defendants.

21

22          This case is before the Court on the Plaintiffs'-In-Intervention, Robert Matos and Slobodan

23  Pranjic, ("Plaintiffs-In-Intervention"), Motion for Stay of Execution of Judgment.  Pursuant to

24  Local Civil Rule 7.1(e)(3), this matter is appropriate for decision without the need for oral

25  argument.[1]  In addition, the Court has before it the Plaintiff's, TCW Special Credits ("TCW")

26
27
28

[1]Local Civ.R. 7.1(e)(3) states "[i]n cases where the parties have requested oral argument, such oral argument may be taken off calendar by Order of the Court, in the discretion of the Court, and a decision rendered on the basis of the written materials on file."




1  Motion for Distribution of Remaining Vessel Sale Proceeds.[2]  After reviewing the parties'
2  submissions, as well as relevant caselaw and authority, the Court hereby GRANTS the Plaintiff-In-
3  Intervention for Stay of Execution of Judgment and DENIES TCW's Motion for Distribution of
4  Remaining Vessel Sale Proceeds as set forth herein.

## BACKGROUND

6          This matter was tried on the Plaintiffs'-in-Intervention, Robert Matos and Slobodan Pranjic,
7  complaints *in rem* for personal injuries brought against the Defendant fishing vessel Chloe Z
8  ("Chloe Z").  In 1999, the Plaintiffs-In-Intervention obtained judgments from Chole Z for
9  approximately $1.2 million.  Thereafter, the Chloe Z appealed the case and the Ninth Circuit
10 affirmed in part, reversed in part and remanded the case back to the District Court for further
11 proceedings.

12         On the 20th and 21st day of May 2003, the Court heard the case on remand and confined the
13 issues as instructed by the Ninth Circuit to one, whether the Chloe Z should be equitably estopped
14 from raising a statute of limitations defense; and two, whether special circumstances exist that
15 would justify the Court's denial of prejudgment interest to Plaintiff-In-Intervention, Robert Matos.
16 After consideration of the evidence produced at trial and applicable law, the Court found that the
17 *in rem* causes of action of the Plaintiffs-In Intervention were in fact time barred by the statute of
18 limitations and that Chloe Z should not have been equitably estopped from raising a statute of
19 limitations defense.  Accordingly, the Court granted judgment in favor of the Defendant Chloe Z
20 and vacated its prior judgment entered in favor of the Plaintiffs-In-Intervention.  In light of the
21 Court's ruling as to the first issue, the Court did not address the second issue finding it was moot.
22 The Plaintiffs-In-Intervention timely appealed the Court's decision.

23         On May 12, 2004, the Plaintiff TCW filed a Motion for Distribution of Remaining Vessel
24 Sale Proceeds.  TCW is a mortgagee with a preferred ship mortgage on the Defendant vessel Chloe

---

27       [2]The Plaintiff TCW did not request a Oral Hearing on this matter and one was not scheduled.
28 However, for purposes of disposing of the Plaintiffs-In-Interventions' Motion for Stay of Execution, it
is appropriate for this Court to also address TCW's Motion for Distribution of Remaining Vessel Sale
Proceeds since both motions concern the same funds retained by this Court

1  Z.[3] The Chloe Z was sold by the U.S. Marshal in 1996 and TCW's mortgage lien attached to the

2  vessel sale proceeds. The vessel sale proceeds were approximately $6,710,000. However, before

3  those funds were disbursed to TCW, various disbursements were made to claims with senior

4  priority. For example, monies were paid for: 1) the reimbursement of costs associated with the

5  arrest and custodial fees of the U.S. Marshal; 2) settlement of a seaman's personal injury claim; and

6  3) numerous crew members of the Chloe Z for unpaid wages and related claims. There remains

7  approximately $1,695,767 in the Clerk's registry of the vessel sale proceeds.[4]

8      Since the matter concerning the Plaintiffs-In-Intervention has been settled by the Court,

9  TCW requests that the remainder of the funds retained by the Court for the sale of the vessel be

10  disbursed. In response, the Plaintiffs-In-Intervention now request this Court to grant a Stay of

11  Execution of the Judgment until their appeal is resolved.

12                          **DISCUSSION**

13      The Plaintiffs-In-Intervention contend the Court has the authority to stay the proceedings

14  in this matter pending the resolution of their appeal from the final judgment dismissing their claims

15  pursuant to Federal Rule of Civil Procedure 62(d). Rule 62(d) protects both parties by maintaining

16  the status quo. See Bass v. First Pacific Networks, Inc., 219 F.3d 1052 (9th Cir. 2000)("Rule 62(d)

17  is a purely procedural mechanism to preserve the *status quo* during a stay pending appeal of a

18  district court decision . . . "). The Plaintiffs-In-Intervention claim that if the Court denies the

19  motion, it would cause irreparable harm if TCW is permitted the disbursement of the only proceeds

20  available to them should they prevail on their appeal.

21      However, TCW states that before a stay is issued the Court should require the Plaintiffs-In-

22  Intervention to post a supersedeas bond to cover TCW's economic injury. Rule 62(d) of the

23  Federal Rules of Civil Procedure provides:

24  _____

25      [3]TCW was granted a judgment in the amount of $19,687,849.54. TCW holds now an
   unsatisfied judgment well in excess of $8,200,000. See Miller Decl. ¶ 5. That lien is secured by a lien

26  on the vessel sale proceeds retained by the Court. Id.

27      [4]See Miller Decl. ¶ 4. The vessel sale proceeds currently "are invested in two 30 day
   certificates of deposit ("CD"). As of March 31, 2004, one of the CDs has a balance of $1,117,058.16.

28  As of April 27, 2004, the second CD has a balance of $578,709.20. Some additional interest has
   accrued since those dates."

                          Page 3 of 5

1   When an appeal is taken the appellant by giving a supersedeas bond may obtain a
2   stay . . . The bond may be given at or after the time of filing the notice of appeal
    or of procuring the order allowing the appeal, as the case may be. The stay is
3   effective when the supersedeas bond is approved by the court.

4   The Plaintiffs-In-Intervention claim that because there is no judgment in favor of any party that

5   must be protected a supersedeas bond is unnecessary.

6       The purpose of a supersedeas bond is to protect the non-appealing party from the risk of a

7   later uncollectible judgment and compensate him for any loss resulting from the stay of execution.

8   N.L.R.B. v. Westphal, 859 F.2d 818, 819 (9th Cir.1988). The Court is mindful that when equities

9   require it, it has the discretion to deviate from the terms of Rule 62. See Intern. Telemeter v.

10  Hamlin Intern. Corp., 754 F.2d 1492, 1495 (9th Cir. 1985) ("Although Federal Rule of Civil

11  Procedure 62 provides that a supersedeas bond may be used to stay execution of a judgment

12  pending appeal, the court has discretion to allow other forms of judgment guarantee."). Under the

13  circumstances, the Court recognizes the harsh inequities the Plaintiffs-In-Intervention would suffer

14  should they prevail and there is no recovery because the only source of funds for such has been

15  disbursed.[5]

16      In addition the Court finds that this case differs from the general type of case where the

17  party seeking a stay is a losing defendant who wishes to postpone the payment of a judgment and

18  must post a bond to ensure that should the plaintiff prevail on appeal there is a source of recovery.

19  There are funds from the sale of the vessel already safely under the control of the Court. Therefore,

20  granting a stay will not endanger TCW's potential interest in the ultimate recovery of those funds.

21  Although the yield of return on the retained funds is less than TCW would hope for, the Court notes

22  that the funds are invested in two certificates of deposit. If TCW believes there are other

23  investment vehicles for the funds which would yield a better return, it may always make the

24  appropriate request to the Court.

25  ///

26  _____

27      [5]It is not this Court's intention to second guess the findings of the trial court and this Court
28  makes no determination as to the appropriateness of the prior rulings. However, it does find extremely
    troubling the possible inequities the Plaintiffs-In-Intervention would suffer should they lose their
    appeal.

                            Page 4 of 5

## CONCLUSION

Upon consideration of the foregoing, the Court finds that there is a basis to grant the relief as requested in the Plaintiffs'-In-Intervention Motion for Stay of Execution of Judgment. Accordingly, the Court GRANTS the motion. Additionally, TCW's Motion for Distribution of Remaining Vessel Sale Proceeds is DENIED. The hearing scheduled for August 5, 2004 is hereby vacated.

SO ORDERED this _____ day of August, 2004.


JOHN C. COUGHENOUR
United States District Judge[*]

Notice is hereby given that this document was
entered on the docket on _____.
No separate notice of entry on the docket will
be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam

By: _____
Deputy Clerk                    Date

[*]The Honorable John C. Coughenour, United States Chief District Judge for the Western District of Washington, sitting by designation.

Page 5 of 5

1   GEORGE M. BUTLER, ESQ.
    **BUTLER & TELFORD BUTLER**
2   137 Murray Boulevard, Suite 203
    Hagatna, Guam 96910
3   Telephone: (671)475-0200

4   WILLIAM O. DOUGHERTY, ESQ.
    **DOUGHERTY, HILDRE, DUDEK & HAKLAR**
5   2550 Fifth Avenue, Suite 600
    San Diego, California 92103
6   Telephone: (619)232-9131

7   Attorneys for Plaintiff-in-Intervention
    VJEKO MAZIC
8

RECEIVED
JUN 1 3 2002
HW & B - SEATTLE

9                   **UNITED STATES DISTRICT COURT**

10                  **FOR THE TERRITORY OF GUAM**

11  TCW SPECIAL CREDITS, a          )   CASE NO. 96-00055
    California general partnership,   )
12  as Agent and Nominee,            )   **AMENDED DECLARATION OF**
                                      )   **WILLIAM O. DOUGHERTY IN**
13                      Plaintiff,    )   **SUPPORT OF PAYMENT OF**
                                      )   **VJEKO MAZIC'S PERSONAL**
14  v.                                )   **INJURY CLAIMS IN FULL FROM**
                                      )   ***RES* PROCEEDS**
15  FISHING VESSEL M/V CHLOE Z,      )
    OFFICIAL NO. 653391, her          )
16  engines, nets, furniture, etc.    )
    In Rem, CHLOE Z FISHING COMPANY, )
17  INC., a Commonwealth of the       )
    Northern Mariana Islands          )
    corporation, In Personam,         )
18                                    )
                        Defendants.   )
19  _____      )
    VJEKO MAZIC                       )
20                                    )
            Plaintiff-in-Intervention )
21                                    )
    v.                                )
22                                    )
    M/V CHLOE Z, her engines,        )
23  equipment, tackle,                )
    appurtenances, apparel,           )
24  furniture, and fish catch,        )
    In Rem, CHLOE Z FISHING COMPANY, )
25  INC., SPHERE DRAKE UNDERWRITING   )
    MANAGEMENT, LTD., and             )
26  DOES 1 through 50,                )
                                      )
27                      Defendants.   )
    _____      )
28

                           **EXHIBIT 4**

I, WILLIAM O. DOUGHERTY, hereby declare:

1.    I am an attorney at law duly admitted to practice before the courts of the State of California. I am a partner with the Law Firm of Dougherty, Hildre, Dudek & Haklar attorneys of record in the above-referenced matter. All matters stated herein are of my own personal knowledge, except for those matters stated upon information and belief.

2.    I am the attorney of record in the matter of TCW Special Credits v. F/V Chloe Z, Vjeko Mazic v. M/V Chloe Z, et al., Civil Case # 96-00055 and addressing the court's concerns with respect to whether or not payment of Mazic's claim in full would jeopardize the availability of adequate funds for payment of the Matos and Pranjic claims the undersigned responds as follows.

## I.

## PRIORITY OF CLAIMS

In this matter it is well established settled that the priority of claims is as follows:

1.    Expenses of justice;

2.    Crew wages;

3.    Preferred Maritime Liens including tort claims for personal injuries;

4.    Marine contract liens; and

5.    Non-Maritime claims.

The undersigned represents to this court that the expenses of justice in this matter have previously been paid in full. With respect to category number two; crew wages, all crew wage claims have been paid in full.

The next category of payment would be preferred maritime liens including tort claims for injury which would include the Matos, Mazic and Pranjic claims. These are the only unresolved tort claims existing at this time. These are also the liens of the highest priority at this time as the expenses of justice and crew wages have been fully discharged.

////
////
////
////

2

## II.

## PRIORITY WITHIN A CLASS

The undersigned stipulates that the claims of <u>Matos</u>, <u>Mazic</u> and <u>Pranjic</u> are all in the same class and have equal priority.

## III.

## PAYMENT OF THE <u>MAZIC</u> CLAIM IN FULL
## AT THIS TIME WILL NOT COMPROMISE
## THE <u>MATOS</u> AND <u>PRANJIC</u> CLAIMS

In addressing this issue the undersigned would refer the court to TCW's Motion For Summary Judgment on Promissory Note, Mortgage and Other Collateral Instruments and For Partial Distribution of Vessel Proceeds filed with this court on October 26, 2001, a copy of which is attached hereto and marked as Exhibit "1". In connection with that document, TCW sets forth the history and procedural background of this matter and further summarizes the *in rem* claims of <u>Pranjic</u>, <u>Mazic</u> and <u>Matos</u>.

<u>Pranjic's</u> *in rem* claims were tried to this court and resulted in a judgment in the sum of $577,420.00 on or about January 11, 1999. The Ninth Circuit's ruling reduced the award by approximately $44,000.00.

<u>Mazic's</u> *in rem* claims were tried to this court and the court entered its final decision on January 11, 1999 entering an award in the sum of $629,958.00 which was subsequently reduced by the Ninth Circuit in the approximate sum of $43,000.00.

<u>Matos'</u> *in rem* claims were tried to this court with the court entering its decision on February 19, 1999 awarding judgment in the sum of $621,514.00. The Ninth Circuit ruling with respect to pre-judgment interest in the matter, if awarded, could increase that sum by approximately $242,000.00. Taking into effect the Ninth Circuit Court's ruling and allowing for post judgment interest the following represents a fair figure for the total liquidated *in rem* claims payable by lien on the Chloe Z vessel sale proceeds:

<u>Pranjic</u>    Trial Award $577,420.00 (Ninth Circuit reduction $44,000.00, accrued post judgment interest $75,000.00) Total $608,420.00.

3

| 1 | Matos | Trial Award \$621,514.00 (Potential Ninth Circuit increase for pre-judgment |
| 2 | | interest \$242,000.00, accrued post judgment interest \$120,000.00) Total |
| 3 | | \$983,514.00. |
| 4 | Mazic | Settlement amount \$689,953.00 (plus interest at the rate of \$74.71 per day |
| 5 | | from May 1, 2002 until paid) |
| 6 | | **Grand Total: \$2,281,887.00** |

As there is currently \$2,658,674.63 plus accrued interest on deposit with this Honorable Court, there are more than adequate funds in the registry to satisfy the perfected maritime liens of Mazic, Matos and Pranjic. [Even after the payment of Mazic's claim in full in the sum of approximately \$691,000.00 including interest to date, the registry will still be left with \$1,965,000.00 to pay the Matos and Pranjic claims which total \$1,593,000.00 at most, leaving an excess of at least \$372,000.00.] Therefore it is respectfully requested that this court order payment of the Mazic claim in full at this time as it will clearly not compromise full payment of the claims of Matos and Pranjic once they have been determined.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on this 6th day of June, 2002 at San Diego, California.

WILLIAM O. DOUGHERTY

4

**EXHIBIT "1"**

1  Craig Miller
   DAVIS WRIGHT TREMAINE LLP
2  2600 Century Square
   1501 Fourth Avenue
3  Seattle, WA 98101
   Tel. (206) 622-3150
4
   D. Paul Vernier, Jr.
5  McKEOWN • VERNIER • PRICE • MAHER
   A Joint Venture of McKeown Price LLP
6  And Vernier & Maher LLP
   115 Hesler Place • Ground Floor
7  Governor Joseph Flores Building
   Hagåtña, Guam 96910
8  Tel. (671) 477-7059
9  Attorneys for Plaintiff
   TCW Special Credits

10

11              UNITED STATES DISTRICT COURT

12                   DISTRICT OF GUAM

13  TCW SPECIAL CREDITS, et al.,          )
                                          )
14                    Plaintiff,          )   No. 96-00055
                                          )
15        v.                              )   TCW'S MOTION FOR SUMMARY
                                          )   JUDGMENT ON PROMISSORY
16  FISHING VESSEL CHLOE Z, et al.,       )   NOTE, MORTGAGE AND OTHER
                                          )   COLLATERAL INSTRUMENTS;
17                    Defendant.          )   AND FOR PARTIAL DISTRIBUTION
                                          )   OF VESSEL SALE PROCEEDS TO
18  JUAN BARNADIARAN, et al.,             )   MORTGAGEE; CERTIFICATE OF
                                          )   SERVICE
19                    Plaintiffs-in-      )
                      Intervention.       )   [ORAL ARGUMENT NOT
20                                        )   REQUESTED]
                                          )
21  RELATED CLAIMS-IN-INTERVENTION        )
                                          )
22  _____      )

23        Plaintiff TCW Special Credits ("TCW") moves for summary judgment on its claims on

24  the defaulted promissory note, and the preferred ship mortgage and other collateral instruments

25  securing the promissory note; and for distribution to TCW of a portion of the vessel sale proceeds.

26  TCW'S MOTION FOR SUMMARY JUDGMENT - 1

TCW does not request oral argument.

As the Court knows, there has been a final, comprehensive settlement reached between TCW and Crew Claimants, and that settlement has been fully implemented. See, Stipulation and Order Approving Settlement, Etc. ("Settlement Approval Order"), entered September 19, 2001. The settlement between TCW and Crew was reached only after lengthy negotiation and mutual compromise. That settlement resolves litigation concerning the Crew wage claims that has lasted more than five years, and has included scores of motions to this court, a trial, and multiple appeals. TCW is therefore most pleased to be able to advise the Court of the settlement with the Crew.

Following in logical sequence from that settlement, TCW's present motion is a necessary next step toward the final completion of this litigation.

Relative to this motion, there are no facts in dispute.

A.    Summary Judgment and Order of Disbursal Requested.

TCW requests entry of summary judgment against defendant Chloe Z Fishing Co., Inc. ("CZFC, Inc.") for money judgment on the sum certain owed by CZFC, Inc., on its defaulted promissory note (the "Term Loan Note"); and for foreclosure of the preferred ship mortgage ("Preferred Ship Mortgage") the F/V CHLOE Z, Official No. Official No. 653391 ("Vessel") and of the other collateral instruments sued on in TCW's verified Complaint.

As of September 30, 2001, the defaulted indebtedness owed by CZFC, Inc., on the Term Loan Note is $19,225,956.01, exclusive of legal fees. Interest continues to accrue on the defaulted principal balance of the Term Loan Note at the rate of $3,580.57 per diem, from September 30, 2001, until paid. Mazurek Declaration, ¶ 3.

TCW also requests an order disbursing to TCW proceeds of the sale of the Vessel, now held in the registry of the Court, but reserving in the registry ample funds for eventual

TCW'S MOTION FOR SUMMARY JUDGMENT - 2

satisfaction of liens as may be established by personal injury claimants Slobodan Pranjic, Robert Matos and Vjeko Maric (together, "Personal Injury Claimants").

**B.** Evidence Relied Upon.

In support of this motion, TCW relies on the following evidence:

1. The prior orders of this Court, as cited in this memorandum.

2. The Clerk's entry of defaults, on file in this action.

3. Declaration of Mariusz Mazurek, dated October 16, 2001, filed herewith.

4. TCW's verified Complaint ("TCW Complaint") and exhibits attached thereto, on file in this action.

5. Declaration of D. Paul Vernier, Jr., presenting the Statement of Account, dated October 24, 2001, from US District Court Office of the Clerk.

**C.** History and Procedural Background of Case.

As established in the verified TCW Complaint, TCW is the holder of the Preferred Ship Mortgage the CHLOE Z, which secures the obligations of the Vessel's owner, CZFC, Inc., under a Loan Agreement and Term Loan Note. TCW holds additional security for those obligations by virtue of CZFC, Inc.'s grants of security and assignment under a Security Agreement and Assignment of Insurances. To the best knowledge of TCW, no party in this action has ever materially contested the accuracy of any allegation made in the TCW Complaint.

The Term Loan Note was made and delivered by CZFC, Inc., on October 15, 1991. The original lender to CZFC, Inc., and the indicated payee on the Term Loan Note, is a Norwegian bank, Christiania Bank. However, TCW purchased Christiania Bank's interest in the Term Loan Note (and in all supporting collateral, including the Preferred Ship Mortgage) on June 30, 1995. CZFC, Inc.'s obligations under the Term Loan Note have been in default since July 1, 1993.

The TCW Complaint was filed on July 5, 1996.

TCW'S MOTION FOR SUMMARY JUDGMENT - 3

satisfaction of liens as may be established by personal injury claimants Slobodan Pranjic, Robert Matos and Vjeko Mazic (together, "Personal Injury Claimants").

B.    **Evidence Relied Upon.**

In support of this motion, TCW relies on the following evidence:

1.    The prior orders of this Court, as cited in this memorandum.

2.    The Clerk's entry of defaults, on file in this action.

3.    Declaration of Mariusz Mazurek, dated October 16, 2001, filed herewith.

4.    TCW's verified Complaint ("TCW Complaint") and exhibits attached thereto, on file in this action.

5.    Declaration of D. Paul Vernier, Jr., presenting the Statement of Account, dated October 24, 2001, from US District Court Office of the Clerk.

C.    **History and Procedural Background of Case.**

As established in the verified TCW Complaint, TCW is the holder of the Preferred Ship Mortgage the CHLOE Z, which secures the obligations of the Vessel's owner, CZFC, Inc., under a Loan Agreement and Term Loan Note. TCW holds additional security for those obligations by virtue of CZFC, Inc.'s grants of security and assignment under a Security Agreement and Assignment of Insurances. To the best knowledge of TCW, no party in this action has ever materially contested the accuracy of any allegation made in the TCW Complaint.

The Term Loan Note was made and delivered by CZFC, Inc., on October 15, 1991. The original lender to CZFC, Inc., and the indicated payee on the Term Loan Note, is a Norwegian bank, Christania Bank. However, TCW purchased Christania Bank's interest in the Term Loan Note (and in all supporting collateral, including the Preferred Ship Mortgage) on June 30, 1995. CZFC, Inc.'s obligations under the Term Loan Note have been in default since July 1, 1993.

The TCW Complaint was filed on July 5, 1996.

TCW'S MOTION FOR SUMMARY JUDGMENT - 3

TCW immediately moved for a warrant of arrest of the Vessel. The Vessel was forthwith arrested, as was her fish-catch aboard ("Fish Catch").

Proper service and notice of the action and of the arrest was given to all interested persons. See, Certificate of Mailing, filed July 11, 1996 (notice given to all lien claimants); return of service on registered agent for G2FC, Inc., dated July 16, 1996; and Declaration of Maggie Castro, regarding publication of Notice in Pacific Daily News, filed July 18, 1996.

The Clerk on September 26, 1996, entered a Default against CHLOE Z and G2FC, Inc., as to TCW's Complaint. Also, on April 20, 1998, the Court entered an Order of Default Against All Non-Appearing Claimants to the Vessel and Against Chloe Z Fishing Co., Inc.

The following claimants asserted claims against the Vessel and/or its Fish Catch by way of complaints-in-intervention: Starkist Caribe, Inc. and Star-Kist Foods, Inc. (the Starkist parties together filed one complaint, on July 26, 1996); a group of unpaid seamen who served aboard the CHLOE Z ("Crew Claimants") (filed July 30, 1995, and amended and supplemented thereafter); Shell Guam, Inc. (filed August 19, 1996; and Clipper Oil Company (filed October 9, 1996); and the three Personal Injury Claimants.

An Order for Interlocutory Sale of the Fish Catch was entered on August 9, 1996. On August 20, 1996, the Fish Catch was sold at auction by the US Marshal for the winning bid of $725,000. The proceeds of that sale ("Fish Catch Sale Proceeds"), net of certain sale costs, was deposited in the registry of the Court.

An Order for Interlocutory Sale of the Vessel was entered on October 17, 1996. On December 3, 1996, the CHLOE Z was sold at auction by the US Marshal for the winning bid of $6,710,000. The proceeds of that sale ("CHLOE Z Vessel Sale Proceeds"), net of certain sale costs, was deposited in the registry of the Court.

TCW'S MOTION FOR SUMMARY JUDGMENT - 4

The complaints in intervention of Starkist, Shell Guam, and Clipper Oil Company ("collectively, "Trade Claimants"), were resolved by settlement with TCW reached in 1998. In order to achieve those settlements, TCW paid a substantial sum of money to each of the Trade Claimants, and received an assignment of the Trade Claimant's claim and lien rights. Mazurek Decl. ¶ 4 and Exs. B, C and D. TCW entered those settlements in an effort to simplify the litigation. At the time, TCW was well aware that the liens of the Trade Claimants were "out of the money," since the senior liens — namely, the custodia legis lien, the Crew wage lien, the Personal Injury Claimant lien, and the Preferred Ship Mortgage lien — would certainly consume all available Vessel Sale Proceeds and Fish Catch Proceeds (and yet still leave a multi-million dollar shortfall in the payment of the Preferred Ship Mortgage lien[1]).

As noted above, the claims of all Crew also have been resolved by settlements. All settlements, including settlements made early in the case (and specifically including the six disputed settlements) have now fully agreed, paid and resolved, and all Crew wage claims have been entirely and finally resolved. See, Settlement Approval Order, entered September 19, 2001.

The Settlement Approval Order authorized disbursal to the Crew of nearly the entirety of the Fish Catch Sale Proceeds; and further authorized disbursal of the then relatively small remaining balance of Fish Catch Sale Proceeds to TCW in partial satisfaction of TCW's approved custodia legis lien. Those disbursals exhausted the entire Fish Catch Sale Proceeds.

Therefore, as a result of the various settlements entered by lead plaintiff TCW, the case is much closer to final resolution, and now stands considerably simplified. The structure of the case is now as follows:

---

[1] It is a mathematical certainty that the multi-million dollar shortfall will exist even after realization on all collateral available in this case and in the case of TCW v. F/V KASSANDRA Z, pending in the High Court of American Samoa.

TCW'S MOTION FOR SUMMARY JUDGMENT - 5

- There remains on deposit in the registry of the Court the total funds in the amount of $7,742,869.29, as of October 24, 2001. Vernier Declaration. Those funds continue to accrue interest[2]. Those funds are the remaining CHLOE Z Vessel Sale Proceeds.

- The only asserted liens against the CHLOE Z Vessel Sale Proceeds are:

  - FIRST, the in rem claims of the Personal Injury Claimants;

  - SECOND, the lien of the Preferred Ship Mortgage, held by TCW; and

  - THIRD, the liens of the Trade Claimants Starkist, Shell-Guam, and Clipper Oil; however, as noted above, those liens have been assigned to TCW, following TCW's substantial payments to and settlements with the three Trade-Claimants.

**D. Personal Injury Claimant Liens.**

The in rem claims of the three Personal Injury Claimants, Pranjic, Matos and Mazic, have now been substantially determined by the Court. All three in rem cases have been tried, appealed, and remanded.

At this point, it is irrefutably clear from the arithmetic that the remaining CHLOE Z Vessel Sale Proceeds are at least some $5,500,000 in excess of the reserves needed to satisfy the maximum possible in rem liens of all three Personal Injury Claimants.

Here is the history of the in rem claims of the Personal Injury Claimants, leading to the present maximum liquidation value of those claims:

---

[2] The interest being earned on the CHLOE Z Vessel Sale Proceeds invested by the Clerk compares favorably to the federal judgment interest rate. The investment rate now being paid on the funds, held in two instruments, one at the Bank of Guam and another at the Bank of Hawaii, is 2.37% and 2.75%, respectively. By comparison, as of October 19, 2001, the current federal judgment interest rate is 2.37% (see, 28 U.S.C. §1961, specifying that, after December 21, 2000, the federal judgment interest rate is equal to the weekly average of 1-year constant maturity Treasury yield, which yield is available on the Federal Reserve website, www.federalreserve.com.)

TCW'S MOTION FOR SUMMARY JUDGMENT - 6

- Pranjic's in rem claims were tried beginning July 27, 1998. The Court entered its trial decision on January 11, 1999. The judgment award was $577,420. The Ninth Circuit's ruling reduced the award by about $44,000.

- Mazic's in rem claims were tried beginning July 15, 1998. The Court entered its trial decision on January 11, 1999. The judgment award was $629,958. The Ninth Circuit ruling reduced the award by about $43,000.

- Matos's in rem claims were tried beginning July 20, 1998. The Court entered its trial decision on February 19, 1999. The judgment award was $621,514. The Ninth Circuit ruling may (though not certainly) result in an increase to the award, with the addition of prejudgment interest. That prejudgment interest, if awarded, can reasonably be estimated at a maximum of, say, $242,000 (6.5 years x 6.0%).

All three cases now await the trial court's decision on post-remand motions in accordance with the appellate court's opinions.

Therefore, accounting for the Ninth Circuit rulings, and allowing for post-judgment interest, the following is the total liquidated in rem claims, which are payable by lien on the CHLOE Z Vessel Sale Proceeds:

Pranjic

| | |
|---|---|
| Trial Award | 577,420 |
| Ninth Circuit Reduction | (44,000) |
| Accrued Post Judgment Interest[3] | 50,675 |
| Total | $84,095 |

---

[3] This interest (for all three Personal Injury Claimants) is calculated at: 1 year x 6.0% + 1 year x 3.5%, a very liberal estimation reflecting both the date of remand of the these cases and the applicable federal judgment interest rates since that date (the reference instrument used to determine the federal judgment interest rate changed as of December 21, 2000).

PCW'S MOTION FOR SUMMARY JUDGMENT - 7

Case 1:96-cv-00055    Document 1604-2    Filed 01/19/2007    Page 9 of 22

(still leaving, as noted above, a substantial deficiency on the Ship Mortgage Lien). At that point, the case will be concluded.

E.     Lien Priority.

There is no issue as to lien priority.

As a matter of law, the lien priority is as follows:

(1) TCW's lien for custodial expenses (now fully paid);

(2) Crew's wage liens [all Crew claims are resolved and fully paid];

(3) maritime tort liens of the Personal Injury Claimants' in rem claims [liquidated to maximum amount of $2.2 million, not yet paid];

(4) TCW's preferred mortgage lien [liquidated and undisputed; not yet paid]; and

(5) the Trade Claimants' liens [all paid by TCW, and assigned and held by TCW].[5]

See 46 U.S.C. §§ 31325, 31326; Cargill, Inc. Skibsassuranceforening v. M/T Pacific Dawn, 876 F. Supp. 508, 510-11 n.2 (S.D.N.Y. 1995); United States v. One 254 Ft. Freighter, M/V Andoria, 570 F. Supp. 413, 415 (E.D. La. 1983), aff'd, 768 F.2d 597 (5th Cir. 1985); T. Schoenbaum, Admiralty and Maritime Law § 8-6 (1987).

TCW stipulates that the in rem liens of the Personal Injury Claimants, to the extent finally determined, are senior to TCW's Preferred Ship Mortgage lien and to the Trade Claimants' liens now held by TCW as assignee.

---

[5] Because the proceeds of the CHLOE Z are insufficient to satisfy TCW's preferred mortgage lien, the priority of the remaining claims is insignificant.

TCW'S MOTION FOR SUMMARY JUDGMENT - 9

**F. Judgment and Order Requested.**

TCW in this case is an innocent, good faith Preferred Ship Mortgagee. TCW funded the arrest and custodianship of the Vessel, for the benefit of all parties. TCW has entered settlements with all possible parties: the Crew, Starkist, Shell Guam and Clipper Oil. (TCW cannot enter settlements with the Personal Injury Claimants, since those claims are being defended by insurance defense counsel.) TCW patiently has waited to realize on its mortgage lien for more than some five and one-half years.

Summary judgment should issue when there is no genuine issue of material fact. Fed. R. Civ. P. 56, as is the case with this motion.

Submitted herewith is a requested form of Judgment and Order.

The final judgment amount should be a sum equal to $19,225,956.01 plus interest at the per diem rate of $3,580.57, from September 30, 2001, until date of entry of judgment, and disbursement to TCW should be ordered as requested in the amount of $5,500,000.00.

DATED this 26th day of October, 2001.

*Attorneys for TCW Special Credits*

McKEOWN • VERNIER • PRICE • MAHER

By 

D. PAUL VERNIER, JR.

TCW'S MOTION FOR SUMMARY JUDGMENT - 10

GEORGE M. BUTLER, ESQ.
BUTLER & TELFORD BUTLER
251 Martyr Street, Suite 104
Agana, Guam 96910
Telephone: (671) 472-6895

WILLIAM O. DOUGHERTY, ESQ.
DOUGHERTY, HILDRE, DUDEK & HAKLAR
2550 Fifth Avenue, Suite 600
San Diego, California 92103
Telephone: (619) 232-9131

**TCW Special Credits, et al. v. Fishing Vessel M/V Chloe Z, et al.**
**U.S. District Court of Guam, Case No. 96-00055**

# DECLARATION OF SERVICE

I, the undersigned, declare: That I am, and was at the time of service of the papers herein referred to, over the age of 18 years, and not a party to the action; and I am employed in the County of San Diego, California. My business address is 2550 Fifth Avenue, Suite 600, San Diego, California 92103. I further declare that I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service pursuant to which practice this correspondence will be sealed with the postage thereon fully prepaid, deposited with the United States Postal Service this same day in the ordinary course of business. On June 6, 2002, I served the following document(s):

### AMENDED DECLARATION OF WILLIAM O. DOUGHERTY IN SUPPORT OF PAYMENT OF VJEKO MAZIC'S PERSONAL INJURY CLAIMS IN FULL FROM *RES* PROCEEDS

on the parties in this action addressed as follows:

### SEE ATTACHED SERVICE LIST

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 6, 2002, at San Diego, California.

MONICA K. REITANO

# SERVICE LIST

Steven A. Zamsky, Esq.
ZAMSKY LAW FIRM
Suite 805, GCIC Building
414 West Soeldada Avenue
Hagatna, Guam 96910

Anita P. Arriola, Esq.
ARRIOLA, COWEN & ARRIOLA
259 Martyr Street, Suite 201
C & A Building
Post Office Box X
Agana, Guam 96910

Michael A. Barcott, Esq.
HOLMES WEDDLE & BARCOTT
First Interstate Center
999 Third Ave., Suite 2600
Seattle, Washington 92104

Jeffrey A. Cook, Esq.
CUNLIFFE & COOK
Suite 200
210 Archbishop F.C. Flores Street
Hagatna, Guam 96910

William L. Banning, Esq.
BANNING MICKLOW BULL & LOPEZ, LLP
501 West Broadway, Suite 2090
San Diego, California 92101

Dwight Ritter, Esq.
170 Laurel Street
San Diego, California 92103

John B. Maher, Esq.
McKEOWN VERNIER PRICE MAHER
115 Hesler Place
Hagatna, Guam 96910

G. Patrick Civille, Esq.
TEKER CIVILE TPRRES & TANO
Suite 200
330 Hernan Cortez Avenue
Hagatna, Guam 96910

Richard Schroeder, Esq.
DAVID WRIGHT TREMAINE LLP
2600 Century Square
1501 Fourth Avenue
Seattle, Washington 98121

RECEIVED
ARRIOLA, COWAN & ARRIOLA

**BUTLER & TELFORD BUTLER**
Suite 203, American Life Building
137 Murray Street
Hagåtña, Guam  96910
Telephone: (671) 475-0200
Facsimile: (671) 475-0203

APR 0 2 2001

BY: _____  TIME: 10:35

**FILED**
DISTRICT COURT OF GUAM

APR 0 2 2001

MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM
TERRITORY OF GUAM

| | |
|---|---|
| TCW SPECIAL CREDITS, ETC. , et al., | CIVIL CASE NO. CIV96-00055 |
| Plaintiffs, | **INTERVENING PLAINTIFFS ROBERT MATOS AND SLOBODAN PRANJIC:** |
| v. | |
| FISHING VESSEL CHLOE Z, ETC., et al., | a. NOTICE; |
| | b. MOTION FOR PROTECTIVE ORDER; |
| Defendants. | c. MEMORANDUM; |
| | d. CERTIFICATE OF SERVICE. |

## (1) NOTICE

Intervening Plaintiffs Robert Matos and Slobodan Pranjic ("Matos & Pranjic") give notice that they do not request oral argument on the following motion for protective order ("Motion").

## (2) MOTION

Matos & Pranjic move the Court for an order granting the following relief. The Court prohibits defendant Fishing Vessel Chloe Z ("Chloe Z") from taking the planned deposition ("Deposition") of attorney Jean Melancon ("Melancon").

Matos & Pranjic request the following alternative relief in the event the Court denies the primary order sought by intervening Plaintiffs. The Court restricts the Melancon Deposition to a specific time frame, length and content. Such parameters

1

**EXHIBIT 5**

1 should be consistent with and limited to only those discoverable facts Chloe Z
2 establishes pursuant to its threshold burden of proof.

3 Matos & Pranjic further request that the Court order Chloe Z to produce for In
4 camera inspection the transcripts of Melancon's prior two depositions given in this
5 action.

6 The grounds for the Motion include:

7 1. Melancon's status as former designated local attorney for Matos & Pranjic
8 in both in this action and the related prior Civil Case Numbers 94-00013 and 94-00014;

9 a. Chloe Z's announced intent to take the Melancon Deposition;

10 b. Chloe Z's failure to discharge its burden of proof that:

11 a. no other means exist to secure the information Chloe Z seeks;

12 b. such information has become relevant and non-privileged; and

13 c. this information remains crucial to the preparation of the case.

14 Federal Rules of Civil Procedure ("FRCP") 26(c)(1), and 26(b)(1); and related
15 cases interpreting attorney deposition authorize this relief.

16

17 **(3) MEMORANDUM**

18 Chloe Z wishes to obtain the pre-trial deposition of attorney Jean Melancon.
19 Matos & Pranjic attorneys Dwight F. Ritter and Donald F. Hildre designated Melancon
20 as local counsel both in this action and in related prior Civil Cases Numbers 94-00013
21 and 94-00014. Melancon acted in that capacity between March 1994 and August 1997.

22 Chloe Z candidly acknowledges that:

23

24 "In cases involving the deposition of opposing counsel in a matter, the party seeking
the deposition must demonstrate its propriety and need before the deposition may go
25 forward. _Shelton v. American Motors Corp._ 805 F.2d 1323, 1327 (8th Cir., 1986);
_American Casualty Co. v. Krieger_ 160 F.R.D. 582, 588 (S.D.Cal., 1995). More
26 importantly, the party must establish the following: (1) no other means exist to obtain
the information than to depose opposing counsel; (2) the information sought is relevant
27 and non-privileged; and (3) the information is crucial to the preparation of the case.
28 _Shelton_ at 805 F.2d 1327."

2

1  See pending Chloe Z December 28, 2000 motion for protective order ("Chloe Z
2  Motion") precluding the depositions of Chloe Z counsel, at p. 3.

3  This rule applies to the proposed deposition of Melancon. Melancon withdrew
4  in 1997 as designated local counsel. Melancon continues to possess however, privileged
5  information having no relevance whatsoever to any pending claims or defenses
6
7  asserted by Chloe Z. See. Smith Ex.Rel. Smith v. U.S. 193 F.R.D. 201, 214-216 (D.Del.,
8  2000), prohibiting the depositions of two prior investigating attorneys for defendant (as
9  distinguished from current trial counsel). These attorneys lacked any unique
10 discoverable information.
11
12 Chloe Z hence retains the initial duty to demonstrate to this Court:
13   a.  specific facts that Chloe Z wishes to elicit from Melancon;
14
15   b.  no other means exist to obtain that information;
16
     c.  the information sought is relevant and not privileged;
17
     d.  the information is crucial to preparation of the case.
18
19
20 Chloe Z has not discharged that burden of proof. Chloe Z has placed no facts in
21 the record that tend to establish any of the essential four elements recited above. No
22 Chloe Z deposition of Melancon should proceed absent Chloe Z satisfaction of these
23 requisites.
24
25 Chloe Z has previously twice taken Melancon's deposition during 1997. Pranjic
26 & Matos do not have copies of those transcripts. The transcripts should demonstrate to
27
28

3

the Court (some if not all) the scope of Chloe Z's proposed examination of Melancon; and whether such questions are permissible.

One of the unknown issues (at this time) on which Chloe Z might wish to elicit facts from Melancon includes the question of whether Chloe Z has become equitably estopped to raise a statute of limitations defense. See, Chloe Z Motion at pp. 4-6. Chloe Z asserts in pertinent part that:

"The equitable estoppel arguments in the hearing to be scheduled should focus very simply on the issue of "who said what to whom" which may have improperly misled the plaintiffs." Id., at p 5.

Chloe Z however, makes no suggestion that Melancon has unique knowledge of any such representations. Chloe Z in fact refers only to declarations from Matos & Pranjic attorney Dwight F. Ritter Id., at p 2.

Chloe Z has deposed Matos & Pranjic lead attorney Dwight Ritter on more than one occasion. Chloe Z has also deposed on multiple occasions Matos & Pranjic other lead counsel Donald F. Hildre and William O. Dougherty, See, Dwight Ritter Declaration accompanying this paper. No Chloe Z showing has occurred that Melancon possesses unique facts; or that any material misrepresentation was made to Melancon or made only to him.

## CONCLUSION

The planned Chloe Z deposition of attorney Melancon should be prohibited; and a protective order entered within the authority of FRCP 26(c)(1).

Matos & Pranjic alternatively request that the Court carefully circumscribe Melancon's Deposition. Should Chloe Z somehow satisfy its burden of proof and the

4



1   above legal standard, then the Court should carefully restrict Chloe Z's deposition by

2   way of time frame, length and content.  Only those narrow specific facts that Chloe Z

3
    demonstrates comply with the above test should be subject of examination.  The prior
4
5   deposition transcripts of Melancon should be examined in this regard in order to

6   facilitate the Court's ruling.

7

8
                    (4)  EXECUTION AND CERTIFICATE OF SERVICE
9

10      I am signing this paper in my capacity as designated local counsel for Matos &

11  Pranjic.  I am serving the paper in the following manner, I am causing a filed copy to

12
    be hand delivered to the offices of Guam counsel for each appearing party on or
13
14  before April 10, 2001.

15                              BUTLER & TELFORD BUTLER
16                              Attorney for Intervening Plaintiffs
                                Robert Matos and Slobodan Pranjic
17

18  Date:  3/30/01

19                              By:  GEORGE M. BUTLER

20

21

22

23

24

25

26

27

28


                                    5

RECEIVED
ARRIOLA, COWAN & ARRIOLA

APR 0 2 2001

BY: ___  TIME: 10:35

1  **BUTLER & TELFORD BUTLER**
   Suite 203, American Life Building
2  137 Murray Street
   Hagåtña, Guam 96910
3  Telephone: (671) 475-0200
   Facsimile: (671) 475-0203

**FILED**
DISTRICT COURT OF GUAM

APR 0 2 2001

MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM
TERRITORY OF GUAM

| | |
|---|---|
| TCW SPECIAL CREDITS, ETC. , et al., | CIVIL CASE NO. CIV96-00055 |
| Plaintiffs, | **GEORGE M. BUTLER DECLARATION** |
| v. | **IN SUPPORT OF INTERVENING PLAINTIFFS ROBERT MATOS AND SLOBODAN PRANJIC MOTION FOR PROTECTIVE ORDER** |
| FISHING VESSEL CHLOE Z, ETC., et al., | |
| Defendants. | |

I, GEORGE M. BUTLER, make the following declaration.

1.     I am an individual of the age of majority and competent to give testimony in this action.

2.     I have personal knowledge of the facts stated in this declaration. The basis of my knowledge includes my experience with the events described below. I would testify truthfully as to these facts if called by the Court.

3.     I am designated local counsel in this action for intervening Plaintiffs Robert Matos and Slobodan Pranjic.

4.     I am attaching to this paper a true and correct copy of the April 2001 Dwight F. Ritter declaration. I am arranging to supplement this copy by filing the original as soon as the original can be delivered by express mail from California.

I declare under penalty of perjury under laws of the United States of America that the foregoing is true and correct.

Date: 3/30/01

_____
GEORGE M. BUTLER

DWIGHT F. RITTER
LAW OFFICES OF DWIGHT F. RITTER
170 LAUREL STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE: 619 238 1811

MARCH 28, 2001
DRAFT

DONALD F. HILDRE
DOUGHERTY, HILDRE, DUDEK & HAKLAR
2550 FIFTH AVENUE, SUITE 600
SAN DIEGO, CALIFORNIA 92103
TELEPHONE: 619 232 9131

GEORGE M. BUTLER
BUTLER & TELFORD-BUTLER
SUITE 203 AMERICAN LIFE BUILDING
137 MURRAY BOULEVARD
HAGATNA, GUAM 96910
TELEPHONE: 671 475 0200

ATTORNEYS FOR INTERVENING PLAINTIFFS
ROBERT MATOS AND SLOBODAN PRANJIC

### DISTRICT COURT OF GUAM
### TERRITORY OF GUAM

| | | |
|---|---|---|
| TCW SPECIAL CREDITS, INC., ET. AL., | ) ) ;) ) | CIVIL CASE NUMBER 96-00055 |
|     PLAINTIFF AND     INTERVENING PLAINTIFFS, | ) ) ) | DWIGHT F. RITTER DECLARATION |
|     VERSUS | ) ) | IN SUPPORT OF |
| FISHING VESSEL CHLOE Z, ETC., ET. AL., | ) ) ) | INTERVENING PLAINTIFFS ROBERT MATOS AND SLOBODAN PRANJIC |
|     DEFENDANTS. | ) | MOTION FOR PROTECTIVE ORDER |

Civil Case Number CIV96-00055
April 2001
Dwight F. Ritter Declaration


I, Dwight F. Ritter, make the following declaration.


1.  I am an individual of the age of majority and competent to give testimony in
    this action.

2.  I have personal knowledge of the facts stated in this declaration. The basis of
    my knowledge includes my experience with the events described below. I
    would testify truthfully as to these facts if called by the Court.

3.  I am record counsel in this action for Intervening Plaintiffs Robert Matos and
    Slobodan Pranjic ("Matos & Pranjic").

4.  I designated attorney Jean Melancon in this action as my local Guam counsel.
    Attorney Melancon also acted as my designated local counsel in related prior
    Civil Case Numbers 94-00013 and 94-00014.

5.  Attorney Melancon acted as my designated local counsel in these three
    actions between approximately March 1994 and August 1997.

6.  I refer to the March 31, 1997, First Amended Complaints filed by
    Matos & Pranjic in this action. I prepared these pleadings. Defendant

Page 2

Civil Case Number CIV96-00055
April 2001
Dwight F. Ritter Declaration

CHLOE Z has taken my deposition once concerning the misrepresentations pled in these documents. Defendant CHLOE Z has also secured the depositions of Matos & Pranjic's other lead attorneys Donald F. Mildre and William O. Dougherty concerning these pleadings.

7. I am given to understand that CHLOE Z secured or attempted to take the deposition of Jean Melancon on two occasions in 1997. To the best of my knowledge, Matos & Pranjic did not receive copies of these deposition transcripts.

I declare under penalty of perjury under laws of the United States of America that the foregoing is true and correct.

Executed on April ___ 2001

Dwight F. Ritter

Page 3