DWIGHT F. RITTER, ESQ. (STATE BAR #127030)
RITTER & ASSOCIATES
2869 INDIA STREET
SAN DIEGO, CA 92103
(619) 296-0123

Attorney for Plaintiffs
ROBERT MATOS and SLOBODAN PRANJIC

**FILED**
DISTRICT COURT OF GUAM
APR 17 2007
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| TCW SPECIAL CREDITS, et al.<br><br>Plaintiffs,<br><br>v.<br><br>FISHING VESSEL CHLOE Z, Et al.,<br><br>Defendants. | Case No. 96-00055<br><br>**PLAINTIFFS ROBERT MATOS AND SLOBODAN PRANJIC'S REPLY TO CHLOE Z'S OPPOSITION TO PLAINTIFFS' MOTION TO WITHDRAW FUNDS AND CHLOE Z'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO WITHDRAW FUNDS** |

Plaintiffs ROBERT MATOS and SLOBODAN PRANJIC, by their counsel, Dwight Ritter, reply to CHLOE Z's oppositions to plaintiffs' request to withdraw funds based on the following:

1.  Plaintiffs MATOS and PRANJIC are entitled to disbursement of funds upon the entry of a judgment. In September of 2006, the 9th Circuit ordered entry of judgment in a mandate to the Guam District Court. Since the 9th Circuit mandate to the Guam District Court, MATOS and PRANJIC filed their request for judgment on October 17, 2006 and yet no action has been taken by

1

In re: TCW Special Credits, et al. v. F/V Chloe Z, et al.    Case No. 96-00055
Plaintiffs Matos and Pranjic's Reply to Chloe Z's Opposition to
Plaintiffs' Motion to Withdraw Funds

Case 1:96-cv-00055    Document 1616    Filed 04/17/2007    Page 1 of 14

the District Court to establish the MATOS and PRANJIC judgments. MATOS and PRANJIC continue in their efforts to have *in rem* judgments established in their favor, per 9th Circuit mandate, for all lawful prejudgment and post-judgment interests in the total amount of $ 2,375,000. There is no stay from the 9th Circuit or the United States Supreme Court precluding or disfavoring entry of these judgments. In fact, CHLOE Z has not even requested a stay of execution from any court, although CHLOE Z does object to disbursement of funds.

    2.   Once judgments are entered, then MATOS and PRANJIC are immediately entitled to withdrawal of funds sufficient to satisfy those judgments. There is no stay from the 9th Circuit on collection of the judgments. There is no stay from the United States Supreme Court as to the collection of these judgments. There is no stay from the Guam District Court. The only legitimate means by which CHLOE Z can prevent collection of these judgments is by posting a supersedeas bond sufficient to fully secure the judgments until appellate issues are resolved. FRCP 62(d) Both Sphere Drake, the insurer of the CHLOE Z, and TCW are capable of posting bonds. In addition, TCW could reimburse the Court Registry with the funds improperly withdrawn ahead of MATOS and PRANJIC's priority claims.

    3.   In CHLOE Z's opposition, CHLOE Z claims that judgments cannot be entered in the amount of $ 2,375,000 because, according to CHLOE Z, there are insufficient funds to pay these judgments. However, CHLOE Z in its Supplemental Brief to the

2

In re: TCW Special Credits, et al. v. F/V Chloe Z, et al.    Case No. 96-00055
Plaintiffs Matos and Pranjic's Reply to Chloe Z's Opposition to
Plaintiffs' Motion to Withdraw Funds

Case 1:96-cv-00055   Document 1616   Filed 04/17/2007   Page 2 of 14

court, acknowledges that TCW apparently withdrew $ 5,500,000 from the Court Registry even though MATOS and PRANJIC had priority judgments ahead of TCW's subordinate claims. See CHLOE Z Supplemental Brief and TCW's Motion for Partial Distribution of Vessel Proceeds. TCW falsely represented to the district court the full amount of the MATOS and PRANJIC claims and thereby converted $ 5,000,000 out of the Court Registry improperly to TCW's benefit. In October, 2001, TCW wrongfully stated: "At this point it is irrefutably clear from the arithmetic that the remaining CHLOE Z Vessel sale proceeds are <u>at least</u> now $ 5,500,000 in excess of the reserve needed to satisfy the <u>maximum possible</u> in rem liens of all three personal injury claimants." (TCW emphasis) See TCW's Motion for Partial Distribution of Vessel Proceeds, page 6, lines 14-16, attached as Ex.1. The above quote taken from TCW's Motion for Partial Distribution of Vessel Proceeds is both false and inaccurate. As a result of TCW's wrongful withdrawal, there are not adequate funds in the Court Registry to cover the MATOS and PRANJIC judgments in the amount of $ 2,375,000.

   4.  Nonetheless, the insurer, Sphere Drake, who is currently defending CHLOE Z, has a $ 25,000,000 protection and indemnity insurance policy that requires reimbursement of any personal injury claims depleted from the CHLOE Z's assets or res. Sphere Drake's obligation exists even if funds have been wrongfully depleted. Thus, there should now be more than $ 5,000,000 in the Court Registry and adequate indemnity from

3

In re: TCW Special Credits, et al. v. F/V Chloe Z, et al.   Case No. 96-00055
Plaintiffs Matos and Pranjic's Reply to Chloe Z's Opposition to
Plaintiffs' Motion to Withdraw Funds

Case 1:96-cv-00055   Document 1616   Filed 04/17/2007   Page 3 of 14

Sphere Drake to satisfy MATOS and PRANJIC judgments in the amount of $ 2,375,000.

5. CHLOE Z is entitled to appeal issues in they choose. However, these appeals cannot occur at the expense of MATOS and PRANJIC who are entitled to secure judgments. During appeal, CHLOE Z or TCW must bear the costs of appeal and must secure the MATOS and PRANJIC judgments by posting a bond or reimbursing the Court Registry with sufficient funds to cover the judgments.

6. In order to verify the deposits and disbursements from the Court Registry, regarding various creditors, MATOS and PRANJIC are seeking a full accounting from the banks holding the Court Registry funds. Multiple attempts have been made to obtain a full accounting, by both written and oral requests, but to no avail. MATOS and PRANJIC continue their requests to obtain a full accounting to determine the full amount of proceeds that should be in the Court Registry and the current amount of proceeds in the Registry after various disbursements.

Dated: 4/11, 2007

*Dwight Ritter* (signature)

DWIGHT RITTER, Esq.
Attorney for Plaintiffs,
ROBERT MATOS and
SLOBODAN PRANJIC

4

In re: TCW Special Credits, et al. v. F/V Chloe Z, et al.  Case No. 96-00055
Plaintiffs Matos and Pranjic's Reply to Chloe Z's Opposition to
Plaintiffs' Motion to Withdraw Funds

Case 1:96-cv-00055  Document 1616  Filed 04/17/2007  Page 4 of 14

Craig Miller
DAVIS WRIGHT TREMAINE LLP
2600 Century Square
1501 Fourth Avenue
Seattle, WA 98101
Tel. (206) 622-3150

D. Paul Vernier, Jr.
McKEOWN • VERNIER • PRICE • MAHER
A Joint Venture of McKeown Price LLP
And Vernier & Maher LLP
115 Hesler Place • Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910
Tel. (671) 477-7059

Attorneys for Plaintiff
TCW Special Credits

UNITED STATES DISTRICT COURT

DISTRICT OF GUAM

| | |
|---|---|
| TCW SPECIAL CREDITS, et al., <br><br> Plaintiff, <br><br> v. <br><br> FISHING VESSEL CHLOE Z, et al., <br><br> Defendant. <br><br> JUAN BARNADIARAN, et al., <br><br> Plaintiffs-in-Intervention <br><br> RELATED CLAIMS-IN-INTERVENTION | No. 96-00055 <br><br> TCW'S MOTION FOR SUMMARY JUDGMENT ON PROMISSORY NOTE, MORTGAGE AND OTHER COLLATERAL INSTRUMENTS; AND FOR PARTIAL DISTRIBUTION OF VESSEL SALE PROCEEDS TO MORTGAGEE; CERTIFICATE OF SERVICE <br><br> [ORAL ARGUMENT NOT REQUESTED] |

Plaintiff TCW Special Credits ("TCW") moves for summary judgment on its claims on the defaulted promissory note, and the preferred ship mortgage and other collateral instruments securing the promissory note; and for distribution to TCW of a portion of the vessel sale proceeds.

TCW'S MOTION FOR SUMMARY JUDGMENT - 1

TCW does not request oral argument.

As the Court knows, there has been a final, comprehensive settlement reached between TCW and Crew Claimants, and that settlement has been fully implemented. See, Stipulation and Order Approving Settlement, Etc. ("Settlement Approval Order"), entered September 19, 2001. The settlement between TCW and Crew was reached only after lengthy negotiation and mutual compromise. That settlement resolves litigation concerning the Crew wage claims that has lasted more than five years, and has included scores of motions to this court, a trial, and multiple appeals. TCW is therefore most pleased to be able to advise the Court of the settlement with the Crew.

Following in logical sequence from that settlement, TCW's present motion is a necessary next step toward the final completion of this litigation.

Relative to this motion, there are no facts in dispute.

### A. Summary Judgment and Order of Disbursal Requested.

TCW requests entry of summary judgment against defendant Chloe Z Fishing Co., Inc. ("CZFC, Inc.") for money judgment on the sum certain owed by CZFC, Inc., on its defaulted promissory note (the "Term Loan Note"); and for foreclosure of the preferred ship mortgage ("Preferred Ship Mortgage") the F/V CHLOE Z, Official No. Official No. 653391 ("Vessel") and of the other collateral instruments sued on in TCW's verified Complaint.

As of September 30, 2001, the defaulted indebtedness owed by CZFC, Inc., on the Term Loan Note is $19,225,956.01, exclusive of legal fees. Interest continues to accrue on the defaulted principal balance of the Term Loan Note at the rate of $3,580.57 per diem, from September 30, 2001, until paid. Mazurek Declaration, ¶ 3.

TCW also requests an order disbursing to TCW proceeds of the sale of the Vessel, now held in the registry of the Court, but reserving in the registry ample funds for eventual

TCW'S MOTION FOR SUMMARY JUDGMENT - 2

satisfaction of liens as may be established by personal injury claimants Slobodan Pranjic, Robert Matos and Vjeko Mazic (together, "Personal Injury Claimants").

B. Evidence Relied Upon.

In support of this motion, TCW relies on the following evidence:

1. The prior orders of this Court, as cited in this memorandum.
2. The Clerk's entry of defaults, on file in this action.
3. Declaration of Mariusz Mazurek, dated October 16, 2001, filed herewith.
4. TCW's verified Complaint ("TCW Complaint") and exhibits attached thereto, on file in this action.
5. Declaration of D. Paul Vernier, Jr., presenting the Statement of Account, dated October 24, 2001, from US District Court Office of the Clerk.

C. History and Procedural Background of Case.

As established in the verified TCW Complaint, TCW is the holder of the Preferred Ship Mortgage the CHLOE Z, which secures the obligations of the Vessel's owner, CZFC, Inc., under a Loan Agreement and Term Loan Note. TCW holds additional security for those obligations by virtue of CZFC, Inc.'s grants of security and assignment under a Security Agreement and Assignment of Insurances. To the best knowledge of TCW, no party in this action has ever materially contested the accuracy of any allegation made in the TCW Complaint.

The Term Loan Note was made and delivered by CZFC, Inc., on October 15, 1991. The original lender to CZFC, Inc., and the indicated payee on the Term Loan Note, is a Norwegian bank, Christiania Bank. However, TCW purchased Christiania Bank's interest in the Term Loan Note (and in all supporting collateral, including the Preferred Ship Mortgage) on June 30, 1995. CZFC, Inc.'s obligations under the Term Loan Note have been in default since July 1, 1993.

The TCW Complaint was filed on July 5, 1996.

TCW'S MOTION FOR SUMMARY JUDGMENT - 3

satisfaction of liens as may be established by personal injury claimants Slobodan Pranjic, Robert Matos and Vjeko Maric (together, "Personal Injury Claimants").

B. **Evidence Relied Upon.**

In support of this motion, TCW relies on the following evidence:

1. The prior orders of this Court, as cited in this memorandum.
2. The Clerk's entry of defaults, on file in this action.
3. Declaration of Mariusz Mazurek, dated October 16, 2001, filed herewith.
4. TCW's verified Complaint ("TCW Complaint") and exhibits attached thereto, on file in this action.
5. Declaration of D. Paul Vernier, Jr., presenting the Statement of Account, dated October 24, 2001, from US District Court Office of the Clerk.

C. **History and Procedural Background of Case.**

As established in the verified TCW Complaint, TCW is the holder of the Preferred Ship Mortgage the CHLOE Z, which secures the obligations of the Vessel's owner, CZFC, Inc., under a Loan Agreement and Term Loan Note. TCW holds additional security for those obligations by virtue of CZFC, Inc.'s grants of security and assignment under a Security Agreement and Assignment of Insurances. To the best knowledge of TCW, no party in this action has ever materially contested the accuracy of any allegation made in the TCW Complaint.

The Term Loan Note was made and delivered by CZFC, Inc., on October 15, 1991. The original lender to CZFC, Inc., and the indicated payee on the Term Loan Note, is a Norwegian bank, Christiania Bank. However, TCW purchased Christiania Bank's interest in the Term Loan Note (and in all supporting collateral, including the Preferred Ship Mortgage) on June 30, 1995. CZFC, Inc.'s obligations under the Term Loan Note have been in default since July 1, 1993.

The TCW Complaint was filed on July 5, 1996.

TCW'S MOTION FOR SUMMARY JUDGMENT - 3

TCW immediately moved for a warrant of arrest of the Vessel. The Vessel was forthwith arrested, as was her fish catch aboard ("Fish Catch").

Proper service and notice of the action and of the arrest was given to all interested persons. See, Certificate of Mailing, filed July 11, 1996 (notice given to all lien claimants); return of service on registered agent for GZFC, Inc., dated July 16, 1996; and Declaration of Maggie Castro, regarding publication of Notice in Pacific Daily News, filed July 18, 1996.

The Clerk on September 26, 1996, entered a Default against CHLOE Z and GZFC, Inc., as to TCW's Complaint. Also, on April 20, 1998, the Court entered an Order of Default Against All Non-Appearing Claimants to the Vessel and Against Chloe Z Fishing Co., Inc.

The following claimants asserted claims against the Vessel and/or its Fish Catch by way of complaints-in-intervention: Starkist Caribe, Inc. and Star-Kist Foods, Inc. (the Starkist parties together filed one complaint, on July 26, 1996); a group of unpaid seamen who served aboard the CHLOE Z ("Crew Claimants") (filed July 30, 1995, and amended and supplemented thereafter); Shell Guam, Inc. (filed August 19, 1996); and Clipper Oil Company (filed October 9, 1996); and the three Personal Injury Claimants.

An Order for Interlocutory Sale of the Fish Catch was entered on August 9, 1996. On August 20, 1996, the Fish Catch was sold at auction by the US Marshal for the winning bid of $725,000. The proceeds of that sale ("Fish Catch Sale Proceeds"), net of certain sale costs, was deposited in the registry of the Court.

An Order for Interlocutory Sale of the Vessel was entered on October 17, 1996. On December 3, 1996, the CHLOE Z was sold at auction by the US Marshal for the winning bid of $6,710,000. The proceeds of that sale ("CHLOE Z Vessel Sale Proceeds"), net of certain sale costs, was deposited in the registry of the Court.

TCW'S MOTION FOR SUMMARY JUDGMENT - 4

The complaints in intervention of Starkist, Shell Guam, and Clipper Oil Company (collectively, "Trade Claimants"), were resolved by settlement with TCW reached in 1998. In order to achieve those settlements, TCW paid a substantial sum of money to each of the Trade Claimants, and received an assignment of the Trade Claimant's claim and lien rights. Mamrick Decl. ¶ 4 and Exs. B, C and D. TCW entered those settlements in an effort to simplify the litigation. At the time, TCW was well aware that the liens of the Trade Claimants were "out of the money," since the senior liens – namely, the custodia legis lien, the Crew wage lien, the Personal Injury Claimant lien, and the Preferred Ship Mortgage lien – would certainly consume all available Vessel Sale Proceeds and Fish Catch Proceeds (and yet still leave a multi-million dollar shortfall in the payment of the Preferred Ship Mortgage lien[1]).

As noted above, the claims of all Crew also have been resolved by settlements. All settlements, including settlements made early in the case (and specifically including the six disputed settlements) have now fully agreed, paid and resolved, and all Crew wage claims have been entirely and finally resolved. See, Settlement Approval Order, entered September 19, 2001.

The Settlement Approval Order authorized disbursal to the Crew of nearly the entirety of the Fish Catch Sale Proceeds; and further authorized disbursal of the then relatively small remaining balance of Fish Catch Sale Proceeds to TCW in partial satisfaction of TCW's approved custodia legis lien. Those disbursals exhausted the entire Fish Catch Sale Proceeds.

Therefore, as a result of the various settlements entered by lead plaintiff TCW, the case is much closer to final resolution, and now stands considerably simplified. The structure of the case is now as follows:

---

[1] It is a mathematical certainty that the multi-million dollar shortfall will exist even after realization on all collateral available in this case and in the case of *TCW v. F/V KASSANDRA Z*, pending in the High Court of American Samoa.

TCW'S MOTION FOR SUMMARY JUDGMENT - 5

- There remains on deposit in the registry of the Court the total funds in the amount of $7,742,869.29, as of October 24, 2001. Vernier Declaration. Those funds continue to accrue interest[2]. Those funds are the remaining CHLOE Z Vessel Sale Proceeds.
- The only asserted liens against the CHLOE Z Vessel Sale Proceeds are:
  - FIRST, the in rem claims of the Personal Injury Claimants;
  - SECOND, the lien of the Preferred Ship Mortgage, held by TCW; and
  - THIRD, the liens of the Trade Claimants Starkist, Shell-Guam, and Clipper-Oil; however, as noted above, those liens have been assigned to TCW, following TCW's substantial payments to and settlements with the three Trade Claimants.

D. Personal Injury Claimant Liens.

The in rem claims of the three Personal Injury Claimants, Pranjic, Matos and Mazic, have now been substantially determined by the Court. All three in rem cases have been tried, appealed, and remanded.

At this point, it is irrefutably clear from the arithmetic that the remaining CHLOE Z Vessel Sale Proceeds are at least some $5,500,000 in excess of the reserves needed to satisfy the maximum possible in rem liens of all three Personal Injury Claimants.

Here is the history of the in rem claims of the Personal Injury Claimants, leading to the present maximum liquidation value of those claims:

---

[2] The interest being earned on the CHLOE Z Vessel Sale Proceeds invested by the Clerk compares favorably to the federal judgment interest rate. The investment rate now being paid on the funds, held in two instruments, one at the Bank of Guam and another at the Bank of Hawaii, is 2.37% and 2.75%, respectively. By comparison, as of October 19, 2001, the current federal judgment interest rate is 2.37% (see, 28 U.S.C. §1961, specifying that, after December 21, 2000, the federal judgment interest rate is equal to the weekly average of 1-year constant maturity Treasury yield, which yield is available on the Federal Reserve website, www.federalreserve.com.)

TCW'S MOTION FOR SUMMARY JUDGMENT - 6

- Pranjic's in rem claims were tried beginning July 27, 1998. The Court entered its trial decision on January 11, 1999. The judgment award was $577,420. The Ninth Circuit's ruling reduced the award by about $44,000.

- Mazic's in rem claims were tried beginning July 15, 1998. The Court entered its trial decision on January 11, 1999. The judgment award was $629,958. The Ninth Circuit ruling reduced the award by about $43,000.

- Matos's in rem claims were tried beginning July 20, 1998. The Court entered its trial decision on February 19, 1999. The judgment award was $521,514. The Ninth Circuit ruling may (though not certainly) result in an increase to the award, with the addition of prejudgment interest. That prejudgment interest, if awarded, can reasonably be estimated at a maximum of, say, $242,000 (6.5 years x 6.0%).

All three cases now await the trial court's decision on post-remand motions in accordance with the appellate court's opinions.

Therefore, accounting for the Ninth Circuit rulings, and allowing for post-judgment interest, the following is the total liquidated in rem claims, which are payable by lien on the CHLOE Z Vessel Sale Proceeds:

Pranjic

| | |
|---|---|
| Trial Award | 577,420 |
| Ninth Circuit Reduction | (44,000) |
| Accrued Post Judgment Interest[3] | 50,675 |
| Total | 584,095 |

---

[3] This interest (for all three Personal Injury Claimants) is calculated at: 1 year x 6.0% + 1 year x 3.5%, a very liberal estimation reflecting both the date of remand of the these cases and the applicable federal judgment interest rates since that date (the reference instrument used to determine the federal judgment interest rate changed as of December 21, 2000).

TCW'S MOTION FOR SUMMARY JUDGMENT - 7

(still leaving, as noted above, a substantial deficiency on the Ship Mortgage Lien). At that point, the case will be concluded.

E.  Lien Priority.

There is no issue as to lien priority.

As a matter of law, the lien priority is as follows:

    (1) TCW's lien for custodial expenses (now fully paid);

    (2) Crew's wage liens (all Crew claims are resolved and fully paid);

    (3) maritime tort liens of the Personal Injury Claimants' in rem claims (liquidated to maximum amount of $2.2 million, not yet paid);

    (4) TCW's preferred mortgage lien (liquidated and undisputed; not yet paid); and

    (5) the Trade Claimants' liens (all paid by TCW, and assigned and held by TCW).[5]

See 46 U.S.C. §§ 31325, 31326; Cargill, Inc. Skibsassuranceforening v. M/T Pacific Dawn, 876 F. Supp. 508, 510-11 n.2 (S.D.N.Y. 1995); United States v. One 254 Ft. Freighter, M/V Andoria, 570 F. Supp. 413, 415 (E.D. La. 1983), aff'd, 768 F.2d 597 (5th Cir. 1985); T. Schoenbaum, Admiralty and Maritime Law § 8-6 (1987).

TCW stipulates that the in rem liens of the Personal Injury Claimants, to the extent finally determined, are senior to TCW's Preferred Ship Mortgage lien and to the Trade Claimants' liens now held by TCW as assignee.

---

[5] Because the proceeds of the CHLOE Z are insufficient to satisfy TCW's preferred mortgage lien, the priority of the remaining claims is insignificant.

TCW'S MOTION FOR SUMMARY JUDGMENT - 9

F.  Judgment and Order Requested.

TCW in this case is an innocent, good faith Preferred Ship Mortgagee. TCW funded the arrest and custodianship of the Vessel, for the benefit of all parties. TCW has entered settlements with all possible parties: the Crew, Starkist, Shell-Guam and Clipper Oil. (TCW cannot enter settlements with the Personal Injury Claimants, since those claims are being defended by insurance defense counsel.) TCW patiently has waited to realize on its mortgage lien for more than some five and one-half years.

Summary judgment should issue when there is no genuine issue of material fact. Fed. R. Civ. P. 56, as is the case with this motion.

Submitted herewith is a requested form of Judgment and Order.

The final judgment amount should be a sum equal to $19,225,956.01 plus interest at the per diem rate of $3,580.57, from September 30, 2001, until date of entry of judgment, and disbursement to TCW should be ordered as requested in the amount of $5,500,000.00.

DATED this 26th day of October, 2001.

*Attorneys for TCW Special Credits*

McKEOWN • VERNIER • PRICE • MAHER

By  _____
D. PAUL VERNIER, JR.

TCW'S MOTION FOR SUMMARY JUDGMENT - 10