DISTRICT COURT OF GUAM

TERRITORY OF GUAM

**TCW SPECIAL CREDITS**, a California general partnership, as Agent and Nominee,

   Plaintiff,

vs.

**F/V CHLOE Z, ...In Rem** and
**CHLOE Z FISHING COMPANY, INC
...In Personam,**

   Defendants.

**ROBERT MATOS**,

   Plaintiff in Intervention,

vs.

**F/V CHLOE Z**, et. al.,

   Defendants.

Civil Case No. 96-00055

**Report and Recommendation**

  The Court held a status hearing on Plaintiff-Intervenor, Robert Matos' case on August 19, 2008. Present at that status hearing were Jeffrey A. Cook, Esq., of CUNLIFFE & COOK, P.C., representing the Plaintiff-Intervenor; Anita P. Arriola, Esq., of ARRIOLA, COWAN, & ARRIOLA, representing the Fishing Vessel Chloe Z and Louie J. Yanza, Esq., of MAHER YANZA FLYNN TIMBLIN, LLP, representing TCW Special Credits. Also appearing telephonically were Craig Miller, Esq., of DAVIS WRIGHT TREMAINE LLP, representing TCW Special Credits, and Michael A, Barcott, Esq., of HOLMES WEDDLE & BARCOTT, representing the Fishing Vessel Chloe Z.

  The purpose of the status hearing was to inquire on a pending decision by the Court on

Plaintiff-Intervenor Matos' motion for payment of pre-judgement and post judgment interest. This Court apologized to the parties that the matter was not sooner addressed. The Court also advised the parties that it had reviewed the moving papers and was ready to issue a decision and its Report and Recommendation with regard to the pending motion.

The Court has reviewed Matos' motion, the memorandum in opposition to the motion, the reply to the opposition, considered the arguments by the parties, and reviewed other relevant pleadings. The Court now renders its Decision in this Report and Recommendation.

## BACKGROUND

Robert Matos was a seaman working on the fishing vessel Chloe Z (Chloe Z). During the course of his employment, he sustained an injury on August 8, 1992. On January 22, 1993, he brought a complaint against Chloe Z Fishing Company, Inc. for the injury he sustained in an action filed in the Southern District of California. He filed another action in a California state court. He also filed a similar action against the Defendants in this Court in 1994 in Civil Action No. 94-00013. Again, it was to recover damages for the injury he sustained on board the Chloe Z on August 8, 1992. The latter case went to trial before a jury in this district. In its verdict on July 26, 1996, the Guam jury awarded Matos $1,497,955.00 in damages. Pursuant to the jury award, judgment was entered in CV No. 94-0013 in his favor on August 13, 1996. The judgment included an award of interest from the date of judgment at the rate of 5.81 % per annum.

In the meantime, Chloe Z Fishing Company went out of business, leaving no source of payment for Matos' judgment. Matos was thus left with a judgment against the owner of the fishing vessel Chloe Z with no source for its repayment.

On July 5, 1996, TCW Special Credits, a California general partnership, as Agent and Nominee, filed this present action against the Fishing Vessel Chloe Z *in rem* and against its owner, Chloe Z Fishing Company, Inc., *in personam*. TCW Special Credits sought to foreclose its lien on the Chloe Z vessel. Matos, realizing that his judgment against Chloe Z Fishing Company was not collectible, sought to intervene in this action to present his personal injury claim as an *in rem* action against the vessel. His request to intervene was granted December 2, 1996. His claim came on for trial on July 20, 1998. On February 19, 1999, the Court ruled in his

favor and awarded him the sum of $621,514.50. The Court denied Matos' request for pre-judgment interest, stating: " Plaintiff has not shown any support in law for his prayer for pre-judgment interest". The Clerk of Court entered Judgment on February 22, 1999 pursuant to the Court's Order. The judgment was entered on the docket on the same day.

Chloe Z appealed the above judgment on February 25, 1999. Matos cross appealed on March 24, 1999.

Chloe Z raised two issues on appeal: (1) the court's denial of its motion to dismiss Matos' claims as *res judicata* and (2) the court's decision to apply the doctrine of equitable to preclude defendant from raising a statute of limitations defense.

Matos raised four issues in his cross appeal: (1) the court's refusal to apply the doctrine of collateral estoppel to issues decided in the earlier *in personam* action against the vessel's owner, (2) the court's finding that Matos was 33% contributorily negligent for his injuries, (3) the court's calculation of future earnings, and (4) the court's denial of pre-judgment interest.

In its May 8, 2000 Memorandum Decision regarding Chloe Z's appeal, the Ninth Circuit affirmed the ruling in issue (1) but reversed the ruling with regard to issue(2) and remanded the case back to the trial court for a fact finding hearing on the equitable estoppel issue. With regard to Matos' appeal, the Ninth Circuit affirmed the trial court's ruling on issues (1), (2), and (3) but reversed issue (4) (the court's denial of pre-judgment interest) and remanded the case back to the trial court to determine whether special circumstances existed that would justify the Court's denial of pre-judgment interest.

Following remand, this Court held an evidentiary hearing on this case together with Pranjic's case and ultimately issued its Findings of Fact and Conclusions of Law on April 8, 2004. Therein the Court found that there was no misrepresentation by Chloe Z and thus it was not barred from asserting a statute of limitations argument. The Court thus vacated its prior *in rem* judgment in Matos' favor. Having so concluded, the Court did not consider Matos' entitlement to pre-judgment interest. Judgment was entered pursuant to the said Findings on April 9, 2004 and it was likewise entered into the docket the same day.

Matos appealed the Findings and Judgment on April 29, 2004. On appeal, the Ninth

Circuit found that Matos' *in rem* action was never barred by the statute of limitations. The Ninth Circuit Court thus reinstated Matos' prior *in rem* judgment.

Matos then filed his motion asking the Court to establish pre-judgment and post judgment interest on his now reinstated *in rem* judgment.

**DISCUSSION**

Plaintiff asks the Court to award him pre-judgment and post judgment interest. He seeks pre-judgment interest from the date of his injury to the date of his *in rem* judgment and post judgment interest thereafter.

*A. Pre-judgment Interest.*

The allowance of pre-judgment interest on damages in admiralty cases depends upon the circumstances of each case and rests within the discretion of the tribunal that has to pass on the subject. A common example of the reason for denying pre-judgment interest is "undue delay in prosecuting the lawsuit." General Motors v. Devex Corp., 461 U.S. 648, 657, (1983). The Ninth Circuit appears to award pre-judgment interest in admiralty as a presumption unless peculiar circumstances warrant its denial. "In admiralty, pre-judgment interest must be granted unless peculiar circumstances justify its denial; . . ." Dillingham Shipyard v. Associated Insulation Company, 649 F.2d 1322, 1428 (9th Cir. 1981).

The "peculiar circumstances" justifying a denial of a pre-judgment interest award, or the "special" or "exceptional" circumstances, fall into three categories: (1) unwarranted delay, (2) less than actual loss or no proof of loss of use, or (3) claims or defenses in bad faith. Alkmeon Naviera, S.A. v. M/V Marina L, 633 F.2d 789, 797-98 (9th Cir. 1980). An order denying pre-judgment interest without a finding of one of these types of "special circumstances" will be reversed and remanded for a determination of whether special circumstances justified the denial. Vance v. American Hawaii Cruises, Inc., 789 F.2d 790 (9th Cir. 1986).

In its February 19, 1999 Order, the Court did not address nor set forth the "peculiar circumstances" that justified the denial of pre-judgment interest. Instead, the Court placed the burden on Matos to show "support in law for his prayer for pre-judgment interest." This Court must therefore consider whether "peculiar circumstances" justify denial of pre-judgment interest

Page -4-

to Plaintiff-Intervenor Martos.

Chloe Z acknowledges that pre-judgment interest is usually given in admiralty cases, but it is not automatic and should be denied here based on undue delay by Matos. Specifically, Chloe Z asserts that Matos wasted years of time by first filing his claim in courts which had no *in rem* jurisdiction over the vessel which was not in those districts.

Matos refutes this assertion. He asserts that *in rem* jurisdiction could be found in any location in which Chloe Z ported, including Hawaii and California and that both Hawaii and California were acceptable jurisdictions. He states, however, that Chloe Z Fishing Company expressed a preference for the actions to be filed and heard in Guam and he complied with that request.

Matos was injured on board the Chloe Z on August 8, 1992. Five months and fourteen days thereafter (167 days), he filed an action to recover damages for the injury he sustained. He filed this action in the Southern District of California. He filed a similar action in the state court of California and filed a similar action in this court on May 11, 1994. The latter action proceeded to judgment in this court on August 13, 1996. He was awarded $1,497,955.00 by the jury. Unable to collect on that judgment, Matos was forced to file an intervention action, one *in rem*, to collect on the same injury for which he had been seeking damages. The intervention request was granted by the Court on December 2, 1996.

Chloe Z contends that Matos wasted years of time by filing claims in courts which had no *in rem* jurisdiction over it. Matos refutes this and asserts that *in rem* jurisdictions could be found in any location in which the vessel ported. He argues that the California courts were acceptable jurisdictions but that the defendant expressed a preference for the actions[1] then pending to be filed and heard in Guam and Matos complied with the request.

While, this Court acknowledges that the Matos' intervention *in rem* action was granted only since December, 1996, Matos was always diligent in his efforts to prosecute a claim for the

---

[1] There were actions pending in other courts against Chloe Z's owners other than Matos' action.

Page -5-

injury he sustained on board the Chloe Z. He filed his suit less than six months after he received his injuries. He was always prosecuting that claim whether it lead him to the federal Southern District of California, a state court in California, and two filings in the District Court of Guam. Chloe Z and its owners were clearly on notice on the pendency of his injury claim. The Court thus finds that there was no unwarranted delay on the part of Matos in the prosecution of his claim for the injury he had received on board the fishing vessel Chloe Z. It was reasonable for Matos to proceed first against the owner of the vessel to recover damages for the injury he sustained. He filed several *in personam* actions against the owner of Chloe Z for the injury he sustained. Clearly the owner and the vessel itself knew of his claim for personal injury since January 22, 1992.

Finding no unwarranted delay in Matos' part, the Court finds it appropriate to award Matos pre-judgment interest. Pre-judgment interest shall run from the time of his injury to the date of judgment.

*B. Appropriate Date for the Entry of Judgment.*

The next inquiry for the Court to determine is the date for entry for the judgment. Matos asks the Court to enter judgment using the date of the original *in rem* judgment. Chloe Z, while acknowledging that case law permits the Court to award interest using the date of the original *in rem* judgment, asks the Court to use a different date. It contends that using the original *in rem* judgment date presents a serious problem for Matos since Guam's statutory time limit for execution of judgment is effectively six (6) years. See 7 Guam Code Ann. § 23106.[2] The Court acknowledges that Guam law provides for a general six-year time limit for the execution of judgments. Section 23106, however, permits execution on judgments after the six-year period

---

[2] This statute provides:

In all cases the judgment may be enforced or carried into execution after the time lapse of six years from the date of entry, by leave of Court, upon motion, or by judgment for that purpose, founded upon supplemental pleadings; but nothing in this section shall be construed to revive a judgment for the recovery of money which shall have been barred by limitation at the time of the taking affect of this section.

has expired with leave of Court and upon motion. The Court, on its own motion, may revive an otherwise expired judgment for execution. More importantly, the Court treats the issue of execution of the judgment before it as "self-executing". The funds to pay the judgment is before the Court and the entry of judgment would be accompanied by an order for its payment from the funds within the court's registry. There would be no need for Matos to seek a writ for the execution of the judgment.

The Court also finds that Section 23106 of Title 7 of Guam's Code Annotated may not be applicable to the circumstances of the present case. The statute appears to refer to a judgment capable of execution or where execution is available to the judgment creditor. In this case, the Court has stayed execution of Matos' judgment at Chloe Z' request since the filing of its appeal on February 25, 1999. Execution has never run against Chloe Z since the entry of judgment against it herein. Upon entry of a judgment pursuant to the respective mandates from the Ninth Circuit, the Court may very well find no further need to stay execution herein.

*C. Appropriate Rate For Pre-judgment interest*

The Court has established that Matos is entitled to pre-judgment interest from the date of his injury to the date of the entry of the original *in rem* judgment. The Court must now proceed to determine the rate to apply to the pre-judgment interest as well as the rate for post judgment interest.

Matos has retained an expert economist, Robert Wallace, CPA, who was the expert economist who testified in his *in personam* and *in rem* trials before the Court. Mr. Wallace calculated the pre-judgment interest using an average of interest rates from the dates of injury to the dates of initial judgments, which results in a rate of 5.03% for Matos.

Chloe Z, on the other hand urges the Court to instead use the pre-judgment interest rate in effect on the date of the seaman's injury. According to Chloe Z, this would mean that Matos' pre-judgment interest would accrue at a rate of 3.41%. Alternatively, Chloe Z urges the Court to use the actual interest earned by TCW on the investments held in the registry of the Court.

Congress has determined a rate for the courts to apply in awarding post judgment interest. Various courts have determined that the measure of interest rates prescribed for post judgment

interest in 28 U.S.C. § 1961(a) is also appropriate for fixing the rate for pre-judgment interest unless the equities of a particular case demand a different rate. See <u>Western Pacific Fisheries, Inc v. SS President Grant</u>, 730 F. 2d 1280, (9th Cir. 1984); <u>Columbia Brick Works, Inc. v. Royal Ins. Co. Of America</u>, 768 F. 2d 1066, (9th Cir. 1985). The Court particularly notes that in <u>Western Pacific Fisheries, Inc</u>., the Ninth Circuit approved a pre-judgment rate of interest calculated under the variable interest rates of the U.S. Treasury bills during the pre-judgment period, "unless ...the equities of the particular case require a different rate". The court stated that an award of pre-judgment interest at a below market rate would not fully compensate the prevailing party. Thus, an award below market rate would not fully compensate Matos in this case.

      The Court is mindful that it must determine a rate of interest for the time period between August 8, 1992 to February 19, 1999. In doing so, the Court finds it impractical to use the actual interest earned by TCW on the investments held in the registry of the Court as the basis for determining the appropriate rate. The Court finds this methodology impractical because these funds were deposited into the registry of the Court only in December, 1996. There is no mechanism available to the Court to determine with certainty what rate to apply prior thereto. Thus the Court is left unable to determine a rate to apply prior to December, 1996, more particularly for the period from August 9, 1992 to December, 1996.

      The Court also finds it inappropriate to set a rate of interest equal solely to the pre-judgment interest rate in effect on the date of the seaman's injury. In our particular instance, applying Defendant's suggested rate, Matos would have a fixed rate at 3.41% for the entire period from August 8, 1992 to February 19, 1999 regardless whether the rate went up or down during the relevant period.

      Case law requires the application of market value rates in such a determination for the relevant period, i.e., from the date on injury to the entry of judgment. The Court notes that in <u>Western Pacific Fisheries, Inc</u>., the Ninth Circuit approved calculating pre-judgment interest using an average of the T-Bill interest rates from the date of injury to the date of initial judgment. In this case, the Court has reviewed the applicable T-Bill rates from the rate table for the period

Page -8-

from August 8, 1992 to February 19, 1999. The T-Bill rate was 3.51% at the time of Matos' injury and was at 4.584% at the time of the entry of the initial *in rem* judgment. During this period there were eighty-six (86) T-Bill rates auctioned. During this time period, the T-Bill rates ranged from a high of 7.34% and a low of 3.13%. The Court has decided to set the interest rate herein by adding all the rates in existence during that time period (August 8, 1992 to February 19,1999) and dividing the sum by eighty-six. The sum of all of the auctioned T-Bill rates during the said period was 433.66. The Court has divided that amount by the number of auctions (86). In doing so, the Court finds the average rate to be **5.04%**. The Court will apply this rate in awarding and computing total pre-judgment interest. The Court also notes that case law favors compounding of interest in the computation of pre-judgment interest. Applying this rate (5.04 %) to pre-judgment interest and compounding interest annually, the Court computes pre-judgment interest on a **$621,514.50** judgment as follows:

| Time Period | Interest | Total Sum |
|---|---|---|
| 08-08-92 to 08-07-93 | $31,324.33 | $652,838.83 |
| 08-08-93 to 08-07-94 | $32,903.08 | $685,741.91 |
| 08-08-94 to 08-07-95 | $34,561.39 | $720,303.30 |
| 08-08-95 to 08-07-96 | $36,303.29 | $756,606.59 |
| 08-08-96 to 08-07-97 | $38,132.97 | $794,739.56 |
| 08-08-97 to 08-07-98 | $40,054.87 | $834,794.43 |
| 08-08-98 to 02-18-99 | $22, 477.70 | $857,272.13 |

In determining the interest from August 8, 1998 to February 19, 1999, the Court has calculated the total number of days between the said period to be one hundred ninety-five (195) days. The Court has taken the sum of $834,794.43 and multiplied it by the 5.04% rate, divided it by 365[3] and multiplied the answer by 195 to arrive at the interest amount of $22,477.70. The Court thus determines Matos to be entitled to the total sum of **$235,757.63** as pre-judgment interest, leaving a total sum of **$857,272.13** subject to post judgment interest..

---

[3]The Court has decided to use 365 as its dividing number instead of 360.

*D. Post Judgment Interest*:

Post judgment is calculated pursuant to 28 U.S.C.A. § 1961 (a). At the time of the entry of original *in rem* judgment, the above section required post judgment interest to be calculated at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of judgment. A review of the T-Bill rate table shows this rate to be **4.584%**. The Court will therefore award this rate for post judgment interest. In computing interest, the Court notes that 28 U.S.C.A. § 1961(b) requires the Court to compute interest daily to the date of payment. It also requires the Court to compound interest annually. The Court will do so in its computation. Applying the applicable rate found by the Court (**4.584%**) and compounding interest annually, the Court computes post judgment interest on a judgment in the amount of **$857,272.13** as follows:

| Time Period | Interest | Total Sum |
|---|---|---|
| 02-19-99 to 02-18-00 | $39,297.35 | $ 896,569.48 |
| 02-19-00 to 02-18-01 | $41,098.75 | $ 937,668.23 |
| 02-19-01 to 02-18-02 | $42,982.71 | $ 980,650.94 |
| 02-19-02 to 02-18-03 | $44,953.04 | $1,025,603.98 |
| 02-19-03 to 02-18-04 | $47,013.69 | $1,072,617.67 |
| 02-19-04 to 02-18-05 | $49,168.79 | $1,121,786.46 |
| 02-19-05 to 02-18-06 | $51,422.69 | $1,173,209.15 |
| 02-19-06 to 02-18-07 | $53,779.91 | $1,226,989.06 |
| 02-19-07 to 02-18-08 | $56,245.18 | $1,283,234.24 |
| 02-19-08 to 08-26-08 | $30,459.27 | $1,313,693.51 |

In computing the interest amount of $30,459.27 from February 19, 2008 to August 26, 2008, the Court has calculated the total number of days between the said period to be one hundred eighty-nine (189) days. The Court has taken the sum of $1,302,468.69 and multiplied it

by the 4.584% rate, divided it by 365[4] and multiplied the answer by 189.

The Court thus finds that Matos is entitled to the total sum of **$456,421.38** as post judgment interest, with interest accruing daily until paid in the amount of $161.16 per day to February 18, 2009[5].

**CONCLUSION**

The Court hereby recommends the entry of judgment against the Defendant, the Fishing Vessel Chloe Z, in favor of Plaintiff-Intervenor Robert Matos in the sum of **$1,313,693.51** with interest accruing daily until paid in the amount of **$161.16** per day.

Dated this 26th day of August, 2008.



        **/s/ Joaquin V.E. Manibusan, Jr.**
        **U.S. Magistrate Judge**

---

[4] The Court has decided to use 365 as its dividing number instead of 360.

[5] If the judgment remains unpaid on February 18, 2009, interest must be re-computed to take into consideration compounding.